Return by: _____



# Cecil County Government

**NOTICE TO APPLICANTS**
Screening tests for illegal drug use may be required as a condition of employment.

We are proud to be a DRUG-FREE Workplace

# APPLICATION FOR EMPLOYMENT

FEB 2004 RECEIVED

POSITION APPLIED FOR: _Junior Accountant_

Regular Full-Time ___✓___     Seasonal _____     Part-Time _____

How did you learn of employment opportunities with the County? _News Journal_

County Policy prohibits employment of an immediate family member into a position supervised by a relative. Do any members of your family work for Cecil County Government?     Yes_____     No__✓__
If , please indicate name and position: _____

## PERSONAL DATA

NAME _Butz_ _____ _Renee_ _____ _Marie_
     (Last)            (First)          (Middle)

List any other name under which your educational or work records may appear: _Beauchemin; Turturici_

Home Phone No. _302-832-1704_     Office Phone No. _302-229-6853_     Social Security No _____

Address _2 Cymbal Ct_ _____ _Newark_ _____ _DE_ ____ _19702_
     (Street)             (City)         (State)     (Zip Code)

Are you legally eligible for employment in the United States? (Proof of U.S. citizenship or immigration status will be required upon employment)     Yes [✗]     No [ ] If no, please explain: _____

When is the best time to reach you during the day? _anytime_ _____ Phone No. _302-832-1704_

Have you, since age 18, been convicted of a misdemeanor or felony other than minor traffic violations? (Each conviction will be judged in relation to time, seriousness and circumstances and will not necessarily bar you from employment.)
Yes [ ]     No [✗] If yes, describe in full: _____

**As An Equal Opportunity Employer**, Cecil County does not discriminate in hiring or other terms and conditions of employment because of an individual's race, creed, color, religion, sex, age, national origin, marital status, disability, veteran status, or any other reason prohibited by federal, state, or local law.

**Americans with Disabilities Act:** No qualified individual with a disability shall on the basis of the disability, be subjected to discrimination in employment under any service, program, or activity conducted by Cecil County. It is also essential that the County will not compromise safety in any of their hiring practices. Cecil County will make all reasonable accommodations with regard to employment of individuals with disabilities. The County will not discriminate in any way toward any employee with regard to employment related activities (i.e.; hiring, firing, tenure, layoffs, leave, etc.). No employee will be discriminated against for their association or relationship to any disabled person.

P000109

# EDUCATIONAL DATA

| Did you successfully complete? | Circle Highest Grade Successfully COMPLETED | | | | Name and Address of Last Elementary and High School Attended and Course of Study |
|---|---|---|---|---|---|
| Elementary    yes ☑ no ☐ | 1 | 2 | 3 | 4 | North East High |
| Junior High   yes ☑ no ☐ | 5 | 6 | 7 | 8 | Honors |
| Senior High   yes ☑ no ☐ | 9 | 10 | 11 | (12) | If you did not graduate from high school, have you received a GED?_____ If yes, give #_____ |
| Date Graduated   6/94 | | | | | |

## COLLEGE OR UNIVERSITY

| Give Name and Address of College, University or Professional School and Course of Study | DEGREE RECEIVED? If Yes, give title, date & major | If No, Number Semester Hours | Years completed | Date of Completion |
|---|---|---|---|---|
| Goldey Beacom   Wilm, DE | BS Accounting | | 5 | 5/99 |
| | | | | |

## OTHER TRAINING

| Give Name and Address of School | Subjects Studied | Years Completed | Did you finish the course? |
|---|---|---|---|
| | | | Yes ☐ No ☐ |
| | | | Yes ☐ No ☐ |
| | | | Yes ☐ No ☐ |

Do you currently serve in the Military or are you a Veteran?  Yes_____   No ☑_____

Typing/Keyboarding: ____65____ w.p.m.          Shorthand: _____ w.p.m.
(if applicable to job for which you are applying)

List any licenses and/or certificates that you possess which relate to the job for which you are applying.  If you are applying for a position which requires driving a County vehicle, please note the Driver's License Number and Class in which you possess a valid license.  (Applicant having 6+ points on driving record cannot drive a County vehicle): _____

**LIST MACHINES/EQUIPMENT YOU CAN OPERATE** (if applicable to job for which you are applying) _____

Fax, pc, adding machine, copier

## ADDITIONAL INFORMATION

Are you able to perform the essential functions of the job for which you are applying with or without reasonable accommodations? (Cecil County adheres to the principles of the Americans with Disabilities Act).
Yes __✓__   No _____   If no, please list the accommodation(s) you feel would be necessary to allow you to perform these functions: _____

P000110

**EMPLOYMENT RECORD DATA** – *please see Resume*

Give employment record as completely as possible <u>starting with your present or last employer</u>. (Include Military Service)
Attach additional sheets if necessary.

**1. Employer** Lawns Unlimited
Address 15089 Coastal Hwy Milton
Mo/Yr Start 9/02
Mo/Yr End 12/03
Type of Business lawn company
Reason for leaving(wanting to leave) discharged - they didn't think I was coming back after maternity leave
Salary Start $12/hr
Present/End Salary $12/hr
Title of Position Office manager
Name of Supervisor Ed Fleming
May we contact? Yes ☑ No☐ not sure what they will say
Phone #302-645-5296
Duties: AP, AR, Payroll, customer service, taxes

**2. Employer** JJID
Address Bear, DE
Mo/Yr Start
Mo/Yr End
Type of Business Road construction
Reason for leaving moved
Salary Start $12/hr
End Salary $14/hr
Title of Position AP manager
Name of Supervisor Anette
May we contact? Yes ☑ No☐
Phone # (302) 836-0414
Duties: AP

**3. Employer** MBNA
Address
Mo/Yr Start 6/92
Mo/Yr End 2000
Type of Business credit card
Reason for leaving to work in accounting field
Salary Start $10/hr
End Salary $15/hr
Title of Position CSI coordinator
Name of Supervisor Charlotte Faccenda
May we contact? Yes ☑ No☐
Phone # 800 421-2110
Duties: education of reps, review quality forms

**Employer**
Address
Mo/Yr Start
Mo/Yr End
Type of Business
Reason for leaving
Salary Start
End Salary
Title of Position
Name of Supervisor
May we contact? Yes ☐ No☐
Phone #
Duties:

**5. Employer**
Address
Mo/Yr Start
Mo/Yr End
Type of Business
Reason for leaving
Salary Start
End Salary
Title of Position
Name of Supervisor
May we contact? Yes ☐ No☐
Phone #
Duties:

P000111

## PERSONAL REFERENCES   *please see References*

| Name | Address | Relation to Applicant | Occupation | Phone No. |
|------|---------|----------------------|------------|-----------|

1. _____
2. _____
3. _____

Have you worked for the County before? Yes_____ No ✓

If yes, Date:_____ Department worked for:_____

How soon can you report to work? 1 week notice

If employed, are you willing to accept the approved salary for the job? yes - open

Do you have a valid driver's license? yes    Number & Type DE 1443638

I authorize Cecil County Government to investigate any and all statements made in this application. If in the judgment of the County, any misrepresentation has been made herein or the results of the investigation are not satisfactory, an offer of employment may be withdrawn; and, if I am already employed, my employment may be terminated immediately.

I voluntarily consent to allow Cecil County or any of its officers, employees or agents to check my reference contacting any person whom they deem to be an appropriate reference. I understand that these questions may be about my personal or educational background, work experience, character, and personality, including information of a confidential or privileged nature.

Date 2-6-04    Signature *Renee Beitz*

I understand that if I am selected for an appointment to a position in County Government I will be required to have a physical examination, including drug screen, on the basis of which I may or may not be accepted for employment.

Date 2-6-04    Signature *Renee Beitz*

---

**MAKE SURE YOU HAVE ANSWERED ALL THE QUESTIONS ON THIS FORM. IF YOU HAVE NOT FILLED IT OUT COMPLETELY, IT MAY RESULT IN THE REJECTION OF YOUR APPLICATION.**

---

*POLYGRAPH DISCLAIMER:* IT IS THE INTENTION OF CECIL COUNTY TO INFORM ALL APPLICANTS OF THE FOLLOWING: "UNDER MARYLAND LAW AN EMPLOYER MAY NOT REQUIRE OR DEMAND ANY APPLICANT FOR EMPLOYMENT OR PROSPECTIVE EMPLOYMENT, OR ANY EMPLOYEE TO SUBMIT TO OR TAKE A POLYGRAPH, LIE DETECTOR, OR SIMILAR TEST, OR EXAMINATION AS A CONDITION OF EMPLOYMENT OR CONTINUED EMPLOYMENT. ANY EMPLOYER WHO VIOLATES THIS PROVISION IS GUILTY OF A MISDEMEANOR AND IS SUBJECT TO A FINE NOT TO EXCEED $100.00." THIS DISCLAIMER DOES NOT PERTAIN TO ANY INDIVIDUAL WHO APPLIES FOR A POSITION IN THE CECIL COUNTY SHERIFF'S OFFICE.

Date 2-6-04    Signature *Renee Beitz*

### EMPLOYMENT APPLICATION POLICY

This application will be considered for the specific job opening only.

All applications will be kept for a one-year period. Applications will be examined monthly and all "expired" forms will be removed and destroyed. If an applicant updates his or her application, the one-year clock will be restarted.

RETURN TO:        HUMAN RESOURCES DEPARTMENT
                 129 E. MAIN STREET, ROOM 122
                 ELKTON, MD 21921

Revised: 05/2002

P000112

Jeanne time line

1. Whole family went to Renee's wedding in September out of town.

2. Renee asked at one time approx August if we could have Scott put on our medical insurance as he had lost his job and didn't have insurance and I told her no, that it is not in our insurance program for family members, only the employee. Again toward the end of September she asked me if she could have her baby added to insurance. Again I told her we could not, it was a management decision not to include family members and it had never been done in the past. Two other employees asked the same thing and were told the same thing., Bruce and Mauricio, one before her and one after. Mauricio had a new baby Sept. 25, 2003 and has been with the company longer than anyone, a key employee and he was told the same thing.

3. I went to Missouri for approx. 2 weeks to help my Mother with cancer.

4. Came back beginning of November. Brought Renee a baby gift I purchased in Missouri for the Baby.

5. While back we did interviews and hired Debbie Watson. She started work 11-7-03.

6. I was called home during the night of 11-13-03, left suddenly for Missouri again and Mom passed away. Didn't get to come back to Delaware til the week of Thanksgiving.

7. I was in on occasion to work after that and noticed Renee was short with me but I attributed it to the fact that she was pregnant. Otherwise I had no indication whatsoever that anything was wrong. We, Ed, myself and the kids were all very excited for the baby to be born. The girls couldn't wait to babysit.

8. Renee told all of us in the office several times that after the baby came she would bring the baby and come in to help with anything, income tax, etc. just to call her.

9. 12-23-03 Renee called the house and asked for Ed, he had left for work and said she was on her way to Beebe Hospital, that she thought she may have broke her water.

10. Ed called that morning and said Renee had came back to work and she had lost her mucos plug. Later in the day he called me and said Renee had left – - - - -gone, cleaned out her desk and was not coming back. I was devastated. I went to the office in tears, talked to Ed and Debbie, I couldn't believe it, as Renee always said we were her family and she said over and over, "I love my job". I couldn't understand what could have happened. Why hadn't she told Ed or myself? We were always there when she needed anything. But then I looked back, my mother passed away, no card, no nothing, something had changed, but I still had no idea what was wrong. Why was she telling the employees one thing and Ed and I another? Nothing made sense to me. As I look back the only thing I could figure out and I knew she was worried about was her medical

A133

D00161

insurance for her self, she was probably afraid of loosing it because in November she had moved to Newark because Scott had lost his job and had found a new job in Wilmington and she had no intentions of returning to work after the baby was born. But we extended her insurance. Also she had asked for medical insurance on her baby approx. September time frame. She said "you can't not insure my baby". I explained to her it was not in our insurance program. I think that upset her. Also we can only make changes at our renewal period which is March 15th. At that time Debbie explained to us the stories and what Renee had been telling her all along.

11. After finding out that Renee had suddenly left work, that night of 12-23-03, Ed and I went to confessions that St. Judes church. Ed was on the phone to Renee at home and he handed me the phone. I politely asked her how she was and then proceeded to tell her that I needed a written statement from her whether she was coming back to work or not and authorization from her doctor. She said ok.

D00162

LAW OFFICES

## WILSON, HALBROOK & BAYARD

PROFESSIONAL ASSOCIATION

107 WEST MARKET STREET

P. O. BOX 690

GEORGETOWN, DELAWARE 19947

TELEPHONE (302) 856-0015

TELECOPIER (302) 856-7116

EUGENE H. BAYARD
CLAYTON E. BUNTING
DENNIS L. SCHRADER
ROBERT G. GIBBS
ERIC C. HOWARD
MARK D. OLSON
———
DAVID C. HUTT
ROBERT H. ROBINSON, JR.

HOUSTON WILSON
(1910-1980)
ROBERT L. HALBROOK
RETIRED

February 22, 2005

VIA FACSIMILE
(302) 761-6601

Theodore R. Robinson
State of Delaware
Department of Labor
Division of Industrial Affairs
4425 North Market Street
Wilmington, DE 19802

Re:    Butz v. Lawns Unlimited, Ltd.
Case No.: 04020302/17CA400296

Dear Mr. Robinson:

I represent Lawns Unlimited, Ltd. I am responding to your letter dated February 15, 2005. I apologize that we did not respond earlier. We were under the impression that a response had been filed. Lawns Unlimited Ltd. denies that it in anyway discriminated against Ms. Butz on the basis of sex or pregnancy. I am enclosing the general respondent questionnaire. I am also enclosing statements from persons who worked with Ms. Butz: Debra Watson, Mauricio Miranda, Jeanne Fleming and Edward Fleming.

As those statements indicate there was a total lack of communication from Ms. Butz to Lawns Unlimited. Based on that lack of communication, Lawns Unlimited was under the impression that Ms. Butz had resigned her employment because she had moved to the New Castle County area.

While Ms. Butz might disagree with that decision, it had nothing to do with Ms. Butz' gender or pregnancy. Had Lawns Unlimited intended in anyway to discriminate it would not have paid, as it did, all cost associated with the pregnancy and delivery. Nor would Lawns Unlimited, as it did, have offered Ms. Butz her job had she wished to return. As the enclosed statements indicate, the overall problem with Ms. Butz was her total lack of communication and inconsistency on what she intended to do following her pregnancy.

D00135

Theodore R. Robinson
State of Delaware
Department of Labor
February 22, 2005
Page 2 of 2


I am also enclosing copies of Lawns Unlimiteds' correspondence to and from Ms. Butz. We would be happy to discuss the matter further with you and provide any information you wish. As stated, we strongly dispute any claim that any action taken with regard to Ms. Butz was in any way motivated by gender or pregnancy.

Very truly yours,

WILSON, HALBROOK & BAYARD

Eric C. Howard

ECH/pdb
Enclosure(s)
Cc: Lawns Unlimited, Ltd.

# THE DEPARTMENT OF LABOR OF THE STATE OF DELAWARE

## OFFICE OF LABOR LAW ENFORCEMENT

CHARGING PARTY:     **Renee Butz**

RESPONDENT:     **Lawns Unlimited, Ltd**

CASE NO.:     **04020302**     EEOC NO.:   **17CA400296**

### GENERAL RESPONDENT QUESTIONNAIRE

Pursuant to the provisions of 19 Del. C.§§712 and 714(a), you are requested to provide a position statement along with your responses to the following questions within twenty (20) days of the date of the attached letter:

1.  Please provide the following information with respect to the above-named Respondent:

    a.  The full and complete legal name of the employer;

    *Lawns Unlimited, Ltd.*

    b.  The address of the headquarters or primary place of business of the employer;

    *15089 Coastal Hwy.*
    *Milton, DE  19968*

    c.  The names of the officers, directors, partners, or proprietor responsible for the management of the affairs of the employer; and,

    *Edward Fleming, President*
    *Jeanne Fleming, Sec-Treas.*

    d.  The name and title of the individual who is Charging Party's immediate supervisor, and the name and title of that individual's immediate supervisor, if applicable.

    *Edward Fleming, Pres*
    *Jeanne Fleming, Sec-Treas*

A137

2. Please provide the name, title, address, and telephone number of the person who will be responsible for supplying the information requested as part of this investigation.

*Ed - Jeanne - Eric*

15089 Coastal Hwy.
Milton, DE 19968
302-645-5296

3. Briefly describe the nature of the employer's business.

Lawn Maintenance

4. How many people were employed by the employer at the time of the alleged violation? NA

    a. In the State of Delaware: 25-30    7-1-03
    
    12-23-03

    b. Nationwide: NA

5. Furnish a workforce analysis showing the number of workers within the appropriate protected classification(s), (other then religion or disability) based on the complaint of discrimination.

    Clerical 2    1 4 or 2
    Laborers

    (Provide a separate attachment.)

6. Does the employer have a personnel manual and/or written rules relating to employee duties and conduct? Yes   If so, please state:

    a. Whether or not all employees, including Charging Party, received a copy of these policies;

    Yes

    b. If applicable, provide proof of Charging Party's receipt of such manual and/or rules; and,

    Office Manager - she is in charge of Company Manual - in her desk

    c. With respect to the conduct alleged, was the policy or practice applied on Charging Party's behalf?

    Yes

D00138

7. Within the past three (3) years, has any other employee complained of discriminatory treatment by any supervisor or manager named or referred to in the Charge of Discrimination?

No ~~Never~~

If so, please provide a separate statement identifying the name of the employee, the date of the complaint, the substance of the complaint, what action if any was taken by the employer, who investigated the complaint, and the result of the employer's responsive actions.

8. Is the employee covered by a collective bargaining agreement?

No

If so, was a grievance filed as a result of the alleged discrimination? __N/A__

If so, submit a copy of the grievance and the decision or outcome of the grievance proceedings.

9. Is the company a federal government contractor? __No__

If so, submit the following:

   a. The name of the contract compliance agency;
      N/A

   b. The name, address and telephone number of that agency's compliance review officer; and,
      N/A

   c. Submit the most recent EEO-1 or EEO-4 report.
      N/A

10. If applicable, state the Charging Party's job title and department at the time of the alleged discrimination.

Office Manager, Main office

11. If applicable, state the Charging Party's date of hire and date of termination of employment.

D.O.H.   9-4-02

~~Erica?~~   ~~Termination Date~~   ⌐12-23-03

~~Resignation Date?~~   └ Resigned employment on

12. Did the Charging Party complain of discriminatory treatment? If yes, explain.

No Never

I HEREBY CERTIFY THAT the answers to the above questions are true and correct to the best of my knowledge, information and belief, and that I have made an inquiry into the facts and circumstances relating to the substance of this questionnaire.

Signature:

Title/Position:

Date:

D00140

## THE DEPARTMENT OF LABOR OF THE STATE OF DELAWARE

### OFFICE OF LABOR LAW ENFORCEMENT

CHARGING PARTY:  **Renee Butz**

RESPONDENT:  **Lawns Unlimited, Ltd**

CASE NO.:  04020302  EEOC NO.:  17CA400296

### GENERAL RESPONDENT QUESTIONNAIRE

Pursuant to the provisions of 19 Del. C. §§712 and 714(a), you are requested to provide a position statement along with your responses to the following questions within twenty (20) days of the date of the attached letter:

1.  Please provide the following information with respect to the above-named Respondent:

       a.  The full and complete legal name of the employer;

         Lawns Unlimited, LTD.

       b.  The address of the headquarters or primary place of business of the employer;

         15089 Coastal Highway
         Milton, DE 19968

       c.  The names of the officers, directors, partners, or proprietor responsible for the management of the affairs of the employer; and,

         Edward Fleming, President
         Jeanne Fleming, Secretary - Treasurer

       d.  The name and title of the individual who is Charging Party's immediate supervisor, and the name and title of that individual's immediate supervisor, if applicable.

         Edward Fleming, President
         Jeanne Fleming, Secretary - Treasurer

D00141

2. Please provide the name, title, address, and telephone number of the person who will be responsible for supplying the information requested as part of this investigation.

   ```
   15089 Coastal Highway
   Milton, DE 19968
   (302) 645-5296
   ```

3. Briefly describe the nature of the employer's business.

   ```
   Lawn Maintenance
   ```

4. How many people were employed by the employer at the time of the alleged violation?    N/A

   a.    In the State of Delaware:  __25-30__

   b.    Nationwide:  __N/A__

5. Furnish a workforce analysis showing the number of workers within the appropriate protected classification(s), (other then religion or disability) based on the complaint of discrimination.

   Clerical  _2_

   (Provide a separate attachment.)

6. Does the employer have a personnel manual and/or written rules relating to employee duties and conduct?  __Yes__  If so, please state:

   a.    Whether or not all employees, including Charging Party, received a copy of these policies;

   Yes

   b.    If applicable, provide proof of Charging Party's receipt of such manual and/or rules; and,

   Office Manager - She is in charge of distributing
                 Company Manuel - in her desk.

   c.    With respect to the conduct alleged, was the policy or practice applied on Charging Party's behalf?

   Yes

D00142

7. Within the past three (3) years, has any other employee complained of discriminatory treatment by any supervisor or manager named or referred to in the Charge of Discrimination?

No

If so, please provide a separate statement identifying the name of the employee, the date of the complaint, the substance of the complaint, what action if any was taken by the employer, who investigated the complaint, and the result of the employer's responsive actions.

8. Is the employee covered by a collective bargaining agreement?

No

If so, was a grievance filed as a result of the alleged discrimination? ___N/A___

If so, submit a copy of the grievance and the decision or outcome of the grievance proceedings.

9. Is the company a federal government contractor? ___No___

If so, submit the following:

   a. The name of the contract compliance agency;
      N/A

   b. The name, address and telephone number of that agency's compliance review officer; and,
      N/A

   c. Submit the most recent EEO-1 or EEO-4 report.
      N/A

10. If applicable, state the Charging Party's job title and department at the time of the alleged discrimination.

Office Manager, Main Office

D00143

11. If applicable, state the Charging Party's date of hire and date of termination of employment.

    Date of Hire: 9-4-02
    Resigned Employment on 12-23-03

12. Did the Charging Party complain of discriminatory treatment? If yes, explain.
    No

I HEREBY CERTIFY THAT the answers to the above questions are true and correct to the best of my knowledge, information and belief, and that I have made an inquiry into the facts and circumstances relating to the substance of this questionnaire.

Signature:

Title/Position:

Date:

D00144

Renee Butz vs. Lawns Unlimited
March 2004

Two – Three Weeks prior to Renee leaving:

1.  She went up stairs – phone call to previous employer re: new job.
    a.  Who will I be working with?
    b.  Came down – I confronted her. No she is not coming back
    c.  She told Jack and I she had no intentions of returning to work after the baby was born and she in fact had another job waiting for her in Wilmington.

2.  Don't leave me stranded.
    a.  She typed daily, mthly, qtrly., yearly to do's.

3.  New job has no insurance: Scott's co. has already got us on a plan $1,200 month cost was a concern for her.

4.  Many conversations at work (whispering because Ed was upstairs) and at home re: she is not coming back.

5.  Taking 6 wks maternity Leave – after 4 weeks, giving 2 wks notice to put her into January. Entitled to Vacation pay, sick days, etc. Told me to make sure all of that was in her last pay check.

6.  If Ed & Jeanne don't cooperate – She will sue them for pregnancy discrimination.

7.  If anyone calls for Reference on her – give it to Jeanne or Ed. She is going to have people (friends) call and see what they say about her. They give bad ref. she will sue them w/ labor board.

8.  Angry at Ed, not paying her overtime she worked and not letting her be the office manager like the title she was given. She said Ed always micro managed everything himself, so why have an office manager. Angry at Jeanne because she simply did not like her and hated her in the office at all.

9.  She had already talked with a previous employee (Dina) of LU who is willing to testify J & Ed were unfair and hard to work for.

10. New Phone Number: she gave me her new home phone no. and told me not to give it to Jeanne or Ed. She was officially on maternity leave and legally they were not allowed to call and bother her. If they called her cell she would not answer. If I wanted to talk with her call her home and she would know it was me. I called and asked for help after she left and she never called me back.

1

D00145

Renee Butz vs. Lawns Unlimited
March 2004

11.  Ed and Jeanne are forbidden to come to hospital to see baby.  If they show up, Scott will have them removed and not let them in.  Had the baby 12/30/03 and called LU  and left message 1/5/04 @ 2:13 pm had baby 6lbs. 9 oz.  18" long she will e-mail pictures.  No pictures.  No chance to see baby.

12.  Ed opened his home up to Renee and her family as a place to stay while she was in the hospital.  Or, if we were to get snow and she did not want to travel to Wilmington (being pregnant).  If he was such a bad person why would he do that for her????

13.  Called my Cell and home on the evening of 12/23 three times: I called her back -- she was angry and said Ed called and fussed her out and Ed wanted her to come to work tomorrow and have a meeting to clear all of this up.  She was not coming because she did not have to.  She asked why I told them of her plans, I said, I was worried about my job with the company and it was not fair to anyone what she was doing.  Our conversation ended shortly thereafter.

14.  Keys:  Upon leaving, Renee' said she should give me the keys back but if she does that Jeanne and Ed will know that she is planning not to come back.  She will mail keys to me.

I, **DEBRA S. WATSON,**  do hereby attest the above statements are true and accurate indications of the events that took place regarding Renee Butz and Lawns Unlimited.  I will voluntarily take a lie detector test to confirm the accuracy of my statements.

*Debra S. Watson*

2

D00146

TO WHOM IT MAY CONCERN:

I **MAURICIO MIRANDA** do hereby make the following true and accurate statement indicating my conversations with Renee Butz prior to her leaving Lawns Unlimited. I make this statement in writing due to the fact that I am needed at Lawns Unlimited and cannot attend the hearing involving Renee and Lawns Unlimited.

On December 23, 2003, I was out on a job, I called in to the office to have Renee Place on order for me. Debbie answered the phone and said that Renee was not in the office yet, she had gone to the hospital in labor to have the baby.

Later in the day, I called into the office again and Renee answered the phone. I said, "I thought you were in the hospital in labor having your baby." She replied, "No it was a false alarm." I gave her my order and asked her to get it placed for me. She indicated she would take care of it.

At the end of my work day, I returned to the office to find Renee not only had not placed my order but she had left and was not coming back. I have not spoken to or heard from her since.

Mauricio Miranda

Mauricio Miranda

D00147

Jeanne time line

1. Whole family went to Renee's wedding in September out of town.

2 . Renee asked at one time approx August if we could have Scott put on our medical insurance as he had lost his job and didn't have insurance and I told her no, that it is not in our insurance program for family members, only the employee. Again toward the end of September she asked me if she could have her baby added to insurance. Again I told her we could not, it was a management decision not to include family members and it had never been done in the past. Two other employees asked the same thing and were told the same thing., Bruce and Mauricio, one before her and one after. Mauricio had a new baby Sept. 25, 2003 and has been with the company longer than anyone, a key employee and he was told the same thing.

3. I went to Missouri for approx. 2 weeks to help my Mother with cancer.

4. Came back beginning of November. Brought Renee a baby gift I purchased in Missouri for the Baby.

5. While back we did interviews and hired Debbie Watson. She started work 11-7-03.

6. I was called home during the night of 11-13-03, left suddenly for Missouri again and Mom passed away. Didn't get to come back to Delaware til the week of Thanksgiving.

7. I was in on occasion to work after that and noticed Renee was short with me but I attributed it to the fact that she was pregnant. Otherwise I had no indication whatsoever that anything was wrong. We, Ed, myself and the kids were all very excited for the baby to be born. The girls couldn't wait to babysit.

8. Renee told all of us in the office several times that after the baby came she would bring the baby and come in to help with anything, income tax, etc. just to call her.

9. 12-23-03 Renee called the house and asked for Ed, he had left for work and said she was on her way to Beebe Hospital, that she thought she may have broke her water.

10. Ed called that morning and said Renee had came back to work and she had lost her mucos plug. Later in the day he called me and said Renee had left – - - - -gone, cleaned out her desk and was not coming back. I was devastated. I went to the office in tears, talked to Ed and Debbie, I couldn't believe it, as Renee always said we were her family and she said over and over, "I love my job". I couldn't understand what could have happened. Why hadn't she told Ed or myself? We were always there when she needed anything. But then I looked back, my mother passed away, no card, no nothing, something had changed, but I still had no idea what was wrong. Why was she telling the employees one thing and Ed and I another? Nothing made sense to me. As I look back the only thing I could figure out and I knew she was worried about was her medical

D00148

insurance for her self, she was probably afraid of loosing it because in November she had moved to Newark because Scott had lost his job and had found a new job in Wilmington and she had no intentions of returning to work after the baby was born. But we extended her insurance. Also she had asked for medical insurance on her baby approx. September time frame. She said "you can't not insure my baby". I explained to her it was not in our insurance program. I think that upset her. Also we can only make changes at our renewal period which is March 15th. At that time Debbie explained to us the stories and what Renee had been telling her all along.

11. After finding out that Renee had suddenly left work, that night of 12-23-03, Ed and I went to confessions that St. Judes church. Ed was on the phone to Renee at home and he handed me the phone. I politely asked her how she was and then proceeded to tell her that I needed a written statement from her whether she was coming back to work or not and authorization from her doctor. She said ok.

D00149

Edward W. Fleming time line:

On December 23, 2003, Renee called Jeanne at our house at approx. 6:50 a.m. and told her she was on her way to Beebe Hospital, she thought her water broke. At approx. 8:30 a.m., Renee came to work. She stated to me she lost her mucos plug. At approx. 12:15 p.m., I was walking downstairs in our office and Debbie Watson, our other office employee stopped me and told me that Renee was leaving and was not coming back. I thought Debbie meant that Renee was leaving to have the baby, not that she was permanently not coming back. Renee at that time told me that her contractions were 10 minutes apart. Renee said that she was going to Beebe and that her Mom and Scott were on their way to take her. I told Renee if anyone of her or Scott's family needed to use our house in Lewes to sleep or shower while she was at Beebe Hospital that they were welcomed. Jeanne, our children and I were all excited about Renee having the baby as we have 5 children and love kids. Just before leaving the office I told Renee to fill out the company leave authorization form before she left and I handed her one of the forms. I was leaving the office in my truck. I was stopped at the end of the drive to turn on Route One and Scott and Renee's Mom were pulling into our driveway. I waved but they did not acknowledge me and I thought that was strange. After leaving the office, I called the office, Debbie answered the phone. I asked to speak to Renee, to make sure that she told Scott and her Mom that they could stay at our house that night or the next couple of days while she was having the baby. She said thank you and OK. I returned back to work around 4:00 p.m., Debbie told me to sit down, she had something to tell me. Debbie continued with everything that had transpired that she knew had been told to her by Renee. After hearing what Debbie told me I was devastated. I thought Renee was a caring honest employee and I found out otherwise, that she lied to me about the events that took place earlier that morning.

D00150

Edward W. Fleming time line:

On December 23, 2003, Renee called Jeanne at our house at approx. 6:50 a.m. and told her she was on her way to Beebe Hospital, she thought her water broke. At approx. 8:30 a.m., Renee came to work. She stated to me she lost her mucos plug. At approx. 12:15 p.m., I was walking downstairs in our office and Debbie Watson, our other office employee stopped me and told me that Renee was leaving and was not coming back. I thought Debbie meant that Renee was leaving to have the baby, not that she was permanently not coming back. Renee at that time told me that her contractions were 10 minutes apart. Renee said that she was going to Beebe and that her Mom and Scott were on their way to take her. I told Renee if anyone of her or Scott's family needed to use our house in Lewes to sleep or shower while she was at Beebe Hospital that they were welcomed. Jeanne, our children and I were all excited about Renee having the baby as we have 5 children and love kids. Just before leaving the office I told Renee to fill out the company leave authorization form before she left and I handed her one of the forms. I was leaving the office in my truck. I was stopped at the end of the drive to turn on Route One and Scott and Renee's Mom were pulling into our driveway. I waved but they did not acknowledge me and I thought that was strange. After leaving the office, I called the office, Debbie answered the phone. I asked to speak to Renee, to make sure that she told Scott and her Mom that they could stay at our house that night or the next couple of days while she was having the baby. She said thank you and OK. I returned back to work around 4:00 p.m., Debbie told me to sit down, she had something to tell me. Debbie continued with everything that had transpired that she knew had been told to her by Renee. After hearing what Debbie told me I was devastated. I thought Renee was a caring honest employee and I found out otherwise, that she lied to me about the events that took place earlier that morning.

D00159

UM CHOICE, INC.                                                    **GROUP AGREEMENT**

Rep. No:    809
Group No:  27302

# OPTIMUM CHOICE, INC.®
## GROUP AGREEMENT

### FACE SHEET

**THIS AGREEMENT** is made this 17th day of June, 2004 by and between Optimum Choice, Inc. (hereinafter referred to as "OCI") and LAWNS UNLIMITED,LTD.021 (hereinafter referred to as "Employer" or "Group").

**IN CONSIDERATION** of timely payment of the periodic Premium by Employer, OCI agrees to provide and/or arrange for hospital and medical services to Enrollees of the Group in accordance with the terms, provisions, exclusions and limitations of this Group Agreement and the applicable terms of the OCI Evidence of Coverage and any endorsements or riders attached hereto and made a part hereof (hereinafter collectively referred to as the "Agreement").

Premium Payment Method: Payment to be made to OPTIMUM CHOICE, INC..

IT IS AGREED:

A.    This Agreement shall be effective on 03/15/04 and will remain in effect for an initial Contract Year of 12 consecutive months, ending 03/14/05 (hereinafter referred to as the "Anniversary Date"). Thereafter, the Agreement shall be renewed automatically from year to year for additional twelve (12) month periods at the then current Premium rates, unless terminated by either party as provided herein.

B.    A new employee and his/her Dependent(s) who are qualified to enroll hereunder, coverage shall be effective upon meeting the Employer's eligibility requirements which are the following: 6 MONTHS FROM DOH

Monthly Premiums shall be:

C.

| | Employer Group Rates | Federally Mandated Continuation | State Mandated Continuation |
|---|---|---|---|
| Employee only | $341.31 | $341.31 | |
| Employee and Spouse | $727.01 | $727.01 | |
| Employee and Child | $628.01 | $628.01 | |
| Employee and Children | $965.95 | $965.95 | |
| Employee and Spouse and Child(ren) | $965.95 | $965.95 | |

The premium rates set forth above are subject to change depending on the final actual enrollment demographics of the Group. The final premium rates will be determined at the expiration of the first thirty (30) days of the term of this Agreement, and will be as set forth on the third invoice you receive from OCI. The Group agrees to pay the adjusted premium for the term of this Agreement.

D.    Benefits; which mean the following Evidence of Coverage and any endorsements or riders: DE041AH*NI00

E.    Open Enrollment Period:  FEB 2005

F.    Dependent Limiting Age (if different from Section 1.2):  19/25

G.    **Employer Contribution:** Employer represents that Employer shall contribute at least twenty five percent (25%) of the cost of "Employee Only" coverage as shown on the Face Sheet of this Agreement towards the cost of each Subscriber's coverage. Employer shall notify OCI in the event that Employer fails to meet the aforementioned contribution minimum.

0410220 0102DF

D00426

A152

## Lawns Unlimited, Ltd.
## Account QuickReport
### January through December 2004

| Type | Date | Num | Name | Memo | Split | Amount |
|------|------|-----|------|------|-------|--------|
| **6000 · Operating Expenses** | | | | | | |
| **6100 · Insurance** | | | | | | |
| **6103 · Health** | | | | | | |
| Paycheck | 1/9/2004 | 14834 | Miranda, Mauricio ... | VOID: | 1103 · DEL. ... | 0.00 |
| Paycheck | 1/9/2004 | 14838 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 1/9/2004 | 14848 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Bill | 1/22/2004 | 3713... | OPTIMUM CHOI... | | 2100 · ACCO... | 1,862.49 |
| Paycheck | 1/23/2004 | 14886 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 1/23/2004 | 14890 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 2/6/2004 | 14955 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 2/6/2004 | 14959 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 2/20/2004 | 15002 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 2/20/2004 | 15006 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Bill | 2/26/2004 | 240-3... | OPTIMUM CHOI... | | 2100 · ACCO... | 1,730.35 |
| Paycheck | 3/5/2004 | 15049 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 3/5/2004 | 15053 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 3/18/2004 | 15143 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 3/18/2004 | 15147 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Paycheck | 3/18/2004 | 15156 | Watson, Debra S | | 1103 · DEL. ... | (39.05) |
| Bill | 3/24/2004 | 2730... | OPTIMUM CHOI... | March Helat... | 2100 · ACCO... | 1,906.28 |
| Paycheck | 4/2/2004 | 15213 | Watson, Debra S | | 1103 · DEL. ... | (39.05) |
| Paycheck | 4/2/2004 | 15203 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Paycheck | 4/2/2004 | 15199 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 4/16/2004 | 15265 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 4/16/2004 | 15269 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Paycheck | 4/30/2004 | 15337 | Watson, Debra S | | 1103 · DEL. ... | (58.57) |
| Paycheck | 4/30/2004 | 15323 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 4/30/2004 | 15327 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Bill | 5/11/2004 | 3790... | OPTIMUM CHOI... | 27302 | 2100 · ACCO... | 1,954.58 |
| Paycheck | 5/14/2004 | 15396 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 5/14/2004 | 15400 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Paycheck | 5/14/2004 | 15412 | Watson, Debra S | | 1103 · DEL. ... | (58.58) |
| Bill | 5/24/2004 | 3817... | OPTIMUM CHOI... | 27302 | 2100 · ACCO... | 1,954.58 |
| Paycheck | 5/26/2004 | 15461 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 5/26/2004 | 15465 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Paycheck | 5/26/2004 | 15473 | Watson, Debra S | | 1103 · DEL. ... | (39.05) |
| Paycheck | 6/11/2004 | 15536 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 6/11/2004 | 15540 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Paycheck | 6/11/2004 | 15550 | Watson, Debra S | | 1103 · DEL. ... | (39.05) |
| Paycheck | 6/25/2004 | 15607 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Paycheck | 6/25/2004 | 15617 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 7/9/2004 | 15681 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 7/9/2004 | 15684 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Paycheck | 7/9/2004 | 15692 | Watson, Debra S | | 1103 · DEL. ... | (39.05) |
| Bill | 7/15/2004 | 3843... | OPTIMUM CHOI... | 27302 | 2100 · ACCO... | 971.25 |
| Paycheck | 7/23/2004 | 15756 | Watson, Debra S | | 1103 · DEL. ... | (39.05) |
| Paycheck | 7/23/2004 | 15748 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Paycheck | 7/23/2004 | 15745 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Bill | 7/25/2004 | 3869... | OPTIMUM CHOI... | 27302 | 2100 · ACCO... | 1,954.58 |
| Paycheck | 8/6/2004 | 15814 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 8/6/2004 | 15817 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Paycheck | 8/6/2004 | 15825 | Watson, Debra S | | 1103 · DEL. ... | (39.05) |
| Paycheck | 8/20/2004 | 15866 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 8/20/2004 | 15869 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Paycheck | 8/20/2004 | 15877 | Watson, Debra S | | 1103 · DEL. ... | (39.05) |
| Bill | 8/24/2004 | 2895... | OPTIMUM CHOI... | 27302 | 2100 · ACCO... | 1,954.58 |
| Paycheck | 9/3/2004 | 15943 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 9/3/2004 | 15946 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |

Page 1

D00427

**Lawns Unlimited, Ltd.**
**Account QuickReport**
January through December 2004

| Type | Date | Num | Name | Memo | Split | Amount |
|------|------|-----|------|------|-------|--------|
| Paycheck | 9/3/2004 | 15954 | Watson, Debra S | | 1103 · DEL. ... | (39.05) |
| Paycheck | 9/17/2004 | 16021 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 9/17/2004 | 16023 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Paycheck | 9/17/2004 | 16030 | Watson, Debra S | | 1103 · DEL. ... | (39.05) |
| Paycheck | 10/1/2004 | 16061 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 10/1/2004 | 16063 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Paycheck | 10/1/2004 | 16071 | Watson, Debra S | | 1103 · DEL. ... | (39.05) |
| Bill | 10/4/2004 | 3922... | OPTIMUM CHOI... | 27302 | 2100 · ACCO... | 1,954.58 |
| Paycheck | 10/15/2004 | 16144 | Eachus, Jean B | | 1103 · DEL. ... | (41.58) |
| Paycheck | 10/15/2004 | 16152 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 10/15/2004 | 16154 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Paycheck | 10/15/2004 | 16160 | Watson, Debra S | | 1103 · DEL. ... | (39.05) |
| Paycheck | 10/29/2004 | 16196 | Eachus, Jean B | | 1103 · DEL. ... | (41.58) |
| Paycheck | 10/29/2004 | 16205 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 10/29/2004 | 16207 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Paycheck | 10/29/2004 | 16215 | Watson, Debra S | | 1103 · DEL. ... | (39.05) |
| Bill | 11/3/2004 | 2730... | OPTIMUM CHOI... | 27302 | 2100 · ACCO... | 2,653.60 |
| Paycheck | 11/12/2004 | 16272 | Eachus, Jean B | | 1103 · DEL. ... | (41.58) |
| Paycheck | 11/12/2004 | 16281 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 11/12/2004 | 16283 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Bill | 11/23/2004 | 3975... | OPTIMUM CHOI... | Health Insura... | 2100 · ACCO... | 1,323.66 |
| Paycheck | 11/26/2004 | 16327 | Eachus, Jean B | | 1103 · DEL. ... | (41.58) |
| Paycheck | 11/26/2004 | 16336 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 11/26/2004 | 16338 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Paycheck | 12/10/2004 | 16385 | Eachus, Jean B | | 1103 · DEL. ... | (41.58) |
| Paycheck | 12/10/2004 | 16392 | Miranda, Mauricio ... . | | 1103 · DEL. ... | (38.91) |
| Paycheck | 12/10/2004 | 16394 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |
| Bill | 12/21/2004 | 2730... | OPTIMUM CHOI... | Health Insura... | 2100 · ACCO... | 1,977.28 |
| Paycheck | 12/24/2004 | 16446 | Eachus, Jean B | | 1103 · DEL. ... | (41.58) |
| Paycheck | 12/24/2004 | 16455 | Miranda, Mauricio ... | | 1103 · DEL. ... | (38.91) |
| Paycheck | 12/24/2004 | 16457 | Sanchez, Hugo A. | | 1103 · DEL. ... | (39.26) |

| | | | | | | |
|---|---|---|---|---|---|---|
| Total 6103 · Health | | | | | | 19,681.96 |
| Total 6100 · Insurance | | | | | | 19,681.96 |
| Total 6000 · Operating Expenses | | | | | | 19,681.96 |
| **TOTAL** | | | | | | **19,681.96** |

D00428

:13 PM
9/19/07
Accrual Basis

**Lawns Unlimited, Ltd.**
**Account QuickReport**
January through December 2003

| Type | Date | Num | Name | Memo | Split | Amount |
|---|---|---|---|---|---|---|
| **6000 · Operating Expenses** | | | | | | |
| **6100 · Insurance** | | | | | | |
| **6103 · Health** | | | | | | |
| Paycheck | 1/10/2003 | 13091 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 1/10/2003 | 13094 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Bill | 1/23/2003 | 3400... | OPTIMUM CHOI... | health insura... | 2100 · ACCO... | 1,200.93 |
| Paycheck | 1/24/2003 | 13149 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 1/24/2003 | 13152 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 2/7/2003 | | Miranda, Mauricio ... | VOID: | 1103 · DEL. ... | 0.00 |
| Paycheck | 2/7/2003 | | Sanchez, Hugo A. | VOID: | 1103 · DEL. ... | 0.00 |
| Paycheck | 2/7/2003 | 13199 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 2/7/2003 | 13202 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 2/21/2003 | 13256 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 2/21/2003 | 13259 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Bill | 2/24/2003 | 3426... | OPTIMUM CHOI... | 3-15-03 to 4-... | 2100 · ACCO... | 3,268.93 |
| Paycheck | 3/7/2003 | 13279 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 3/7/2003 | 13282 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 3/21/2003 | 13358 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 3/21/2003 | 13362 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Bill | 3/24/2003 | 3453... | OPTIMUM CHOI... | 4/15-5/14 He... | 2100 · ACCO... | 669.16 |
| Paycheck | 4/4/2003 | 13413 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 4/4/2003 | 13417 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 4/18/2003 | 13494 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 4/18/2003 | 13499 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Bill | 4/24/2003 | 3479... | OPTIMUM CHOI... | 5/15 - 6/14 | 2100 · ACCO... | 1,866.29 |
| Paycheck | 5/2/2003 | 13561 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 5/2/2003 | 13556 | Miranda, Mauricio ... | VOID: | 1103 · DEL. ... | 0.00 |
| Paycheck | 5/2/2003 | 13568 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 5/16/2003 | 13621 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 5/16/2003 | 13626 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Bill | 5/22/2003 | 3506... | OPTIMUM CHOI... | 6/15 to 7/14 | 2100 · ACCO... | 1,866.29 |
| Credit | 5/22/2003 | 3506... | OPTIMUM CHOI... | credit for La... | 2100 · ACCO... | (270.83) |
| Paycheck | 5/30/2003 | 13697 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 5/30/2003 | 13701 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 6/13/2003 | 13738 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 6/13/2003 | 13743 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Bill | 6/23/2003 | 3532... | OPTIMUM CHOI... | 7/15 to 8/14 | 2100 · ACCO... | 1,591.26 |
| Paycheck | 6/27/2003 | 13842 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 6/27/2003 | 13837 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 7/11/2003 | 13914 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 7/11/2003 | 13918 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Bill | 7/23/2003 | 3558... | OPTIMUM CHOI... | 8/15 to 9/14 | 2100 · ACCO... | 1,593.36 |
| Paycheck | 7/25/2003 | 13977 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 7/25/2003 | 13982 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 8/8/2003 | 14081 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 8/8/2003 | 14086 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 8/22/2003 | 14146 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 8/22/2003 | 14151 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Bill | 8/25/2003 | 3584... | OPTIMUM CHOI... | 9/15 to 10/14... | 2100 · ACCO... | 1,593.36 |
| Paycheck | 9/5/2003 | 14233 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 9/5/2003 | 14228 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 9/19/2003 | 14292 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 9/19/2003 | 14297 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Bill | 9/23/2003 | 3610... | OPTIMUM CHOI... | 10/15 to 11/14 | 2100 · ACCO... | 1,593.36 |
| Paycheck | 10/3/2003 | 14350 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 10/3/2003 | 14345 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 10/15/2003 | 14423 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 10/15/2003 | 14427 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |

Page 1

D00429

**Lawns Unlimited, Ltd.**
**Account QuickReport**
January through December 2003

| Type | Date | Num | Name | Memo | Split | Amount |
|------|------|-----|------|------|-------|--------|
| Bill | 10/22/2003 | 3635... | OPTIMUM CHOI... | 11-15 to 12-14 | 2100 · ACCO... | 1,593.36 |
| Paycheck | 10/31/2003 | 14478 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 10/31/2003 | 14482 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 11/14/2003 | 14572 | Miranda, Mauricio ... | VOID: | 1103 · DEL. ... | 0.00 |
| Paycheck | 11/14/2003 | 14561 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 11/14/2003 | 14585 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Bill | 11/24/2003 | 3661... | OPTIMUM CHOI... | 12/15 to 1/14... | 2100 · ACCO... | 1,593.36 |
| Paycheck | 11/28/2003 | 14613 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 11/28/2003 | 14617 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 12/12/2003 | 14704 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 12/12/2003 | 14708 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Bill | 12/23/2003 | 2730... | OPTIMUM CHOI... | Health Ins | 2100 · ACCO... | 1,593.36 |
| Paycheck | 12/26/2003 | 14770 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 12/26/2003 | 14774 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 12/26/2003 | 14788 | Miranda, Mauricio ... | VOID: | 1103 · DEL. ... | 0.00 |
| Paycheck | 12/26/2003 | 14791 | Sanchez, Hugo A. | | 1103 · DEL. ... | 0.00 |
| Paycheck | 12/26/2003 | 14802 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |
| Paycheck | 12/26/2003 | 14803 | Miranda, Mauricio ... | | 1103 · DEL. ... | 0.00 |

| | |
|---|---|
| Total 6103 · Health | 19,752.19 |
| Total 6100 · Insurance | 19,752.19 |
| Total 6000 · Operating Expenses | 19,752.19 |
| **TOTAL** | 19,752.19 |

D00430

Confidential
A156

UC-303
Document 60-06/96/02/01



DELAWARE
DEPARTMENT OF
**LABOR**

DIVISION OF UNEMPLOYMENT INSURANCE
APPEALS
4425 N. MARKET STREET
P. O. BOX 9950
WILMINGTON, DE 19809

## REFEREE'S DECISION

**CLAIMANT**

| RENEE M BUTZ |
| 2 CYMBAL COURT |
| NEWARK, DE 19702 |

**EMPLOYER**

| LAWNS UNLIMITED |
| ATTN: PERSONNEL |
| 15089 COASTAL HGWY |
| MILTON, DE 19968 |

APPEAL DOCKET NUMBER: 230909

SOCIAL SECURITY NUMBER: **Redacted**

DATE OF CLAIM: 1-25-2004

DATE OF APPEAL: 3-1-2004

DATE OF HEARING: 3-22-2004

PLACE OF HEARING: NEWARK

DATE DECISION MAILED: 3-26-2004

LAST DAY TO FILE AN APPEAL: 4-5-2004

### RIGHT OF FURTHER APPEALS

Section 3318, Title 19, Delaware Code, provides that any interested party involved, the claimant, the employer, or the Claims Deputy has a right of appeal from the decision of the Referee to the Unemployment Insurance Appeal Board, and further provides that the opinion of the Referee "shall be deemed to be the final decision of the Department of Labor unless within 10 days after the date of notification or mailing of such decision further appeal is initiated ..." You are, therefore, hereby notified that if an appeal is not made within the ten-day period specified by law, all further right to appeal is lost and the case cannot be reopened. The appeal may be made at the local office or directed to Department of Labor, Division of Unemployment Insurance, 4425 N. Market Street, P. O. Box 9950, Wilmington, DE 19809.

APPEARANCES: CHARLES HERAK, APPEALS REFEREE; RENEE M. BUTZ, CLAIMANT; DEBRA WATSON, OFFICE ASSISTANT; JEANNE FLEMING, EDWARD FLEMING, OWNERS; ERIC HOWARD, EMPLOYER'S ATTORNEY.
CLAIMS DEPUTY'S DETERMINATION: THE CLAIMANT WAS DISCHARGED FROM THE WORK WITHOUT JUST CAUSE AND IS ENTITLED TO THE RECEIPT OF UNEMPLOYMENT BENEFITS.

STATUTORY PROVISION INVOLVED: Title 19, Delaware Code: 3315(2)

D00111

2

## APPEAL DOCKET NO.: 230909

SUMMARY OF EVIDENCE:

The claimant worked as an officer manager for Lawns Unlimited and earned $12.00 an hour. She began her employment in 2002 and her actual last day of work was December 23, 2003.

Debra Watson an office assistant testified for the employer as follows: She began work with the employer in November of 2003. She knew the claimant was pregnant. A few weeks before December 23 she saw the claimant go upstairs to make a telephone call. She overheard the claimant saying something like "who will I be working with? Is a certain person still there?" When the claimant returned from upstairs Ms. Watson asked her about the conversation. Ms. Watson said something like "your leaving and not coming back". The claimant replied "that's right". The claimant said that she was not going to tell management about leaving because she wanted to collect vacation and sick pay.

Early in the morning on December 23 the claimant called the office and said that her water had broken and she was going into the hospital. The claimant did at work arrive that day about 8:30 a.m. saying that it was a false alarm but that she would be leaving that day at 2:00 p.m. She said she would not be back. She told Ms. Watson that she would mail in her keys. She took personal items with her including a toothbrush and toothpaste. She also said that she was taking some payroll reports in the event she had to sue the employer for vacation pay.

Ed Fleming, owner of the employer testified as follows: At about 12:30 p.m. on December 23 Ms. Watson told him that Renee was leaving as she was having contractions twenty minutes apart. He told the claimant on two occasions that she should fill out a form required from all employees who request vacation or leave. He handed her the form. He never received a completed form. The form asked for a start date of the leave and a return to work date.

At about 4 p.m. that day Ms. Watson told him that the claimant did not intend to return to work. At about 5:30 p.m. he called the claimant to ask whether she would return to work. She said no, she was not quitting. He asked her to come into the office at 9:30 a.m. the following day to discuss the matter. She did not appear the next day. When the claimant did not appear on December 24 he called the claimant and talked to the claimant's husband. The husband said that she was not coming to the meeting and not to bother her.

The claimant never called and said she would be ready to come back to work. He has not hired a replacement for the claimant. On January 7, 2004, the employer wrote the claimant a letter which states in part "At this point, I feel I must make a professional employment decision based on information that I have. I have determined that you have terminated your employment with Lawns Unlimited effective December 23, 2003, when

D00112

APPEAL DOCKET NO.: 230909

you left the premises, cleaning out your desk and taking all of you belongs." The claimant did not reply to that letter. The employer feels that the claimant quit.

The claimant testified as follows: She never told Ms. Watson that she was quitting and not coming back. She has not taken a job with a former employer. She did take a job on March 1, 2004 with a new employer. She said that her intentions were to come back after she was released by the doctor after the birth of her child. She told Ms. Watson that whether she return or not would be based on her child's needs.

On the morning of December 23 she was driving to work from her home in Newark, Delaware. It is a sixty-five mile drive to work and takes her about forty-five minutes to one hour in commuting time. She was near work when she was concerned about her pregnancy and stopped in at the BB Hospital. She was instructed by her doctor to not drive and go home. She did leave work at 2:00 that day and did take a few personal items with her. She wanted her toothbrush and toothpaste in case she had to really go into the hospital. She had her baby on December 30, 2003.

Mr. Fleming did demand that she come into the office on December 24. He was told via her husband that she was not permitted to drive in her condition and would not be in to work.

The employer implied by its questions that since the claimant lived sixty-five miles from work she was intending to quit because the commute would have been too long for her.

The claimant further testified that she is the office manager and although the company does have a vacation request form, the form is many times ignored.

FINDINGS OF FACT:

The claimant worked as office manager for Lawns Unlimited. She began work in 2002 and her actual last day of work was December 23, 2003.

The claimant was pregnant on December 23, 2003 and left work about 2 p.m. that afternoon because she was concerned about labor pains. She did not inform management that she would not be returning to work. The claimant had a baby on December 30, 2004. The claimant did not fill out a leave request form which the employer uses for people who have to have time off from work. The claimant was handed this form on December 23, 2003.

The employer wrote a letter to the claimant dated January 7, 2004. Part of the letter in essence says that the employer has determined that the claimant quit and did not intend to return after the doctor released her for work after the birth of her child.

D00113

4

APPEAL DOCKET NO.: 230909

Deborah Watson and the claimant have different versions of whether or not the claimant told Ms. Watson that she would not be returning to work after her pregnancy. The claimant never told management that she would not be returning to work.

CONCLUSIONS OF LAW:

SECTION 3315(2), TITLE 19, DELAWARE CODE, PROVIDES AS FOLLOWS:

> AN INDIVIDUAL SHALL BE DISQUALIFIED FOR BENEFITS:

> (2) For the week in which the individual was discharged from the individual's work for just cause in connection with the individual's work and for each week thereafter until the individual has been employed in each of 4 subsequent weeks (whether or not consecutive) and has earned wages in covered employment equal to not less than 4 times the weekly benefit amount.

In a discharge case, the employer must show by a preponderance of evidence that the claimant was discharged for just cause in connection with his work. Just cause exists where the claimant commits a willful or wanton act or engages in a willful or wanton pattern of conduct in violation of the employer's interest, his duty to the employer or his expected standard of conduct.

The first issue in this case is whether this situation is a quit or a discharge. The employer's letter of January 7, 2004 states that the employer is making a "professional employment decision based on information that I have". This decision is that the claimant quit. The claimant denied that she quit. She did not inform management that she quit. Based on the evidence at the hearing I cannot find that the claimant quit.

The next issue in the case is whether the employer had good cause to discharge the claimant. The employer states that the claimant failed to fill out a leave request form. However, it is clear that the employer knew that the claimant was pregnant and would be out for at least several weeks due to the birth of a child which occurred on December 30, 2003. I find that the failure to fill out a leave request form is not material to this case. The employer was also upset because the claimant did not come to a meeting on December 24, 2004 to discuss her discharge/quit issue. The claimant lived about sixty-five miles away from her place of employment and it is a reasonable conclusion that because of the coming birth of her child, she should not be driving that distance. The employer has not carried its burden to show that it had good cause to discharge the claimant. The claimant is qualified for unemployment benefits.

DECISION:

D00114

APPEAL DOCKET NO.: 230909

The decision of the Claims Deputy is AFFIRMED. The claimant was discharged from her work without good cause in connection with her work. Therefore, the claimant is not disqualified from receiving unemployment insurance benefits pursuant to Section 3315(2), Title 19, Delaware Code and will be eligible to receive benefits for each week of unemployment insurance benefits claimed for which the division determines she meets the eligible requirements of Section 3314, Title 19, Delaware Code. The division shall issue a determination for any week(s) of unemployment insurance benefits claimed for which the claimant is subsequently deemed ineligible to receive benefits.

Meb

CHARLES HERAK
APPEALS REFEREE

D00115

OPTIMUM CHOICE
A MAMSI Health Plan

SUBSCRIBER RECONCILIATION 03-15-04 TO 04-14-04

| RUN DATE | 02-23-04 |
|---|---|
| STATEMENT | 3738983 |

LAWNS UNLIMITED,LTD.021
Number of Policy Holders by Coverage Type:

| Contract Type | Health | Rate | Dental | Rate | Vision | Rate |
|---|---|---|---|---|---|---|
| Single(S) | 3 | $341.31 | 0 | $0.00 | 0 | $0.00 |
| Double(D) | 0 | $727.01 | 0 | $0.00 | 0 | $0.00 |
| Parent/Child(P) | 0 | $628.01 | 0 | $0.00 | 0 | $0.00 |
| Parent/Children(SC) | | | | | | |
| Family(F) | 1 | $965.95 | 0 | $0.00 | 0 | $0.00 |
| Total | 4 | | 0 | | 0 | |

| GROUP # | SUB-GRP# |
|---|---|
| 27302 | |

PAGE     1

DUE DATE: 03-15-2004

| SUB-ID | NAME | SS# | COV TYPE | HEALTH COVERAGE * MEM CNT | HMO HEALTH PREMIUM | MLH HEALTH PREMIUM | DENTAL COVERAGE ** COV TYPE | MEM CNT | DENTAL PREMIUM | LIFE/AD&D PREMIUM | LIFE/DIS COVERAGE * WK DIS IN PREMIUM | SUPP LIFE PREMIUM | DEP/LIFE PREMIUM | OTHER COVERAGE | TOTAL PREMIUM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C0398449*01 | Beauchemin, Renee M | | | | | | | | | | | | | | $0.00 |
| | *T-adjustment for 02/15/04 | | WAS S | -1 | <$270.83> | $0.00 | | | | <$1.70> | | | | | <$272.53> |
| | *T-adjustment for 01/15/04 | | WAS S | -1 | <$270.83> | $0.00 | | | | <$1.70> | | | | | <$272.53> |
| C732327*01 | Fleming, Edward W | Redacted | F | 7 | $965.95 | $0.00 | | | | $5.30 | | | | | $971.25 |
| C732330*01 | Miranda, Mauricio | | S | 1 | $341.31 | $0.00 | | | | $2.40 | | | | | $343.71 |
| C732329*01 | Sanchez, Hugo A | | S | 1 | $341.31 | $0.00 | | | | $5.30 | | | | | $346.61 |
| C0257917*01 | Watson, Debra S | | S | 1 | $341.31 | $0.00 | | | | | | | | | $341.31 |

3-15-04 | 4-14-04

| | | COV MEM CNT | | | |
|---|---|---|---|---|---|
| Total current month premiums | | | $1,989.88 | $13.00 | $2,002.88 |
| Total adjustments for prior periods | | | <$541.66> | <$3.40> | <$545.06> |
| GRAND TOTAL | | 8 | $1,448.22 | $9.60 | $1,457.82 |

ADJUSTMENT CODES    A - ADDITION    C - COVERAGE CHANGE    T - TERMINATION    + Need dependent SS#(s) , Please contact member services with information
*COVERAGE PROVIDED BY MAMSI LIFE AND HEALTH INSURANCE COMPANY
**DEPENDING ON PLAN CHOSEN, INDEMNITY DENTAL COVERAGE PROVIDED BY MAMSI LIFE AND HEALTH INSURANCE COMPANY, DENTAL DISCOUNT COVERAGE PROVIDED BY ALLIANCE PPO, LLC.

D00086

CHOICE INC.
A MAMSI Health Plan

SUBSCRIBER RECONCILIATION 02-15-04 TO 03-14-04

| Contract Type | Health | Rate | Dental | Rate | Vision | Rate |
|---|---|---|---|---|---|---|
| Single(S) | 4 | $270.83 | 0 | $0.00 | 0 | $0.00 |
| Double(D) | 0 | $576.88 | 0 | $0.00 | 0 | $0.00 |
| Parent/Child(P) | 0 | $498.32 | 0 | $0.00 | 0 | $0.00 |
| Parent/Children(SC) | | | | | | |
| Family(F) | 1 | $766.47 | 0 | $0.00 | 0 | $0.00 |
| Total | 5 | | 0 | | 0 | |

| RUN DATE | 01-22-04 |
|---|---|
| STATEMENT | 3713010 |

GROUP # 27302   SUB-GRP#

LAWNS UNLIMITED,LTD.021
Number of Policy Holders by Coverage Type:

PAGE    1

DUE DATE: 02-15-2004

| SUB-ID | NAME | SS# | COV TYPE | HEALTH COVERAGE * MEM CNT | HMO HEALTH PREMIUM | MLH HEALTH PREMIUM | DENTAL COVERAGE ** COV TYPE | MEM CNT | DENTAL PREMIUM | LIFE/DIS COVERAGE * LIFE/AD&D PREMIUM | WK DIS IN PREMIUM | SUPP LIFE PREMIUM | DEP/LIFE PREMIUM | OTHER COVERAGE | TOTAL PREMIUM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C0398449*01 | Beauchemin, Renee M | | S | 1 | $270.83 | $0.00 | | | | $1.70 | | | | | $272.53 |
| C732327*01 | Fleming, Edward W | | F | 7 | $766.47 | $0.00 | | | | $5.30 | | | Renee | | $771.77 |
| C732330*01 | Miranda, Mauricio | | S | 1 | $270.83 | $0.00 | | | | $2.10 | | | | | $272.93 |
| C732329*01 | Sanchez, Hugo A | | S | 1 | $270.83 | $0.00 | | | | $5.30 | | | | | $276.13 |
| C0257917*01 | Watson, Debra S | | S | 1 | $270.83 | $0.00 | | | | | | | | | $270.83 |
| | *A-adjustment for 01/15/04 | | S | 1 | $270.83 | $0.00 | | | | | | | | | $270.83 |

2-14/3-15-04

(1-15 to 2-14-04) add Debbie Watson

| | | | | $1,849.79 | | | | | $14.40 | | | | | $1,864.19 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Total adjustments for prior periods | | | | $270.83 | | | | | | | | | | $270.83 |
| GRAND TOTAL | | | 12 | $2,120.62 | | | | | $14.40 | | | | | $2,135.02 |

Total current month premiums

to add Debbie 1-15 to 2-14-04

ADJUSTMENT CODES    A - ADDITION    C - COVERAGE CHANGE    T - TERMINATION    + Need dependent SS#(si) , Please contact member services with information
* COVERAGE PROVIDED BY MAMSI LIFE AND HEALTH INSURANCE COMPANY
** DEPENDING ON PLAN CHOSEN, INDEMNITY DENTAL COVERAGE PROVIDED BY MAMSI LIFE AND HEALTH INSURANCE COMPANY, DENTAL DISCOUNT COVERAGE PROVIDED BY ALLIANCE PPO, LLC.

D00087

OPTIMUM
CHOICE inc.
A MAMSI Health Plan

SUBSCRIBER RECONCILIATION 01-15-04 TO 02-14-04

| Contract Type | Health | Rate | Dental | Rate | Vision | Rate |
|---|---|---|---|---|---|---|
| Single(S) | 3 | $270.83 | 0 | $0.00 | 0 | $0.00 |
| Double(D) | 0 | $576.88 | 0 | $0.00 | 0 | $0.00 |
| Parent/Child(P) | 0 | $498.32 | 0 | $0.00 | 0 | $0.00 |
| Parent/Children(SC) | | | | | | |
| Family(F) | 1 | $766.47 | 0 | $0.00 | 0 | $0.00 |
| Total | 4 | | 0 | | 0 | |

| RUN DATE | 12-23-03 |
|---|---|
| STATEMENT | 3686851 |

| GROUP # | SUB-GRP# |
|---|---|
| 27302 | |

LAWNS UNLIMITED,LTD.021
Number of Policy Holders by Coverage Type:

PAGE    1

DUE DATE: 01-15-2004

| SUB-ID | NAME | SS# | COV TYPE | HEALTH COVERAGE * MEM CNT | HMO HEALTH PREMIUM | MLH HEALTH PREMIUM | DENTAL COVERAGE ** COV TYPE | MEM CNT | DENTAL PREMIUM | LIFE/AD&D PREMIUM | LIFE/DIS COVERAGE * WK DIS IN PREMIUM | SUPP LIFE PREMIUM | DEP/LIFE PREMIUM | OTHER COVERAGE | TOTAL PREMIUM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C0398449*01 | Beauchemin, Renee M | | S | 1 | $270.83 | $0.00 | | | | $1.70 | | | | | $272.53 |
| C732327*01 | Fleming, Edward W | | F | 7 | $766.47 | $0.00 | | | | $5.30 | | | | | $771.77 |
| C732330*01 | Miranda, Mauricio | | S | 1 | $270.83 | $0.00 | | | | $2.10 | | | | | $272.93 |
| C732329*01 | Sanchez, Hugo A | | S | 1 | $270.83 | $0.00 | | | | $5.30 | | | | | $276.13 |
| Total current month premiums | | | | | $1,578.96 | | | | | $14.40 | | | | | $1,593.36 |
| *Total adjustments for prior periods | | | | | | | | | | | | | | | |
| GRAND TOTAL | | | | 10 | $1,578.96 | | | | | $14.40 | | | | | $1,593.36 |

ADJUSTMENT CODES    A - ADDITION    C - COVERAGE CHANGE    T - TERMINATION    + Need dependent SS#(si) , Please contact member services with information
* COVERAGE PROVIDED BY MAMSI LIFE AND HEALTH INSURANCE COMPANY
** DEPENDING ON PLAN CHOSEN, INDEMNITY DENTAL COVERAGE PROVIDED BY MAMSI LIFE AND HEALTH INSURANCE COMPANY, DENTAL DISCOUNT COVERAGE PROVIDED BY ALLIANCE PPO, LLC.

D00088

SUBSCRIBER RECONCILIATION 01-15-03 TO 02-14-03

| RUN DATE | 12-23-02 |
|---|---|
| STATEMENT | 3373620 |

LAWNS UNLIMITED,LTD.021
Number of Policy Holders by Coverage Type:

| Contract Type | Health | Rate | Dental | Rate | Vision | Rate |
|---|---|---|---|---|---|---|
| Single(S) | 3 | $203.81 | 0 | $0.00 | 0 | $0.00 |
| Double(D) | 0 | $434.13 | 0 | $0.00 | 0 | $0.00 |
| Parent/Child(P) | 0 | $375.01 | 0 | $0.00 | 0 | $0.00 |
| Parent/Children(SC) | | | | | | |
| Family(F) | 1 | $576.80 | 0 | $0.00 | 0 | $0.00 |
| Total | 4 | | 0 | | 0 | |

| | | | | HEALTH COVERAGE * | | | DENTAL COVERAGE ** | | | LIFE/DIS COVERAGE * | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SUB-ID | NAME | SS# | COV TYPE | MEM CNT | HMO HEALTH PREMIUM | MLH HEALTH PREMIUM | COV TYPE | MEM CNT | DENTAL PREMIUM | LIFE/AD&D PREMIUM | WK DIS IN PREMIUM | SUPP LIFE PREMIUM | DEP/LIFE PREMIUM |
| C0398449*01 | Beauchemin, Renee M | | S | 1 | $203.81 | $0.00 | | | | $1.70 | | | |
| C732327*01 | Fleming, Edward W | | F | 7 | $576.80 | $0.00 | | | | $3.60 | | | |
| C732330*01 | Miranda, Mauricio | | S | 1 | $203.81 | $0.00 | | | | $2.10 | | | |
| C732329*01 | Sanchez, Hugo A | | S | 1 | $203.81 | $0.00 | | | | $5.30 | | | |
| Total current month premiums | | | | | $1,188.23 | | | | | $12.70 | | | $1,200.93 |
| *Total adjustments for prior periods | | | | | | | | | | | | | |
| GRAND TOTAL | | | | 10 | $1,188.23 | | | | | $12.70 | | | $1,200.93 |

ADJUSTMENT CODES      A - ADDITION     C - COVERAGE CHANGE     T - TERMINATION     + Need dependent SS#(si) , Please contact member services with information
*  COVERAGE PROVIDED BY MAMSI LIFE AND HEALTH INSURANCE COMPANY
** DEPENDING ON PLAN CHOSEN, INDEMNITY DENTAL COVERAGE PROVIDED BY MAMSI LIFE AND HEALTH INSURANCE COMPANY, DENTAL DISCOUNT COVERAGE PROVIDED BY ALLIANCE PPO, LLC.

D00089

SUBSCRIBER RECONCILIATION 12-15-03 TO 01-14-04

| | | Health | Rate | Dental | Rate | Vision | Rate |
|---|---|---|---|---|---|---|---|
| Contract Type | | | | | | | |
| Single(S) | | 3 | $270.83 | 0 | $0.00 | 0 | $0.00 |
| Double(D) | | 0 | $576.88 | 0 | $0.00 | 0 | $0.00 |
| Parent/Child(P) | | 0 | $498.32 | 0 | $0.00 | 0 | $0.00 |
| Parent/Children(SC) | | | | | | | |
| Family(F) | | 1 | $766.47 | 0 | $0.00 | 0 | $0.00 |
| | Total | 4 | | 0 | | 0 | |

| RUN DATE | 11-24-03 |
|---|---|
| STATEMENT | 3661457 |

LAWNS UNLIMITED,LTD.021
Number of Policy Holders by Coverage Type:

| SUB-ID | NAME | SS# | COV TYPE | HEALTH COVERAGE * MEM CNT | HMO HEALTH PREMIUM | MLH HEALTH PREMIUM | DENTAL COVERAGE ** COV TYPE | MEM CNT | DENTAL PREMIUM | LIFE/AD&D PREMIUM | LIFE/DIS COVERAGE * WK DIS IN PREMIUM | SUPP LIFE PREMIUM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C0398449*01 | Beauchemin, Renee M | | S | 1 | $270.83 | $0.00 | | | | $1.70 | | |
| C732327*01 | Fleming, Edward W | | F | 7 | $766.47 | $0.00 | | | | $5.30 | | |
| C732330*01 | Miranda, Mauricio | | S | 1 | $270.83 | $0.00 | | | | $2.10 | | |
| C732329*01 | Sanchez, Hugo A | | S | 1 | $270.83 | $0.00 | | | | $5.30 | | |
| | | | | | | | | | | | | $1,593.36 |
| Total current month premiums | | | | | $1,578.96 | | | | | $14.40 | | $1,593.36 |
| *Total adjustments for prior periods | | | | | | | | | | | | |
| GRAND TOTAL | | | | 10 | $1,578.96 | | | | | $14.40 | | |

ADJUSTMENT CODES      A - ADDITION    C - COVERAGE CHANGE    T - TERMINATION    + Need dependent SS#(s) ,  Please contact member services with information
* COVERAGE PROVIDED BY MAMSI LIFE AND HEALTH INSURANCE COMPANY
** DEPENDING ON PLAN CHOSEN, INDEMNITY DENTAL COVERAGE PROVIDED BY MAMSI LIFE AND HEALTH INSURANCE COMPANY, DENTAL DISCOUNT COVERAGE PROVIDED BY ALLIANCE PPO, LLC.

D00090

A166



William C. Manlove
1st Commissioner District

Nelson K. Bolender, President
2nd Commissioner District

Harry A. Hepbron
3rd Commissioner District

Phyllis Kilby, Vice-President
4th Commissioner District

Mark H. Guns
5th Commissioner District

Alfred C. Wein, Jr.
County Administrator
410-996-5203

Board of County Commissioners
107 North Street, Elkton, MD 21921
410-996-5201 Fax: 410-996-1014

Cecil County Information
410-996-5200
410-658-4041

**CECIL COUNTY GOVERNMENT**
129 East Main Street
Elkton, MD 21921
February 18, 2004

Renee M. Butz
2 Cymbal Court
Newark, DE 19702

Dear Ms. Butz:

Please be advised that the Treasurer of Cecil County has appointed you as a Junior Accountant effective March 1, 2003, pending the results of your physical and drug screen. Your hourly rate will be $12.88 (Grade 6). In accordance with the Personnel Policies & Procedures Manual, Article VII, Section A277-13 "Unclassified Positions", you will serve at the pleasure of the Treasurer.

As you know, your physical examination and drug screen was scheduled for 10:30 a.m., Wednesday, February 18, 2004, in the Occupational Medicine Department at 111 Railroad Avenue, Elkton, MD. We will confirm your starting date and time once Union Hospital notifies this office that you are medically qualified for hire without restrictions.

Please review the enclosed paperwork and complete as much as you can. **Bring the entire folder with you to your employee orientation** scheduled **for Monday, March 1, 2004, at 8 a.m.** in the Human Resources Office, 129 East Main Street, Room 122. You must also present evidence of your authorization to work in the United States by presenting your driver's license and social security card or birth certificate. Should you have any questions regarding the required paperwork, please call my office.

Your first paycheck will be issued on March 19, 2004, for the hours worked from 03/01/04 through 03/05/04 and every other Friday thereafter. Please note that 2% of your base salary will be deducted from each payroll and remitted to the State Retirement Agency as your contribution towards this benefit.

Wishing you much success in your employment and with kind regards.

Sincerely,

HUMAN RESOURCES DEPARTMENT

Donna M. Nichols
Director

cc: Pamela Howard, Treasurer

udget Manager        Department of Aging        Economic Development        Emergency Services        Human Resources        Permits & Inspections        Planning, Zoning & Parks        Public Works
410-996-5291        410-996-5295        410-996-6292        410-996-5350        410-996-5250        410-996-5237        410-996-5220        410-996-P000115

A167

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974

| | ENTE   HARGE NUMBER |
|---|---|
| | ☐ FEPA 04020302 |
| | ☐ EEOC 17CA400296 |

**Delaware Department of Labor** and EEOC

(State, or local Agency, if any)

| NAME (Indicate Mr., Mrs., Ms) | HOME TELEPHONE NO. (Include Area Code) |
|---|---|
| Renee Marie Butz | (302) 832-1704 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 2 Cymbal Court   Newark DE 19702   NCC | | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (*If more than one, list below.*)

| NAME | NO. OF EMPLOYEES OR | TELEPHONE NUMBER (Incl. Area Code) |
|---|---|---|
| Lawns Unlimited, Ltd. | MEMBERS 23 | (302) 645-5296 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| 15089 Coastal Hwy  Milton, DE  19968 | |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| | |

| ☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☐ AGE | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RETALIATION ☐ DISABILITY ☐ OTHER (Specify) | EARLIEST 09/01/03   LATEST 12/23/2003 |
| | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s):

I. I am a female individual who began working for Respondent on 09/01/02 most recently as an Office Manager. In April 2003 I informed Respondent that I was pregnant and would be taking maternity leave once the baby was born. During my pregnancy Ed Fleming (President/Owner) and Jeanne Fleming (Owner/Treasurer) made numerous comments about my pregnancy and what I should do after the baby was born in regards to staying home and being a homemaker. On 12/23/03 I went into labor and worked half a day and then went out on maternity leave. That same day in the evening Respondent contacted me at home and demanded I come into work the next day and sign an employment contract. The following day I was contacted by Respondent again and instructed to come to work. That same day I sent Respondent an email stating that I was on maternity leave and would return to work after six weeks. I did not report to work on 12/24/03 and it was during my maternity leave that Respondent terminated my employment.

II. Respondent states that my employment was terminated because I did not inform them of my intended leave from work to take care of my new baby.

III. I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as ammended and the Delaware Discrimination in Employment Act based upon my pregnancy because: 1.Respondent was aware of my pregnancy from the time that I found out I was pregnant, 2. Respondent was aware that I would probably have the baby prior to my due date in January 2004, 3. On the day I went into labor I went to work and before leaving at 2pm I informed Respondent that I would begin my maternity leave effective immediately, 4.I informed Respondent that I would not be back to work until six weeks after the last date I worked and yet Respondent claims I abandoned my job. 5. Raul Rodriguez/Roberto Gonzales was absent from work for a period of 1 week due to a motor vehicle accident and was not terminated while he was out on medical leave.

| ☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SIGNATURE OF COMPLAINANT |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |

| I declare under penalty of perjury that the foregoing is true and correct. | NOTARY - (When necessary to meet State and Local Requirements) |
|---|---|
| *2-17-04*    *Renee Butz* | |
| Date              Charging Party (Signature) | Subscribed and sworn to before me this date    (Day, month, and year) |

EEOC FORM 5   PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED
REV 6/92

A168

D00128

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974

| | ENTI | CHARGE NUMBER |
|---|---|---|
| | ☐ FEPA | |
| | ☐ EEOC | |

**Delaware Department of Labor** and EEOC

*(State, or local Agency, if any)*

| NAME (Indicate Mr., Mrs., Ms) | HOME TELEPHONE NO. (Include Area Code) |
|---|---|
| Renee Marie Butz | (302) 832-1704 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 2 Cymbal Court  Newark DE 19702   NCC | | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one, list below.)*

| NAME | NO. OF EMPLOYEES OR | TELEPHONE NUMBER (Incl. Area Code) |
|---|---|---|
| Lawns Unlimited, Ltd. | MEMBERS 23 | (302) 645-5296 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| 15089 Coastal Hwy  Milton, DE  19968 | |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| | |

| ☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☐ AGE <br> ☐ RETALIATION ☐ DISABILITY ☐ OTHER (Specify) | DATE DISCRIMINATION TOOK PLACE <br> EARLIEST  09/01/03 <br> LATEST    12/23/2003 <br> ☐ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s):

I. I am a female individual who began working for Respondent on 09/01/02 most recently as an Office Manager. In April 2003 I informed Respondent that I was pregnant and would be taking maternity leave once the baby was born. During my pregnancy Ed Fleming (President/Owner) and Jeanne Fleming (Owner/Treasurer) made numerous comments about my pregnancy and what I should do after the baby was born in regards to staying home and being a homemaker. On 12/23/03 I went into labor and worked half a day and then went out on maternity leave. That same day in the evening Respondent contacted me at home and demanded I come into work the next day and sign an employment contract. The following day I was contacted by Respondent again and instructed to come to work. That same day I sent Respondent an email stating that I was on maternity leave and would return to work after six weeks. I did not report to work on 12/24/03 and it was during my maternity leave that Respondent terminated my employment.

II. Respondent states that my employment was terminated because I did not inform them of my intended leave from work to take care of my new baby.

III. I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as ammended and the Delaware Discrimination in Employment Act based upon my pregnancy because: 1.Respondent was aware of my pregnancy from the time that I found out I was pregnant, 2. Respondent was aware that I would probably have the baby prior to my due date in January 2004, 3. On the day I went into labor I went to work and before leaving at 2pm I informed Respondent that I would begin my maternity leave effective immediately, 4.I informed Respondent that I would not be back to work until six weeks after the last date I worked and yet Respondent claims I abandoned my job. 5. Raul Rodriguez/Roberto Gonzales was absent from work for a period of 1 week due to a motor vehicle accident and was not terminated while he was out on medical leave.

| ☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SIGNATURE OF COMPLAINANT <br><br> I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. <br><br> _____ <br> Date        Charging Party (Signature) | NOTARY - (When necessary to meet State and Local Requirements) <br><br> Subscribed and sworn to before me this date        (Day, month, and year) |

EEOC FORM 5 <br> REV 6/92        PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED

D00129

# EEOC AFFIDAVIT

| Charge #: | | Date:   02/17/04 |
|---|---|---|

## Charging Party Information

| | | | |
|---|---|---|---|
| **Name:**   Renee Marie Butz | | | |
| **Street:**  2 Cymbal Court | | **City:**    Newark | |
| **County:**  NCC    **State:** DE | | **Zip:**     19702 | |
| **Tel (H):** (302) 832-1704 | | **Tel (W):** | |
| **DOB:** | **Sex:** Female | **Race:**    White | |
| **Nat'l Origin:** U.S. | | **SSN:**        -7861 | |

## Contact Person

| |
|---|
| **Name:**   Darlene Rizzo |
| **Tel (H):** (~~~) ~~~ ~~~~      **Tel (W):** |
| **Address:** |

## Employment Information

Date of Hire: 09/01/02
Date of Termination: 12/23/03
Date of Alleged Violation: 12/23/03
Relief Sought: Other Damages
Check One: ☐ working   ☒ not working   ☐ sought employment at

## Respondent Information

**Name:**   Lawns Unlimited, Ltd.
**Address:** 15089 Coastal Hwy  Milton, DE  19968
**Type of Business:** Lawn Care
**Size of Business:** 23

## Basic Charge Data

| | |
|---|---|
| Receiving Office: 17C | Intake Unit: 1 |
| Accountable Office: 17C | Intake Officer: mss |
| Initial Inquiry: 01/23/04 | Respondent Type: E |
| Received this Office: 02/17/04 | County: 003 |
| Source of Complaint: A | SMSA: 9160 |
| Federal Referral Transfer: | SIC: 078 |
| Alleged Basis: GP | Federal Agency: |
| | Alleged Issues: T2, D2 |

A170

D00130

## CONTINUATION OF AFFIDAVIT

**1.** **COVERAGE/RESPONDENT'S BUSINESS:**
Lawn Care Services

**2.** **RELEVANT WORK HISTORY:**
I. I am a female individual who began working for Respondent on 09/01/02 most recently as an Office Manager. In April 2003 I informed Respondent that I was pregnant and would be taking maternity leave once the baby was born. During my pregnancy Ed Fleming (President/Owner) and Jeanne Fleming (Owner/Treasurer) made numerous comments about my pregnancy and what I should do after the baby was born in regards to staying home and being a homemaker. On 12/23/03 I went into labor and worked half a day and then went out on maternity leave. The following day I was contacted by Respondent and instructed to come to work. I did not return to work and it was during my maternity leave that Respondent terminated my employment.

**3.** **PERSONAL HARM:**
I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as ammended and the Delaware Discrimination in Employment Act based upon my pregnancy because: 1.Respondent was aware of my pregnancy from the time that I found out I was pregnant, 2. Respondent was aware that I would probably have the baby prior to my due date in January 2004, 3. On the day I went into labor I went to work and before leaving at 2pm I informed Respondent that I would begin my maternity leave effective immediately, 4.I informed Respondent that I would not be back to work until six weeks after the last date I worked and yet Respondent claims I abandoned my job. 5. Raul Rodriguez/Roberto Gonzales was absent from work for a period of 1 week due to a motor vehicle accident and was not terminated while he was out on medical leave.

**4.** **RESPONDENT'S EXPLANATION FOR THE ALLEGED HARM AND ITS POLICIES AND PRACTICES:**
Respondent states that my employment was terminated because I did not inform them of my intended leave from work to take of my new baby.

**5.** **DIRECT EVIDENCE:**
See attached

**6.**

Debbie Watson (302) 9__ __ __ Home (

__ I began training her 6 weeks prior to

__ __ __ __ __ __keeper     Wa:

**7.** **COMPARATIVE DATA:**
Raul Rodriguez/Roberto Gonzales (same person 2 names) took time off work for medical reasons and was not terminated

**8.** **CLASS HARM:**
N/A

**9.** **REMEDY/RELIEF SOUGHT:**
Other Damages

_____

DATE AND INITIAL

PAGE #

A171

D00131

CONTINUATION OF EEOC AFFIDAVIT

## SIGNATURE PAGE

This Affidavit has been prepared by a representative of the EEOC in an official capacity as part of an investigation. It has been read by me and I agree with the contents. Where changes (if any) were necessary, I have initialed such changes.

If affidavit is signed before a Notary Public, complete the following:

_____
Signature of Interviewee

State of _____    My Commission expires _____

County of _____

Subscribed and sworn to before me on

This _____ day of _____ ,

20 ____ , at _____ .    _____
Signature of Notary Public

Sign below if affidavit is signed before an EEO Representative:

| I declare under the penalty that the foregoing is true and correct. | | | |
|---|---|---|---|
| DATE | SIGNATURE OF WITNESS | SIGNATURE OF EEOC REPRESENTATIVE | PAGE OF |

**PRIVACY ACT STATEMENT: (This form is covered by the Privacy Act of 1974, Public Law 93-579. Authority for requesting and uses of the personal date are given below.)**

1.    FORM NUMBER/TITLE/DATE:  EEOC FORM 133, EEOC AFFIDAVIT, August 1985.

2.    AUTHORITY: 42: USC 2000e(9), 29 USC 201, 29 USC 621.

3.    PRINCIPAL PURPOSES.  Provides a standardized format for obtaining from the Charging Party, Respondent and Witness sworn statements of information relevant to a charge of discrimination.

4.    ROUTINE USES.  These affidavits are used to: (1) make an official determination regarding the validity of the charge of discrimination; (2) guide the Commission's investigatory activity; and (3) in Title VII, Equal Pay Act, and Age Discrimination in Employment Act litigation, to impeach or substantiate a witness's testimony.

5.    WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION: Voluntary.  Failure to provide an affidavit has no effect upon the jurisdiction of the Commission to process a charge.  However, sworn statements submitted by the parties are, of course, relied upon more heavily than unsworn statements in making determination as to the existence of unlawful discrimination.

EEOC FORM 133 (8/85)

A172

D00132



**PAMELA R. HOWARD**
CECIL COUNTY TREASURER
129 EAST MAIN STREET, ROOM 117
ELKTON, MARYLAND 21921-5970

TELEPHONE: (410) 996-5385 OR (410) 658-4041
FAX: (410) 996-5319

February 11, 2004

Ms. Renee Butz
2 Cymbal Court
Newark, DE  19702

Dear Ms. Butz:

Pending satisfactory results of your pre-employment physical and drug-screening, I am pleased to appoint you to the position of Junior Accountant in the Accounting Section of the Treasurer's Office.

The beginning salary for this position is $26,790 (grade 6) with all applicable County benefits.

A representative from the Department of Human Resources will be contacting you to discuss your official starting date.

We in the Treasurer's Office look forward to working with you and I wish you much success.

Sincerely,

*Pamela Howard*

Pamela Howard

P000116

15089 Coastal Hwy, Milton, De 19968   (302) 645-5296

**Lawn's Unlimited**

# Fax

| To: Eric Howard | From: Ed/ Jeanne Fleming |
|---|---|
| Fax: 302-856-7217 | Pages: 2   (including cover page) |
| Phone: | Date: 2-6-04 |
| Re: | CC: |

☑ Urgent    ☑ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

● Comments:

Eric—
We received an unemployment claim on of
Renee' Butz who we have been discussing
with you. Please read what we have
wrote up and see if you have any
changes or additions.
    Also should we put the part about
rehire?
    You are well versed with the labor
Dept. so we appreciate you recommendation:
How far in depth do we        Thanks,
go? Please advise.            Jeanne

D00103



**Lawn & Tree Health Care Specialists**
15089 COASTAL HWY. MILTON, DE 19968
(302) 645-5296 (302) 629-8873 (302) 678-5296
FAX (302) 645-5276

*Voluntarily resigned*

To: Eric

Re: Renee Butz

*At that time,*

Last Day Worked: 12-23-03

Renee Butz left her employment with Lawns Unlimited suddenly without any
Doctor's authorization or written company leave authorization indicating
she would be on maternity leave. (She told fellow co-workers she was not
returning to work and had accepted employment elsewhere, therefore terminating
her employment with Lawns Unlimited ~~effective December 23, 2003~~, leaving the
premises and cleaning out her desk and taking all her belongings.

We have work available should she choose to be rehired.

*on December 23, 2003,*

A175

D00104

15089 Coastal Hwy, Milton, De 19968   (302) 645-5296

**Lawn's Unlimited**

# Fax

| | | | |
|---|---|---|---|
| **To:** Beth Nycum | **From:** Jeanne Fleming | | |
| **Fax:** 302-368-6605. | **Pages:** 3 | (including cover page) | |
| **Phone:** | **Date:** 2-10-04 | | |
| **Re:** | **CC:** 2-18-04 2nd time | | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

● **Comments:**

Please see 2 pages attached.

D00105

| First | MI | Last Name |
|---|---|---|
|  |  | Blitz |

**NOTICE TO EMPLOYER:** The individual named above has filed a claim for unemployment benefits against the State of Delaware. As the last employer, you are entitled to notification of this filing and to provide information concerning the reason for separation. Please complete this form and include facts known to you which may affect this claimant's eligibility for benefits. Failure to return this separation notice within **7 calendar days** may cause the Department to declare the claimant eligible for benefits on the basis of available information and your employer account may receive a benefit wage charge. As provided under Delaware State Law and regulation, failure to return this request within the prescribed period will bar the employer from subsequently claiming that the individual should be disqualified under any section of Title 19. Benefits will be paid promptly when due, even though an appeal may be filed. *If you desire an appointment to appear in person or have any questions, please contact the appropriate Local Office. (All area codes are 302, (1) Wilmington - 761-8446; (2) Newark - 368-6602; (4) Dover - 739-5461; (7) Georgetown - 856-5611; or (0) Interstate - 761-8428).*

Last Employer:

Street Address: 1524 Burton Av. River

City: State: Zip Code

Last period of employment:
From: / / To: 12 23 3

Please return by 2/6/04 2/13/04           register: 1  2
Via fax to Beth Nycum
Fax# 302-368-6605
Phone# 302-368-6606
email encyum@state.de.us

Employer's Phone Number: ( )

Will you be recalled?
☐ Yes (1)   ☐ No (2)
Date of Recall: / /

Are you employed through a Union Hiring Hall?
☐ Yes (1)   ☐ No (2)

I am unemployed because:

e Date:

Clerk        Office

In accordance with the applicable provisions of the Privacy Act (PL 93-579), the above mentioned claimant has authorized his/her former employer(s) to release all information requested in connection with his/her claim for unemployment compensation.

FIT ☐ Y   ☐ N

---

## SEPARATION INFORMATION

REASON FOR SEPARATION (Check One):
☐ Lack of Work   ☐ Discharge   ☒ Voluntary Quit   ☐ Illness/Disability/Injury   ☐ Other (specify): _____

Give full details of other than "Lack of Work": NA

Last Date of Actual Employment: 12-23-03

Type of Separation: ☒ Permanent   ☐ Temporary

Expected Date of Rehire: _____

Has this person received (or is entitled to receive) any of the following:

|  | Yes | No | From: | Dates To: | Gross Amount |
|---|---|---|---|---|---|
| Holiday Pay |  | ✓ |  |  | $ |
| Vacation Pay |  | ✓ |  |  | $ |
| Severance Pay |  | ✓ |  |  | $ |
| Pension |  | ✓ |  |  | $ |

### TEMPORARY AGENCY EMPLOYERS ONLY

Did you advise the above named employee of the requirement to contact your agency at the end of every assignment?   ☐ Yes   ☐ No

Did this employee contact you?   ☐ Yes   ☐ No

How was the contact made?   ☐ Phone   ☐ In Person   ☐ _____

Who did this employee contact? (Name and/or Title)
_____

Was there any work available?   ☐ Yes   ☐ No

Please provide the following information:

Company Telephone Number: 302-645-5296

Company Fax Number: 302-645-5276

Contact Person (please print): Ed or Jeanne Fleming          E-mail: _____

Company Address (if different than above): _____

Employer Representative Signature: Jeanne Fleming          Date: 2-10-04

Title: Sec-Treas.

STATE OF DELAWARE  DEPARTMENT OF LABOR          EMPLOYER

UC 101C-UC-119C

A177

D00106



*DELAWARE DEPARTMENT OF*
**LABOR**

*Delaware Dept. of Labor   P.O. Box 8099   Newark, Delaware 19714*

FEB 5 REC'D

**Please return this request to: Beth Nycum via Fax   302. 368.6605   BY** 2/10/04
**PHONE 302. 368 6606 ext 203 email: enycum@state.de.us**

## EMPLOYER FACT FINDING        ISSUE: DISCHARGE

**CLAIMANT NAME** _Renee Butz_

**SSN** _____   **DATE** 2/2/04

**What was the period of employment? Begin** 1-4-02 **End** 12-23-03

Was the employment full or part time? _full_

What was the claimant's salary? 12.⁰⁰ per hour   or   _____ annual

If the claimant received severance, please list the last day of work ___NA___

number of weeks of severance ___NA___   and the total amount ___NA___

Who was the immediate supervisor at the time of the discharge? _NA, was not discharged_

How long was this person the claimant's supervisor? _____

Please check the reason for the discharge:   NA

**Inability or poor performance but no misconduct: Yes or NO (circle one) (if this is yes and you are not protesting the claimant's collection of unemployment benefits no further information is necessary except for your signature and phone # below.**

**Misconduct due to** ___NA  Voluntarily resigned___

**Please complete below:**

There was no discharge, **the claimant quit** _yes_ Why did the claimant quit?
_____ _Unknown_ _____

When did the last incident occur that caused the separation? ___NA___

Please provide details of the last incident that caused the discharge or (quit) _____
_____ _See detail below_ _____

Was the claimant given a copy of the company's rules, regulations or policy when hired?
_____ _Yes_ _____

Did the claimant previously receive verbal warnings and, if so, for what violation(s) and when? ___NA___

Did the claimant previously receive written warnings and, if so, for what violation(s) and when? ___NA___

Could you please supply a copy of the appropriate rules and regulations and written warnings or performance agreements that relate to the discharge? NA

**Comments:** _Reneé Butz voluntarily resigned her employment with Lawns Unlimited on 12-23-03 suddenly without any Doctor's authorization, written company leave authorization form and without any communication of any type to the company or supervisors indicating she would be on maternity leave. At that time she told fellow co-workers she was not returning_

**Please sign and date** _Joeanne Lamire_ _2-10-04_

**Phone # or email :** _302-645-5296_

Thank you

_to work and had accepted employment elsewhere, therefore terminating her employment with Lawns Unlimited, leaving the premises and cleaning out her desk and taking all her belongings. We have work available should she choose to be rehired._

D00107

Case 1:05-cv-00495-JJF    Document 12-2    Filed 01/17/2007    Page 51 of 63

REMARKS: Renee Butz voluntarily resigned her employment with Lawns Unlimited on December 23, 2003 suddenly without any Doctor's authorization or written company leave authorization. (Continued over)

☐ LAY-OFF FOR LACK OF WORK

☐ OTHER REASON ☒    EXPLAIN UNDER REMARKS

☐ CHECK HERE IF TEMPORARY LAYOFF OF NOT MORE THAN 45 DAYS.
IF FORMER EMPLOYEE IS ELIGIBLE FOR A PENSION, COMPLETE REVERSE SIDE.

02/03/04
DATE OF NOTICE

FORMER EMPLOYEE    LAST DAY WORKED: 12-23-03    EXPECTED REHIRE DATE

R M BUTZ

CBD: 01/29/04
0000670120
LAWNS UNLIMITED LIMITED

EMPLOYER

SSA. NO.    25710039
TOTAL WAGES    15069 COASTAL HIGHWAY
MILTON    DE    19968 0000

01/25/04    2
DATE OF CLAIM    LO

The above named individual has filed a claim for benefits under the Delaware Unemployment Compensation Law and your name appears as a base period employer on this claim. It is required that you return this card within 7 days from the date of notice indicated above and provide, in detail, the reason for this individual's separation from your employ. Failure to return this card within the period prescribed shall result in benefit wages being charged to your account regardless of the reason for separation.

Form UC-119
Obs No. 60-06 99 06 02

EMPLOYER    Lawns Unlimited, Ltd.

BY    Joanne A. Fleming    DATE    2-3-04

---

## PENSION INFORMATION

AMOUNT OF PENSION (DO NOT INCLUDE FEDERAL SOCIAL SECURITY BENEFITS) $_____

☐ MONTHLY
☐ WEEKLY
☐ OTHER (SPECIFY)

IF EMPLOYEE HAS PARTICIPATED IN PAYING FOR THIS PENSION, PLEASE INDICATE
THE AMOUNT OF PENSION FINANCED WHOLLY BY EMPLOYER FUNDS. $_____

_____

EFFECTIVE DATE OF PENSION _____

(Continued)

ADDITIONAL REMARKS: and without any communication of any type to the company or supervisors indicating she would be on maternity leave. At that time she told fellow co-workers she was not returning to work and had accepted employment elsewhere, therefore terminating her employment with Lawns Unlimited, leaving the premises and cleaning out her desk & taking all her belongings. We have work available should she choose to be rehired.

D00102

Name: Renée M. Ritz (Beauchemin) Date: 1-24-04

## SEXUAL HARASSMENT QUESTIONNAIRE

1. (a) Who harassed you? Provide the name, position or any other identification of each person who harassed you.

Edward Fleming - owner
Burette

(b) Tell us which of these people (if any) had the authority to discipline you, evaluate your performance or control your work assignments.

Edward Fleming

2. Who else was harassed? Provide their names, position or other identification of anyone you know who has been similarly harassed.

None

3. If you were not directly harassed but affected by the offensive conduct of a harasser toward another person, provide the name, position or other identification of the person harassed and the harasser.

N/A

D00363

## SEXUAL HARASSMENT QUESTIONNAIRE - Pg. 2

4. What did the harasser do or say? Provide a detailed, specific description of the harassment. Do not use general or vague terms to describe the offensive conduct or comments.

On the day I began my maternity leave - he called and demanded that I meet with him and Jeanne to discuss me coming back. I told him I could not drive because I was in labor. He told me to tell my husband to take off work and drive me down.

5. When did the harassment occur, and is it continuing? Give dates, approximate dates, day, time of day for each incident of harassment.

On 12/23/03 and on 12/24/03 he called and I was unable to speak with him. He spoke with my husband.

6. Where did the harassment occur?

Over the phone

7. Were there any witnesses? If so, provide the names, position, telephone number and address of witnesses and what they can attest to.

my husband - Scott Butz
(302) 367-4447

D00364

## SEXUAL HARASSMENT QUESTIONNAIRE - Pg. 3

8.  Did you tell the harasser or otherwise indicate that the conduct was unwelcome and it must stop?  If not, why not?  If you did, how did the harasser respond?

No - he had me crying and I could not think due to my condition

9.  Does the employer have a sexual harassment policy that you are aware of?  Is there a provision for reporting sexual harassment?  If so, did you use that procedure?

I am not aware of policy

10. Did you complain about the harassment to management or human resource department, report it to any employer representative or file an internal grievance? Provide the date(s) you complained as well as the name and position of any employer representative you complained to about the harassment.

He was the owner and management. there is no HR department

11. Describe the employer representative's response to any complaint about harassment that you lodged.  If you received a written response, attach a copy.

N/A

A182

D00365

## SEXUAL HARASSMENT QUESTIONNAIRE - Pg. 4

12.  Whom else did you tell about the harassment other than the above?

Family members

13.  What was their response?

Disbelief that he would treat that way especially in my condition

14.  If you did not report the harassment to management or use an internal grievance procedure, explain in detail your reasons for not doing so.

There is no HR department and no harassment policy

15.  Were you subjected to any unfavorable treatment, change in position, duties, etc., as a result of your complaining to the harasser and/or to management about the harassment?  If so, describe the treatment you received and who caused it.

N/A

16.  Did the harassment affect your ability to perform your job?  If so, describe the effect it had on job performance.

No but I was terminated while I was on maternity leave and not able to return to work

A183

D00366

## SEXUAL HARASSMENT QUESTIONNAIRE - Pg. 5

17.   What effect did the harassment have on you personally?

Very upsetting experience especially considering my condition and caused a great deal of anguish during a joyous time

18.   Describe any monetary or other losses you suffered as a result of the harassment.

I was fired effected the day I was harassed. lossing vacation pay, bonus, and health insurance coverage.

19.   What do you want to accomplish by filing a charge of sexual harassment?

I would like to recive my lost vacation pay, bonus, and reimbursement of health insurancecost that I have occured and medical expenses not covered as of result of my termination

**I declare under penalty of perjury that I have read the above statements and that they are true and correct.**

Renee Beitz
Signature

1-24-04
Date

D00367

Use this form to continue to answer or respond to any of the 19 items.  Indicate the Item number.

D00368

Name: Reneé M Butz (Beauchemin) Date: 1-24-04

# DISCIPLINE QUESTIONNAIRE
## (DEMOTION, SUSPENSION, DISCHARGE, ETC.)

1. Provide your employment history with the Respondent employer as follows:

   a) date of hire: 9/02

   b) position title at time of hire: Office manager

   c) position title at time of most recent discipline:

   Office Manager

   d) date you were selected for the job you held at the time of the most recent discipline:
   9/02

   e) name of section/department at time of most recent discipline:

   N/A

   f) name and title of your immediate supervisor at time of most recent discipline:

   Edward & Jeanne Fleming - owners

2. Describe the most recent discipline (discharge, suspension, demotion, etc.) given you:

   I was never given any disciplinary action or demotion since my employment with them before being fired on 12/23/03.

3. What explanation was given to you as to the reason(s) for your receiving this most recent discipline? (see attachment A).

   I received a letter on 1/13/04 dated 1/7/04 that I am no longer employed due to I left without notice. Edward & Jeanne were both aware 12/23 in the morning after coming from the emergency room that I was 3cm dialated (in labor) and my husband and mom was going to pick me up early. I advised on the AM I would be starting my maternity leave and they had no problems at that time. And on 12/29/03 sent confirmation letter of us beginning my maternity

4. On what date were you told of the discipline to be given you? leave.

   1/13/04 received letter that I was discharged (see attachment)

5. Were you informed orally or in writing of this discipline?

   writing

6. What are the name and title of the person who informed you of the discipline to be given you?

   Edward Fleming - owner

10-02

D00357

DISCIPLINE QUESTIONNAIRE (p. _)

7.   If known, is the person identified is Q. #6 the person who recommended your discipline? YES If not, identify by name and title the person who recommended that you be disciplined.

_____

_____

_____

*If you were disciplined for performance deficiencies, please answer questions 8 - 13 and provide copies of all documents in your possession which describe each answer.*

8.   What is the employer's discipline policy related to alleged performance deficiencies?

   N|A

_____

_____

_____

_____

_____

_____

9.   How do you know what this discipline policy is?

   N|A

_____

_____

_____

10.  Did you have performance problems to the extent claimed by your employer?  If not, what is your version of your performance record and how can this be documented?

   N|A

_____

_____

_____

11.  Is performance documented by means such as manual or computer-generated sales records, productivity reports, etc.?  If yes, describe the type(s) of reports generated.  If there are no such reports or listings, explain to the best of your knowledge how the employer keeps track of performance-related matters.

   N|A

_____

_____

_____

_____

_____

D00358

A187

## DISCIPLINE QUESTIONNAIRE (p. 3)

12.    Describe your last 2 performance reviews, to include the overall rating, any specific area(s) of negative comments, the approximate date of each review, and the name and title of the person who gave you each review.

N/A

13.    Have you received any oral or written counseling or notices of deficiency related to performance (e.g., written warnings, suspensions, placement on probation, etc.)?  If yes, describe all such actions to include nature of action taken by the employer, stated reason for action taken, date, and name, title of supervisor or manager who caused the action to be taken.

N/A

*If you were disciplined for conduct violations, please answer questions 14- 17 and provide copies of all documents in your possession which describe each answer.*

14.    What is the discipline policy related to the rules, policies or practices which you were charged with violating?

Written authorization for time off "in excess of 3 days, all employees are required to submit a request at least 4 weeks prior to your intended date of leave"
"I knew of many people taking off without 4 weeks in advance"

15.    How do you know what the discipline policy is?

I was advised of this policy on 1/13/04 when I received the letter dated 1/7/04. There is no policy manual that was given to me. Plus Edward and Jeanne were completely aware of my pregnancy from day one as well as that I dialated and might have to be induced.

D00359

## DISCIPLINE QUESTIONNAIRE (p. 5)

_____

_____

_____

_____

19.   Identify all persons in comparable positions who have had performance or conduct problems in the last 2 years and who have been disciplined in the same manner as you were. For each person listed, provide the following (adding extra pages, if needed, to complete this answer):

    a)   name: None    I was the only one in this position

    b)   race _____, sex _____, national origin _____, and approximate age _____.

    c)   job title: _____

    d)   name/job title of immediate supervisor: _____

    e)   description of performance or conduct problems: _____

_____

_____

_____

_____

    f)   discipline given to this person: _____

_____

    g)   when did this occur? _____

    h)   how do you know about the above circumstances?

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

D00360

## DISCIPLINE QUESTIONNAIRE (p. 4)

16. Did you commit the offense(s) or violate the rule(s) for which you were disciplined? If not, what is your version of what happened and how can you demonstrate that you did not commit this offense?

   _No. I advised them with sufficient notice. At the time they never asked for better notes until I received the letter_

17. What disciplines have you previously received? Describe each discipline including the date, reason, type of discipline, and name and title of your immediate supervisor at the time of each discipline.

   _even after speaking with him after 12/23 we talked about my pregnancy but_

   _none_

   _____

   _____

   _____

   _____

*Continue here whether discipline was for performance or conduct reasons.*

18. Identify all persons in comparable positions who have had similar performance or conduct problems within the last 2 years but who received a lesser discipline than you received. For each person named, provide the following information (adding extra pages, if needed, to complete your answer):

   a) name: _none  I was the only one in this position_

   b) race _____, sex _____, national origin _____, and approximate age ___.

   c) job title:_____

   d) name/job title of immediate supervisor: _____

   _____

   e) description of performance or conduct problems: _____

   _____

   _____

   _____

   _____

   _____

   f) type of discipline, if any, given to this person:

   _____

   _____

   g) when did this occur? _____

   h) how do you know about the performance or conduct deficiencies and discipline given to this employee?

   _____

   _____

A190

D00361

DISCIPLINE QUESTIONNAIRE (p. 6)

20. Why do you believe that you and the persons cited in #19 above were disciplined more severely than those persons cited in #18 above?

I believe I was let go due to insurance reasons - clearly mentioned in paragraph 4 of the letter. I increased their premiums (see Attachment 1A)

21. For what reason(s) do you believe that you were discriminated against because of your race, sex, color, religion, national origin, age, disability, or in retaliation in a manner made unlawful by the statutes administered by EEOC?

I was sexual discriminated against due to my pregnancy when I left early with permission on 12/23. I only took my toothbrush and toothpaste with me when I left. I still have a bowl, plasticware and silverware there. Edward & Joanne were completely aware of my difficult pregnancy every day.

Additional space to answer questions. Please indicate number of question.

I declare under penalty of perjury that I have read the above statements and that they are true and correct.

_Renee Betz_
Signature

1-24-04
Date

D00362