IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RENEE M. BUTZ,                                )
                                             )
                    Plaintiff,               )
                                             )
        v.                                   )      Civ. No. 05-495-JJF
                                             )      Judge Joseph J. Farnan Jr.
LAWNS UNLIMITED, LTD. and                    )
EDWARD FLEMING,                              )
                                             )
                    Defendants,              )

**RECEIVED**

NOV 19 2007

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR
## SUMMARY JUDGEMENT

Plaintiff Renee Butz hereby moves for denial of Defendants' request for Motion

of Summary Judgment. The grounds for this denial request are set forth in Plaintiff's

Opening Brief, which is filed simultaneously herewith.

Respectfully Submitted,

*Renee Butz*

Renee M. Butz
Pro Se
58 Hickory Drive
North East, MD 21901
410-441-4300

DATE: November 16, 2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RENEE M. BUTZ,                          )
                                        )
        Plaintiff,               )
                                        )
v.                                      )          Civ. No. 05-495-JJF
                                        )          Judge Joseph J. Farnan Jr.
LAWNS UNLIMITED, LTD. and               )
EDWARD FLEMING,                         )
                                        )
        Defendants,              )

## PLAINTIFF'S REQUEST FOR DENIAL OF DEFENDANTS' MOTION
## FOR SUMMARY JUDGEMENT

Renee M. Butz
Pro Se
58 Hickory Drive
North East, MD 21901
410-441-4300

## TABLE OF CONTENTS

Table Of Contents…………..………………..……………………………………..i

Table Of Authorities………..……………………..……………………………………iii

Plaintiff's Comments Regarding Nature And Stage Of The Proceedings………………1

Response To Defendant's Summary Of Arguments…………………………………….2

Response To Defendant's Statement Of Facts………………………………………..3

    A.  Plaintiff's Employment With Lawns…………………………………………..7

    B.  Employee Benefits…………………………………………………………..7

    C.  Plaintiff's Relationship With The Flemings…………………………………..8

    D.  Plaintiff's Termination………………………………………………………9

    E.  Plaintiff Responds To The Termination Letter……………………………....11

Plaintiff's Response To Defendant's Arguments……………………………………14

III.   Plaintiff Cannot Demonstrate That Defendants' Proffered Legitimate, Non-

    Discriminatory Reasons Were Pretextual……………………………………14

    A.  Defendants' Terminated Plaintiff Because She Abandoned Her Job………14

IV.   Plaintiff Cannot Produce Any Evidence That Defendants' Proffered Reasons Did

    Not Actually Motivate The Termination……………………………………15

    A.  Plaintiff's Refusal To Produce Any Documentary Evidence Precludes An

        Aware of Back Pay Damages………………………………………………15

    B.  Plaintiff's Refusal To Any Documentary Evidence Precludes An Award Of

        Medical Expenses…………………………………………………………15

    C.  Plaintiff's Refusal To Any Documentary Evidence Precludes An Award Of

        Insurance Premiums………………………………………………………..16

    D.  Plaintiff's Claims For Back Pay Fail regardless Of Whether She Provides

        Documentary Evidence……………………………………………………16

    E.  Plaintiff's Claims For Insurance Premiums And Medical Expenses Fail….17

V.   Plaintiff Has Failed To Meet Her Burden Of Proof As To Emotional Stress Or

    Punitive Damages…………………………………………………………….18

Plaintiff's Arguments…………………………………………………………………19

I.   Defendants' Plans…………………………………………………………….19

II.   Defendants' Extend Insurance Coverage…………………………………….19

III.    Defendant Was Less Than Honest With Regards To Who Wrote The Termination
Letter.................................................................................................20

IV.    Debra Watson's Story................................................................20

V.    Pay Increases And Bonuses........................................................20

VI.    Brief Summary Defendants' Changing Their Story......................20

VII.    Forthright Facts......................................................................21

VIII.    Defendants' Claim Plaintiff Deserted Her Job............................21

IX.    Terminated Plaintiff's Employment Because Of High Insurance Costs............22

X.    Detail Of Defendant's Testimony Changes.................................22

    A.  Department Of Labor..........................................................22

    B.  First Set Of Interrogatories..................................................22

    C.  Defendant's Deposition.......................................................23

    D.  Defense Counsels Motion For Judgment.................................23

XI.    Plaintiff Establishes A Prima Facie Case Of Pregnancy Discrimination............23

    A.  Protected Class..................................................................23

    B.  Adverse Employment Action.................................................24

    C.  Unlawful Discrimination......................................................24

XII.    Settlement Offer......................................................................25

Conclusion ............................................................................................26

# TABLE OF AUTHORITIES

**Cases**

<u>Patrolmen's Benevolent Ass'n of City of New York v. City of New York</u>
   310 F.3d 43, 55 (2d Cir.2002)..................................................18

<u>Gunby v. Pa. Elec. Co.</u>
   840 F.2d 1108, 1121-22 (3d Cir.1988).....................................18

<u>Alexander v. Riga</u>
   208 F.3d 419, 428 n. 6 (3d Cir.1999).......................................18

<u>Knussman v. Maryland</u>
   272 F.3d 625, 640 (4th Cir.2001)............................................18

<u>Thomas v. Texas Dep't Criminal Justice</u>
   297 F.3d 361, 368-69 (5th Cir.2002)........................................18

<u>Turic v. Holland Hospitality, Inc.</u>
   85 F.3d 1211, 1215 (6th Cir.1996).........................................18

<u>Forshee v. Waterloo Indus., Inc.</u>
   178 F.3d 527, 531 (8th Cir.1999)...........................................18

## PLAINTIFF'S COMMENTS REGARDING NATURE AND STAGE OF THE
## PROCEEDINGS

Plaintiff stipulates that the Nature and Stage of the Proceedings filed by Defendants' are correct and accurate. However, Plaintiff would like to provide the following statements.

Prior to the July 15, 2005 filing, Plaintiff filed a Charge of Discrimination Complaint with the Department of Labor on January 23, 2004. (B1:B6). During the interview with the Department of Labor Division of Industrial Affairs Discrimination Unit Office Labor Law Enforcement, Plaintiff authorized an invitation to engage in Mediation. Two mediation meetings were scheduled by the officer, with Defendant not attending either mediation meeting. After second attempt of mediation, the Department of Labor Division of Industrial Affairs Discrimination Unit Office Labor Law Enforcement provided the Right to Sue letter to Plaintiff. (B7:B8).

## RESPONSE TO DEFENDANTS' SUMMARY OF THE ARGUMENT

Plaintiff Renee Butz has established a claim for pregnancy discrimination under the Pregnancy Discrimination Act ("PDA"), provides responses to Defendants' arguments and provides Plaintiff's arguments, therefore, Plaintiff's claim should not be dismissed:

1. Defendants' argument "Plaintiff's admission that she believes she was terminated for reasons unrelated to her pregnancy requires dismissal of their present claim".

2. Defendants' argument "Plaintiff cannot establish a prima facie case because she admits that she believes that Defendants terminated her because she abandoned her job".

3. Defendants' argument "Plaintiff also cannot establish a prima facie case because she admits that she believes that Defendants terminated her because of increased financial costs". **Plaintiff's response to arguments 1, 2, and 3 above: Plaintiff's beliefs are irrelevant. Under McDonnell Douglas, to establish her prima facie case, the Plaintiff need not prove that discrimination was the motivating factor in her dismissal. All she must do is raise an inference that such misconduct occurred. Defendants' claims that Plaintiff abandoned her job, however Plaintiff provided Defendant with written documentation notifying Defendant and confirming her conversation with Defendant that she was beginning her maternity leave and her intentions were to return back to work six weeks after the baby was born. (B9) (B66). Defendants' argument regarding termination due to increased financial costs is not consistent with Defendants' offer to Plaintiff of reemployment with Lawns Unlimited. (B66). If financial costs were the reason for termination why would Defendant offer Plaintiff her job back? Additionally, Defendant readily admits in their Motion for Summary Judgment on page 10 "In its 16-year history, Lawns had never terminated a single employee". (B69). That is until Defendant fired the pregnant Plaintiff.**

2

4.  Defendants' argument "Plaintiff admits that she cannot identify any similarly situated, non-pregnant employees".

5.  Defendants' argument "The admitted absence of any appropriate comparators precludes Plaintiff from proving that she was treated less favorably than someone outside her protected class". **Plaintiff's response to arguments 4 and 5: Production of Documents by Defendant after Deposition indicates that non-maternity medical leaves were granted for Deborah Watson on several occasions without terminating her employment. (B10:B21). Additionally, non-maternity medical leave was granted to Laurie Schatz. (B70:B71).**

6.  Defendants' argument "Plaintiff admits that she was terminated because her employer believed she had abandoned her job, which is a legitimate, non-discriminatory reason". **Plaintiff's response to argument 6: Previously answered of Argument 3.**

7.  Defendants' argument "Plaintiff's contention that Defendants' decision to terminate her was misguided is insufficient to establish that Defendants' reasons for termination were pretextual". **Plaintiff's response to argument 7: Defendant readily admits in their Motion for Summary Judgment on page 10 "In its 16-year history, Lawns had never terminated a single employee". (B69). That is until Defendant fired the pregnant Plaintiff.**

8.  Defendants' argument "Plaintiff admits that one of the two decision makers did not harbor any discriminatory animus towards her".

9.  Defendants' argument "Plaintiff admits that the second of the two decision makers, who hired her, also treated her "like family", tending to disprove a hidden discriminatory animus". **Plaintiff's response to arguments 8 and 9: Production of Documents by Defendant after Deposition indicates that Plaintiff was wrong to believe that Jeanne Fleming did not harbor any discriminatory animus towards her. Correspondence from Jeanne to Eric Howard on January 8, 2004 clearly shows that Jeanne was involved in the writing of the Plaintiff's termination letter and may have very well been the sole drafter of the termination letter. Correspondence clearly**

3

**shows that Jeanne Fleming had intended to end Plaintiff's health insurance on December 23, 2003 but did not due to the recommendation of her insurance agent. (B22:B23).**

10. Defendants' argument "Plaintiff's assertion that the second of the two decision makers did harbor some discriminatory animus is a vague allegation, unsupported by other evidence in the record and, thus, is insufficient to establish pretext". **Plaintiff's response to argument 10: Defendants' offer of reemployment was based on Plaintiff signing an Employment Contract with Defendant while admitting that he did not have any other employees ever sign an Employment Contract. (B90:B91). Additionally, Defendant readily admits in their Motion for Summary Judgment on page 10 "In its 16-year history, Lawns had never terminated a single employee". (B69). That is until Defendant fired the pregnant Plaintiff.**

11. Defendants' argument "Defendants' offer of reinstatement tends to further demonstrate the absence of pretext". **Plaintiff's response to argument 11: Defendants' offer of reemployment was based on Plaintiff signing an Employment Contract with Defendant admitting that he did not have any other employees sign an Employment Contract. (B90:B91).**

12. Defendants' argument "Defendants' payment for Plaintiff's extended insurance coverage is further evidence to disprove a finding of pretext". **Plaintiff's response to argument 12: Plaintiff has provided and provides again the Certificate Group Health Plan Coverage. (B24:B25). Jeanne Fleming only extended coverage at the urging of their insurance agent because "She thought she was on maternity leave (unapproved, of course)". This clearly indicates the only reason insurance coverage was extended beyond the Plaintiff's termination date; December 23, 2003 was because Defendant was advised to do so. (B22:B23).**

13. Defendants' argument "Plaintiff's admitted refusal to produce any documents in support of her damages claim precludes the award of any compensatory damages, including any information relating to her income or insurance coverage". **Plaintiff's response to argument 13: During Deposition,**

4

**Defendant suggested Plaintiff provide more detailed documentation in support of her damage claims. This documentation was provided prior to the end of discovery. (B26:B64).**

14. Defendants' argument "Even if Plaintiff has produced documents in support of her claim for damages, she is not entitled to an award of holiday pay, vacation pay, or PTO, because, as she admits, she was fully compensated for that time when earned". **Plaintiff's response to argument 14: Defense counsel has misunderstood Plaintiff's request for holiday and vacation pay. Had Plaintiff remained employed and not unjustly terminated, Plaintiff would have been paid holiday pay for December 25, 2003 and January 1, 2004. Additionally, Plaintiff would have been eligible for one week of vacation and three personal days beginning January 1, 2004. Plaintiff would have requested payment of the vacation and personal days to help compensate the non-paid maternity leave.**

15. Defendants' argument "Plaintiff is precluded from an award of damages because the only evidence she has produced are her own conclusions, estimates, and calculations, which are insufficiently specific and far too speculative to justify any damages award". **Plaintiff's response to argument 15: Plaintiff has provided specifics and details regarding her claims. (B26:B64).**

16. Defendants' argument "Plaintiff has failed to allege any conduct or effect that would justify the imposition of emotional distress damages, especially considering she was unemployed only for seven days". **Plaintiff's response to argument 16: Plaintiff only collected unemployment from February 9, 2004 to March 1, 2004 because Plaintiff was physically unable to work due to her medical condition resulting from the c-section delivery of her child. Plaintiff began her search for a new job immediately after receiving her termination letter received on or about January 14, 2004. Plaintiff had to drag her three week old child to the unemployment office on or about January 20, 2004. This was three weeks after a c-section delivery. The termination letter received turned a joyous celebration into**

5

a stressful nightmare. **Plaintiff was unemployed and without health insurance, while needing medical assistance to deal with this stress, Plaintiff was not able to seek medical attention because she could not afford it. (B24:B25).**

17. Defendants' argument "Plaintiff has failed to allege any conduct that would justify the imposition of punitive damages, especially given Defendants' terminated Plaintiff at the advice of legal counsel". **Plaintiff's response to argument 17: Advice of legal council? No documentation was provided indicating legal counsel's advice regarding termination of Plaintiff. Jeanne Fleming's notes to counsel clearly indicate a concern that the insurance agent had regarding termination of an employee who believed she was on maternity leave. (B22:B23). If any advice was provided by counsel, it was provided with counsel being misled by Defendants' claiming that maternity leave was unapproved when Defendants' knew for months that Plaintiff would be taking this maternity leave and Mr. Fleming's own testimony states "I know you're going to be going on maternity leave." (B65:B66) (B70:B71) (B72:B73). That was why Plaintiff trained the office assistant to relieve her during her maternity leave. (B70:B71) (B187:B188). If Defendant was not going to approve the maternity leave, why wouldn't the Defendant inform the Plaintiff prior to her leave?**

### PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF FACTS

Many of the "Facts" used in Defendant's Statement of Facts are merely statements made by Mr. Fleming during the deposition and nothing more than his version of what took place with no supporting documentation.

#### A. Plaintiff's Employment With Lawns

Defendants' stated "Since then, they have managed its operation together and are active in its daily operations". **Plaintiff's response: Jeanne Fleming was not actively involved in the daily operations during Plaintiff's employment with Lawns Unlimited. She dropped by the office occasionally for a few minutes at a time. Plaintiff reported directly to Mr. Fleming. (B67) (B76:B77) (B87).**

Defendants' stated "Mr. Fleming, who holds the title of President, works hands-on in the Field and is responsible for Field employees. Mrs. Fleming, who holds the title of Secretary-Treasurer, manages the behind-the-scenes operations in the Office." **Plaintiff's response: Mr. Fleming shared responsibilities for Office employees with his wife. (B65). See Plaintiff's response above.**

Defendants' stated "She was also responsible for communicating and developing employee policies". **Plaintiff's response: Plaintiff was responsible for communicating and developing workplace procedures. (B67).**

#### B. Employee Benefits

**Plaintiff's response: Plaintiff was due an increase in November 2003 that did not occur. Defendant stated that "Plaintiff was a very good employee". (B76:B77) (B185:B186). No specific benefits were provided to Plaintiff at her termination. (B110).**

##### 1. Paid Vacation, Paid Holidays, And Paid Time Off

Defendant's states "After one year of employment, key personnel became eligible for one week of paid vacation. Only key employees received paid vacation. Upon completion of their second anniversary year, key personnel became eligible for up to two weeks of paid vacation". **Plaintiff's response: Defendant provided Job Duties – Office Manager at the deposition; Plaintiff never saw these documents prior to the deposition. Based on the documentation, employees would not receive two weeks vacation until completion of their third year. (B79:B80) (B122:131).**

7

Defendant's states "Employees were required to submit a Vacation Request Form prior to taking scheduled vacation time". **Plaintiff's response: Defendant's could not provide Vacation Request forms signed by any other office employee during Plaintiff's employment.**

Defendant's states "Butz understood and utilized the Vacation Request Form". **Plaintiff's response: Plaintiff utilized the form one time for unpaid leave for a doctor's visit. (B82). Plaintiff took vacation time in February 2003 and September 2003 without completing the Vacation Request form. (B81) (B110) (B111:B112).**

Defendant's states "Butz took five days of paid vacation in 2003....All five days were taken before Butz actually became eligible for paid vacation". **Plaintiff's response: There was no published vacation or paid time off policy. Plaintiff requested vacation time and Defendant granted. (B81) (B110) (B111:B112).**

2. Insurance Coverage

Defendant's states "When Butz became a permanent employee, the Flemings requested that her waiting period be waived." **Plaintiff's response: Plaintiff was not aware of any waiting period. Plaintiff knows and Plaintiff's witnesses will testify the waiting period was waived for them as well.**

Defendant's states "Lawns paid 100% of employees' premiums until March 2004, when it switched to 75% coverage". **Plaintiff's response: Plaintiff requested payroll records supporting Defendant's claim that employee's pay 25% of the premium. Defendant has failed to provide them.**

C. Plaintiff's Relationship With The Flemings

**This relationship section has no bearing on this case. These are only statements made by the Defendant with no supporting documentation whatsoever.**

Defendant's states "In an act of goodwill typical of the Flemings, Mr. Fleming contacted several of his friends and customers, inquiring about potential work. He was even able to get Scott an interview with one company." **Plaintiff's response: Mr. Fleming contacted a business associate regarding Scott. Scott met with the individual in the lobby and handed him his resume. No interview took place. (B108:B109).**

8

### D. Plaintiff's Termination

### 1. Plaintiff Leaves Work Early On December 23, 2003

Defendant's states "On the morning of December 23, 2003, Butz thought her water broke. She told her husband that she would "just go to Beebe (Hospital). Her husband stayed at home and Butz drove to Lewes, Delaware, approximately 79 miles away. At the hospital, she was told that she was not yet in labor and was directed to go home". **Plaintiff's response: Plaintiff provides the following as the series of events that took place on December 23, 2003. As Plaintiff was driving to work that day, she thought her water broke. She called Jeanne and told her she was going to the hospital and might not be coming in. She was advised by the doctor that she lost her mucus plug and she was three centimeters dilated. Plaintiff called her husband to drive down to Lawn to pick her and the car up. Plaintiff then proceeded to go to work and clean up some unfinished business until her husband arrived at approximately 2:00 PM. (B108:B109). Mr. Fleming was in the office and Plaintiff advised him that she would be starting her maternity leave once her husband came to pick her up. (B72:B74) (B83) (B94) (B108:B109).**

Defendant's states "Before Mr. Fleming left the office, he gave Butz a Vacation Request Form." **Plaintiff's response: If in fact, Mr. Fleming had requested for Plaintiff to complete a Vacation Request Form, Plaintiff would have done so.**

### 2. Debra Watson Reveals Plaintiff's Plans To Quit

**Plaintiff's response: There is no truth to anything that Debra Watson said. It's a total fabrication of lies, none of the events she described ever occurred. Plaintiff did not have a job. Plaintiff's plans were to return after her maternity leave.**

### 3. The Devastated Flemings Try To Contact Plaintiff

Defendant's states "Butz assured him that she was going to return. Butz did not return to work the next day." **Plaintiff's response: Plaintiff's assurance to the Defendant was meant to ensure him that Plaintiff would be returning back to work after her maternity leave ended but not the next day. (B9).**

Defendant's states "Butz did not return to work the next day. Mr. Fleming called her but was able to speak to her for only a minute before her husband took the phone".

9

**Plaintiff's response: Plaintiff spoke with Mr. Fleming briefly; Mr. Fleming became irritated and started screaming at Plaintiff even with Plaintiff assuring him that she would be returning when her maternity leave ended. Plaintiff's husband (Scott) took the phone from the Plaintiff and after several minutes finally had to firmly addresses Ed to calm down so he could talk about the accusations that Ed was making. Scott informed Ed that all information he was given could not be further from the truth. Scott told Ed that Renee did not have a job lined up and did not interview with anyone and that Renee would be returning to work for Lawns Unlimited after her maternity leave ended. Ed asked Scott to give him his word on this and Scott did. Ed then told Scott that he would take Renee's and his word on this and Scott thought everything was resolved. The conversation ended. Renee sent an email to Ed to confirm that she was officially on maternity leave. (B9) (B66) (B84) (B108:B109) (B113:B115).**

### 4. Plaintiff Ceases All Communications With Lawns

Defendant's states "Before the baby was born, Ms. Watson called Butz twice to ask work related questions." **Plaintiff's response: Plaintiff did not speak to Ms. Watson; she spoke to Mr. Fleming twice. Both conversations were work related with Mr. Fleming never mentioning Plaintiff's termination. (B84:B86) (B88) (B113:B115). Mr. Fleming states "I was not able to speak to Plaintiff because she would not return phone calls. She gave Debby a telephone number that I couldn't use. (B87:B88). The question is why couldn't Mr. Fleming get the telephone number from his employee, if Ms. Watson was willing to tell Mr. Fleming all sorts of things about Plaintiff why wouldn't she give him the number? Additionally, Plaintiff requested production of phone records to prove Defendant did in fact make the phone calls he claimed he had made but Defendant refused to provide any documentation.**

Defendant's states "She testified that she never called, wrote, or otherwise tired to reach out to Mr. or Mrs. Fleming to assure them of her intent to return". **Plaintiff's response: After the conversations on December 24, 2003 with Plaintiff and Plaintiff's husband assuring Mr. Fleming of her return after her maternity leave and the email sent on December 24, 2003, Plaintiff had no reason to believe**

additional assurances were required.  (B9) (B66) (B84:B86) (B108:B109) (B1113:B115).

Defendant's states "In its 16 year history, Lawns had never terminated a single employee".  **Plaintiff's response:  The only employee ever fired by Mr. Fleming was an employee on maternity leave.  Discrimination?  Plaintiff believes so.**

Defendant's states "Howard recommended they send Butz a letter setting forth their concerns".  **Plaintiff's response:  Based on this statement, counsel did not recommend termination; he recommended a letter stating their concerns about Plaintiff's return.  Defendants' took it on their own to terminate Plaintiff.  (B69).**

Defendant's states "They hoped that the letter would be the motivation Butz needed to at last contact Lawns."  **Plaintiff's response:  The letter was a termination letter, not a letter indicating that they needed to speak to Plaintiff regarding her employment at Lawns.  It clearly stated Plaintiff was fired.  Plaintiff questions that any termination letter would be motivational in any aspect.**

Defendant's states "Howard drafted the letter, and after several revisions, Mr. Fleming signed it and mailed on January 8, 2004".  **Plaintiff's response:  The fax from Ed and Jeanne Fleming written by Jeanne Fleming clearly shows that the Fleming's were very much involved in the drafting of the termination letter and may have in fact drafted the letter and only utilized Mr. Howard to review their letter. (B22:B23).  It clearly was not drafted by Mr. Howard and signed blindly by Mr. Fleming as he testified during deposition.  (B89).**

**E.  Plaintiff Responds To The Termination Letter**

**Plaintiff's response:  Plaintiff was so distraught over the termination letter; she contacted her father-in-law, Michael Butz and asked him to contact Mr. Fleming for her.  Defense counsel and Defendants' seem to believe that a termination letter is some sort of document provided to Plaintiff to begin her negotiating a return to work.  In the termination letter there was no request made for Plaintiff to contact Defendants to discuss this termination.**

**1.  Plaintiff's Father-in-law Calls Mr. Fleming**

**Michael Butz's conversation with Mr. Fleming was not at all as Mr. Fleming portrayed.  The conversation was brief with Mr. Butz informing Mr. Fleming that**

11

he was in violation of the Pregnancy Discrimination Act by firing Plaintiff. Mr. Fleming's comment was "It's my company and I can do what I want". Mr. Butz asked Mr. Fleming to reinstate Plaintiff's job and he said he would but with one condition. That condition being that Plaintiff would sign an employment contract that she would work a certain number of years for Lawns Unlimited. Mr. Butz asked Mr. Fleming if any of his other employees had ever signed an employment contract. And Mr. Fleming stated "no". (B90:B91) (B92:B93) (B118:B121).

    2.  Defendants Hold Butz's Job And Extend Her Insurance, Hoping She Returns

Defendant's states "Hopeful that Butz would finally contact the office at the recommendation of her father-in-law, Lawns did not fill the Office Manager position". Plaintiff's response: Michael Butz clearly stated to Plaintiff that it was her option to look at the contract but indicated it was really up to Plaintiff. Plaintiff decided not to work under an employment contract nor would she work for any company under an employment contract. (B90:B91) (B92:B93).

Defendant's states "Lawns voluntarily extended Butz's insurance coverage. Mr. Fleming requested the insurance company extended Butz's coverage through December 31, 2003, so she would be covered for the delivery of her child". Plaintiff's response: The fax from Ed and Jeanne Fleming written by Jeanne Fleming clearly shows that the Flemings had chosen to end Plaintiff's insurance coverage with the termination date of December 23, 2003 but the insurance agent suggested that they extend the coverage because Plaintiff thought she was on maternity leave. (B22:B23).

Defendant's states "Lawns did not report Butz's disenrollment to Optimum Choice until January 22, 2004. Lawn's billing records showed that it paid 100% for Butz's coverage through January 14, 2004". Plaintiff's response: First, the fax from Ed and Jeanne Fleming written by Jeanne Fleming clearly shows that the Flemings had contacted their insurance agent prior to January 8, 2004 concerning disenrollment of Plaintiff's insurance. (B22:B23). Second, Defendant's counsel continues to try to mislead the Court by erroneously stating that coverage continued through January 14, 2004. December 15 through January 14 was the billing cycle, nothing more. It has nothing to do with the coverage period. Optimum Choice clearly states that insurance coverage ended December 31, 2003. (B24:B25).

**3. Plaintiff Is Unemployed For Seven Days Before Finding Higher Paying Employment**

Defendant's states "When Butz left Lawns on December 23, 2003, she intended to be out for six weeks, or until February 4, 2004. Two weeks before her intended return date, Butz decided that she would, in fact, not return to her job at Lawns. She waited until the expiration of the six week period before beginning her job search". **Plaintiff's response: Plaintiff's employment with Lawns Unlimited ended on December 23, 2003 according to the termination letter received on or about January 14, 2004. (B68). After Michael Butz's conversation with Mr. Fleming on or about January 19, 2004, Plaintiff began search for new employment. (B90:B91) (B118:B121). She updated her resume and started searching through the Help Wanted ads and internet sites. (B117). Plaintiff started work with Cecil County Government on March 1, 2004. (B116). From December 23, 2003 to February 3, 2004, Plaintiff was without a job but unable to work due to a c-section delivery of her child. (B183:B184). From February 4 to March 1, 2004, Plaintiff was unemployed. That is twenty four days of being unemployed, not seven. (B116:B117).**

13

**PLAINTIFF'S RESONSE TO DEFENDANT'S ARGUMENTS**

**III.     Plaintiff Cannot Demonstrate That Defendants' Proffered Legitimate, Non-Discriminatory Reasons Were Pretextual**

**A. Defendants Terminated Plaintiff Because She Abandoned Her Job**

Defense counsel states "On December 23, 2003, Butz packed her personal belongings and left. She did not tell Mr. or Mrs. Fleming that she was going to begin her planned leave. She did not leave her keys to the office or any instructions for Watson to use during her absence. She did not tell Lawns the length of time she expected to be out". **Plaintiff's response: Testimony upon testimony indicate that Plaintiff called Jeanne and spoke with Edward on December 23, 2003 informing both of them that she was beginning her maternity leave that day. (B2) (B74) (B72:B74) (B83) (B94) (B108:B109). Defendant acknowledges in his deposition these facts. (B73). Training of Watson had already been completed and she was prepared to perform Plaintiff's responsibilities. (B187:B188). Plaintiff, while dilated three centimeters and without her mucus plug, came to the office to resolve any outstanding issues and was present in the office for approximately six hours. (B83) (B108:B109). Hardly, packing up her personal belongings and leaving. Plaintiff kept office keys because her intentions were to return to work after her maternity leave ended. Personal belongings were toothpaste and toothbrush. (B108:B109). On December 24, 2003, Plaintiff confirmed with an email to Defendants' that she had begun her maternity leave and would be returning six weeks after the delivery of her child. (B9) (B66) (B108:B109) (B113:B115).**

Defense counsel states "Lawns did not have a leave policy". **Plaintiff's response: Didn't the Fleming's have a responsibility to inform Plaintiff that Lawns did not have Leave policy? However, Mr. Fleming stated to the Plaintiff "I know you are going to be on maternity leave. I need to know how long and when you are going to be back". (B72:B74). This clearly indicates that there was some sort of Leave policy in place. Furthermore, Debra Watson and Laurie Schatz were granted medical leaves, not maternity leave but medical leaves. (B10:B21) (B70:B71).**

Defense counsel "Mr. Fleming tried to contact Butz in the hope that she would deny this allegation. Instead, he was met with forceful resistance from Butz and her

14

husband. Having been cut off from further communications with Butz, ......".

**Plaintiff's response: Mr. Fleming spoke to Plaintiff on December 23, 2003 with her guaranteeing him that she was going to return to Lawns after her maternity leave ended. (B108:B109) (B113:B116). And again on December 24, 2003, Mr. Fleming spoke with Plaintiff and Plaintiff's husband who both guaranteed him that she would be returning back to Lawns after her maternity leave. (B9) (B66) (B84) (B108:B109). Plaintiff felt that further assurances were not required. Plaintiff spoke with Defendant on December 26, 2003 and December 29, 2003 to assist him with work related problems. (B84:B86) (B113:B115). Plaintiff was delivering her child on December 30, 2003 returning home on Thursday, January 1, 2004 from a c-section delivery. Plaintiff contacted Defendants' the following Monday, January 5, 2004 to inform them of the birth of her child. (B66) (B113:B116). Plaintiff did not receive any congratulation calls but later received a termination letter instead. (B68) (B88).**

Defense counsel "Butz was commuting seventy miles each way to work at Lawns from Newark". **Plaintiff's response: The townhouse that Plaintiff and Plaintiff's husband chose in New Castle County was chosen to provide both with approximate same driving time to their jobs. Plaintiff's husband was working in North Wilmington.**

IV.    **Plaintiff's Refusal To Produce Any Supportive Documents Precludes An Award Of Damages In Any Amount**

A.    **Plaintiff's Refusal To Produce Any Documentary Evidence Precludes An Award Of Back Pay Damages**

**Plaintiff's response: Plaintiff provided adequate documentation to show how her back pay determination was made. Simply stated it was the amount that would have been paid to Plaintiff less the unemployment compensation received for the period February 9, 2004 to March 1, 2004. (B26) (B47:B48).**

B.    **Plaintiff's Refusal To Produce Any Documentary Evidence Precludes An Award of Medical Expenses**

**Plaintiff's response: Plaintiff provided detail medical expense evidence after deposition but prior to Discovery period ending. (B26) (B32:B46) (B106).**

**C. Plaintiff's Refusal To Produce Any Documentary Evidence Precludes An Award Of Insurance Premiums**

**Plaintiff's response:  Plaintiff provided detail medical insurance plan comparisons and insurance premiums paid under Cecil County Government health plan as evidence after deposition but prior to Discovery period ending.  (B26:B31) (B96:B103).**

Defendant states "Butz has never provided any evidence that shows she actually incurred costs for the $30 biweekly premiums she seeks". **Plaintiff has provided insurance premiums paid under Cecil County Government health plan as evidence after deposition but prior to Discovery period ending.  (B26:B64).**

**D. Plaintiff's Claims For Back Bay Fail Regardless Of Whether She Provides Documentary Evidence**

**1. Plaintiff Was Fully Compensated For All Holidays**

**Plaintiff's response:  Plaintiff provided adequate documentation to show how her back pay determination was made.  (B47:B48).  Simply stated it was the amount that would have been paid to Plaintiff less the unemployment compensation received for the period February 9, 2004 to March 1, 2004.  Furthermore, there was no documented policy defining how Holiday pay was to be paid.  (B71:B72) (B78) (B122:B131).  If Plaintiff was still employed at that time, she would have been eligible for Holiday Pay for December 25, 2003 and January 1, 2004.**

**2. Plaintiff Was Fully Compensated For All PTO And Vacation Pay**

**Plaintiff's response:  Defendant never provided Plaintiff a documented Vacation and Paid Time off policy but based on the policy produced at Deposition, Plaintiff was eligible for one week of vacation effective November 1, 2003 and three paid time off days effective November 1, 2003.  (B71:B72) (B79:B80).  Plaintiff is not asking for compensation for vacation time or paid time off prior to November 1, 2003 but the time that would have been paid to her had she remained employed instead of unjustly terminated.**

**3. Plaintiff Would Not Have Received A Bonus Even If She Had Remained Employed**

**4. Plaintiff Arbitrarily Changed Her Rate Of Pay In Damages Calculations**

Plaintiff's response to D3 & D4:  Plaintiff contends that she should have received a pay increase, but she did not receive a pay increase because Defendant's did not plan to employ Plaintiff beyond the day she went off on maternity leave.  In Mr. Fleming's Deposition: Plaintiff questioned, "Would you consider Plaintiff a very good employee?"  Mr. Fleming answered, Yes" (B185), and Mr. Fleming stated "based on a person who had a performance appraisal of outstanding to very good, ….."(B186).  With the high regards of Plaintiff's performance, Plaintiff maintains her position that a raise in pay was due, but not provided.  All regular full time hourly employees at Lawns that had worked in 2002 and worked at least 1,200 hours in 2003 received pay increases and bonuses / pay incentives, with the exception of Plaintiff.  Ten hourly employees with less tenure than Plaintiff and less hours worked in 2003 than Plaintiff had worked, received bonuses / pay incentives.  And four employees with less tenure than Plaintiff and less hours worked in 2003 than Plaintiff worked, received pay increases.  Plaintiff has provided a Payroll Analysis summary with redacted supporting detail.  (B132:B180)

E. Plaintiff's Claims For Insurance Premiums And Medical Expenses Fail

1. Butz's Daughter Is Not Eligible For An Award Of Medical Expenses

Plaintiff's response:  This is covered under the Delaware Insurance Code Title 18, Chapter 33, and Regulation 3335 titled Newborn Children.  An email from a representative of the Insurance Commissioner's office states "that it is mandatory from the moment of birth to the 30th day of life at the employer's expense even if they don't offer dependent care".  (B104) (B105).

2. Plaintiff Had Health Insurance Coverage

Plaintiff's response:  There is no question that health insurance coverage ceased on December 31, 2003. (B24:B25).  The bills in this claim for reimbursement are expenses occurring after December 31, 2003 and before March 1, 2004 and that were not paid by the insurance company. (B26:B46) (B106).  Defendants continue to state the coverage was extended until January 14, 2004 because they paid the premium through that period.  However, under Optimum Choice Agreement any termination of coverage after the 15th day of the billing period, the total monthly premium for such Member shall be due.  (B107).

17

V.    **Plaintiff Has Failed To Meet Her Burden Of Proof As To Emotional Stress Or Punitive Damages**

Plaintiff's response:  Defendant needs to understand that there are laws and regulations that establish how even small business are to hire, employ, and terminate their employees and Defendant must be held accountable for not abiding to these laws.

Federal Courts of Appeal addressing claims of compensatory damages for emotional distress in the context of 42 U.S.C.A. §§ 1981 and 1983, as well as 42 U.S.C.A. § 2000e (Title VII), have held that a plaintiff is not barred as a matter of law from recovering compensatory damages for emotional distress without expert testimony or corroborative evidence, and that the absence of corroboration goes to the weight of the evidence demonstrating emotional distress. See, e.g., Patrolmen's Benevolent Ass'n of City of New York v. City of New York, 310 F.3d 43, 55 (2d Cir.2002); Gunby v. Pa. Elec. Co., 840 F.2d 1108, 1121-22 (3d Cir.1988), cited with approval in Alexander v. Riga, 208 F.3d 419, 428 n. 6 (3d Cir.1999); Knussman v. Maryland, 272 F.3d 625, 640 (4th Cir.2001); Thomas v. Texas Dep't Criminal Justice, 297 F.3d 361, 368-69 (5th Cir.2002); Turic v. Holland Hospitality, Inc. 85 F.3d 1211, 1215 (6th Cir.1996); Forshee v. Waterloo Indus., Inc., 178 F.3d 527, 531 (8th Cir.1999).

Additionally, Plaintiff was unable to seek medical or psychological assistance or help because she no longer had health insurance or a job.

18

## PLAINTIFF'S ARGUMENTS

With this filing, Plaintiff is submitting Certified Statements of Michael L. Butz, Scott M. Butz, and Dina Alderucci. Plaintiff provided Defense with this list of Witnesses, but Defense chose not to depose them. These Certified Statements are being introduced now to assist the Court with its decision regarding the validity of Plaintiff's claim.

## I.    Defendant's Plans

Plaintiff contends that Defendants had never planned to grant Plaintiff a Maternity Leave of Absence. Defendant did not provide a pay increase or pay a bonus to Plaintiff because they had no intention to employ Plaintiff beyond the last day she worked, December 23, 2003. (B132:B180). Defendants' have tried to indicate other reasons for the dismissal of Plaintiff, but Plaintiff can show a pattern that clearly indicates that Defendant's had no intention of employing Plaintiff beyond the day she left for her maternity leave.

Defendants' admit, in the Summary Judgment documents, that they do not have a leave policy. (B190). Why was this not explained to Plaintiff before she left on maternity leave or better yet, early on in the Plaintiff's pregnancy? And why did Mr. Fleming say, "I know you are beginning your maternity leave...." if there was no leave policy. (B99:B101).

## II.    Defendants' Extend Insurance Coverage

Defendants' claim that as a result of their own generosity that they extended insurance coverage through December 31, 2003 instead of ending it on Plaintiff's termination date. The fax from Jeanne Fleming to Eric Howard clearly shows that the only reason the insurance was extended, was at the recommendation of their insurance agent. Jeanne's intention was to end it on December 23, 2003. Jeanne stated "the insurance agent was all for disenrolling her on Dec. 23rd until we told him she thought she was on maternity leave (unapproved, of course) then it gets into a gray area & they told us to contact the labor dept." (B22:B23)

19

### III.    Defendant Was Less Than Honest With Regards To Who Wrote The Termination Letter.

Defendant claimed that his attorney, Eric Howard, wrote the termination letter and he should have read it closer before signing it. But the fax from Jeanne Fleming to Eric Howard clearly shows that the Fleming's wrote the letter and asked Howard for advice. (B22:B23)

### IV.    Debra Watson's Story

Defendant claims that Debra Watson told him at 12:15PM on December 23, 2003 that Plaintiff was not returning after her maternity leave. (B94). However, Plaintiff did not leave the office until around 2:00 PM that same day. (B108:B109). Why didn't Defendant confront Plaintiff at that time, instead of waiting until that evening on the telephone? Why it is that nothing that Debra Watson told Mr. Fleming ever happened? Because she made it all up or she never said it in the first place.

Defendant claimed that Debra Watson had nothing to gain from Plaintiff being fired. He claimed that the Office Manager position was never filled by Ms. Watson or anyone else. However, Debra Watson referred to herself as the Office Manager when she provided Cecil County Government with Verification of Former Employment. (B181).

### V.    Pay Increases And Bonuses

All regular full time hourly employees at Lawns that had worked in 2002 and worked at least 1.200 hours in 2003 received pay increases and bonuses / pay incentives, with the exception of Plaintiff. Ten hourly employees with less tenure than Plaintiff and less hours worked in 2003 than Plaintiff had worked, received bonuses / pay incentives. And four employees with less tenure than Plaintiff and less hours worked in 2003 than Plaintiff worked, received pay increases. Plaintiff has provided a Payroll Analysis summary with redacted supporting detail. (B132:B180)

### VI.    Brief Summary – Defendants' Changing Their Story

Plaintiff's statements regarding the events that took place on December 23, 2003 and December 24, 2003 have never varied. However, Defendants' story changed from the 1) timeline presented to DDOL on February 22, 2005 (B94); 2) to the statement provided on Defendants' Answer to Plaintiff's First Set of Interrogatories January 29, 2007 (B95); 3) to Defendants' statements when deposed on August 30, 2007 (B72:B74);

4) and finally with Defense Counsels' filing of Summary Judgment dated October 16, 2007 (B182). On December 23, 2003, when the Plaintiff was in the office the last time before her maternity leave began, 1) Defendant was present in the office (B94); 2) then he wasn't present in the office (B95); 3) then he was in the office (B72:B74); 4) and finally he was not in the Office (B182). What is the court to believe and why does Defense keep changing their story?

## VII.    Forthright Facts

The facts are, Plaintiff talked with both Jeanne and Edward Fleming on December 23, 2003. (B2) (B74) (B83). Plaintiff informed Mr. Fleming that she was beginning her maternity leave. Mr. Fleming even acknowledged that Plaintiff was beginning her Maternity Leave. (B73). The evening of December 23, 2003, Plaintiff spoke with Mr. Fleming and assured him she was returning to work at Lawns after her maternity leave ended. (B108:B109). On December 24, 2003, both Plaintiff and Plaintiff's husband assured Mr. Fleming that Plaintiff would return to Lawns after her maternity leave ended and Plaintiff sent Mr. Fleming an email spelling out that she had begun her maternity leave and she would return six weeks after the birth of her child. (B9) (B66) (B108:B109). The Plaintiff would have no way to know that she did not have a job with Lawns when her maternity leave ended.

## VIII.    Defendants' Claim Plaintiff Deserted Her Job
Calendar of events:

| Tuesday | December 23, 2003 | Maternity Leave began |
|---|---|---|
| Wednesday | December 24, 2003 | Assurances were provided that Plaintiff would Return, Both verbal and written |
| Thursday | December 25, 2003 | Christmas Day |
| Friday | December 26, 2003 | Plaintiff spoke with Defendant, helping with a work issue, documented |
| Saturday | December 27, 2003 | Weekend |
| Sunday | December 28, 2003 | Weekend |
| Monday | December 29, 2003 | Plaintiff spoke with Defendant, helping with a work issue, documented |
| Tuesday | December 30, 2003 | Plaintiff was admitted to hospital, in labor, and child was born |
| Wednesday | December 31, 2003 | Plaintiff was recuperating from emergency c-section |
| Thursday | January 1, 2004 | Plaintiff was discharged from hospital in the morning |
| Friday | January 2, 2004 | Family joined Plaintiff & plaintiff's husband, celebrating the new addition to the family |
| Saturday | January 3, 2004 | Weekend |

21

| Sunday | January 4, 2004 | Weekend |
| Monday | January 5, 2004 | Plaintiff called Lawns to tell them of the birth of her child. With no return call from Defendant |

Does the above timeline indicate job desertion? The question remains, how does a nine

month pregnant person suddenly desert her job?

| Thursday | January 8, 2004 | Defendant sent, termination letter, back-dating the termination to December 23, 2003 |
| Wednesday | January 14, 2004 | Plaintiff received termination letter |
| Thursday | January 15, 2004 | Plaintiff's father-in-law tries to reach Defendant |
| Monday | January 19, 2004 | Plaintiff's father-in-law tries to reach Defendant two times. Father-in-law & Defendant finally speak; Defendant offers job back with the condition Plaintiff signs Employment Agreement |

Defendants' claim that Plaintiff abandoned her job, however Plaintiff provided

Defendant with written documentation notifying Defendant and confirming her

conversation with Defendant that she was beginning her maternity leave and her

intentions were to return back to work six weeks after the baby was born. (B9).

## IX.    Terminated Plaintiff's Employment Because Of High Insurance Costs

Defendants' claim in their termination letter that they terminated Plaintiff's

employment because of high insurance costs. (B66) (B68). Yet Defendants' continue to

insist that they would have hired her back. So the high costs were not a real determining

factor in the termination or they wouldn't want to bring Plaintiff back. Are they covering

the real reason for the termination?

## X.    Detail Of Defendant's Testimony Changing

Defendants' own testimony keeps changing during the course of this action.

### A. Department Of Labor

During the Department of Labor's investigation, February 22, 2005 Defendants'

states that Plaintiff called on December 23, 2003 in the morning and told Jeanne Fleming

she was going to the hospital. Around 8:30 AM, Plaintiff came into the office and

advised Defendant that her mucus plug came out and would be starting maternity leave

once her husband and mother came to pick her up. (B94).

### B. First Set Of Interrogatories

During the First Set of Interrogatories that Defendant answered on January 29,

2007 Defendants states that Plaintiff failed to provide Lawns with an anticipated start or

22

end date for expected maternity leave. Instead, she arrived at work on December 23, 2003, packed her personal belongings, provided no transition plans, status reports, or give any information that would indicate she was preparing for her maternity leave. She did not leave her keys to the facility. And she left suddenly with no management present and provided no information to her supervisors about her departure. (B95).

### C. Defendants' Deposition

During Deposition of Defendant, Edward Fleming on August 30, 2007, Mr. Fleming states that he knew Plaintiff was leaving on December 23, 2003 to go start her maternity leave. He states he needed to know how long and when Plaintiff was going to be back. (B72:B74). So clearly, Defendant was present and knew Plaintiff was leaving on maternity leave.

### D. Defense Counsel's Motion For Summary Judgment

Defense counsel, on page 20 of Defendant's Motion for Summary Judgment, states "Butz packed her personal belongings and left. She did not tell Mr. or Mrs. Fleming that she was going to begin her planned leave. She did not leave her keys to the office or any instructions for Watson to use during her absence. She did not tell Lawns the length of time she expected to be out". (B182).

With the Defendant changing his story and then going back to his original story after Plaintiff provided Defendant with the "DDOL" documents how can we determine what the truth is? And this leads to doubt any of the testimony the Defendant has provided.

### XI.    Plaintiff Establishes A Prima Facie Case Of Pregnancy Discrimination

Butz must establish that (1) she is a member of a protected class; (2) she suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person who is not of the protected class is treated differently. Under McDonnell Douglas, to establish her prima facie case, the Plaintiff need not prove that discrimination was the motivating factor in her dismissal. All she must do is raise an inference that such misconduct occurred.

### A. Protected Class

Butz was a member of a protected class. She was pregnant.

### B. Adverse Employment Action

Butz was fired from her job while on maternity leave. Butz provided documented notification and verbal notification of her beginning and ending of her maternity leave. (B9) (B66) (B83) (B84:B86) (B108:B109) (B113:B115).

### C. Unlawful Discrimination

Butz admits that she believes that Defendant used valid reasons to justify her employment termination. However, Butz would like to address several points that prove she was treated differently than other similarly situated people of non-protected classes.

#### 1. Laurie Schatz

When Laurie Schatz was employed with Lawns Unlimited, she requested and was approved medical leave for a procedure during her last two weeks of employment without adverse action. (B70:B71). Defendant was unable to provide Vacation Request forms from any office employee during Plaintiff's employment with Lawns even though Plaintiff requested this information repeatedly. Therefore, clearly shows Defendant's form was not used.

#### 2. Debra Watson

When Debra Watson was employed with Lawns Unlimited, she requested and was approved medical leave on at least a dozen occasions without adverse action. (B10:B21).

#### 3. Michael Butz's Conversation With Defendant

Mr. Butz informed Mr. Fleming that he was in violation of the Pregnancy Discrimination Act by firing Plaintiff. Mr. Fleming's comment was "It's my company and I can do what I want". Mr. Butz asked Mr. Fleming to reinstate Plaintiff's job and he said he would but with one condition. That condition being that Plaintiff would sign an employment contract that she would work a certain number of years for Lawns Unlimited. *Mr. Butz asked Mr. Fleming if any of his other employees had ever signed an employment contract. And Mr. Fleming stated "no".* (B90:B91) (B92:B93) (B118:B121).

#### 4. Jeanne Fleming's Fax to Mr. Howard

24

Defense counsel continues to point out that Defendants' extended Plaintiff's health insurance beyond her termination date. The faxed document dated January 8, 2004 from Jeanne Fleming to Eric Howard, clearly shows that Defendants did not plan to extend health care coverage beyond December 23, 2003 until the insurance agent recommended extension to them because Plaintiff thought she was on maternity leave. (B22:B23).

Additionally, in this same fax, Jeanne Fleming indicates that this maternity leave is "unapproved, of course". (B22:B23). This indicates that the Fleming's had no intention of ever granting Plaintiff's maternity leave or employing her beyond the date she left on her maternity leave.

### 5. Sixteen Year History Of No Terminations

Defendant readily admits in their Motion for Summary Judgment on page 10 "In its 16-year history, Lawns had never terminated a single employee". (B69). The first termination in the history of Lawns Unlimited was Plaintiff who was pregnant and terminated during her maternity leave.

### 6. Plaintiff's Beliefs

Defense states that Plaintiff admits that she believes they terminated her due to increased health care premiums. To this point, Plaintiff's concludes that beliefs are irrelevant.

### XII.    Settlement Offer

Defendant's counsel requested a settlement offer number from Plaintiff in April 2007. Plaintiff provided the offer on April 7, 2007 at 9:07 AM with Defendants' counsel rejecting the offer, eight minutes later. The offer was $16,339.49 with an expiration date of April 16, 2007. (B189).

## CONCLUSION

This case should not be dismissed, because Plaintiff is confident that she has shown that Plaintiff has satisfied the three elements of a prima facie case, establishing that (1) she is a member of a protected class; (2) she suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person who is not of the protected class is treated differently. Plaintiff has provided adequate documentation and argument to raise questions regarding the validity of Defense counsel's arguments. This case needs to go to trial, where a jury of her peers can determine Mr. Fleming's innocence or guilt.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RENEE M. BUTZ,                          )
                                        )
              Plaintiff,                )
                                        )
      v.                                )        Civ. No. 05-495-JJF
                                        )        Judge Joseph J. Farnan Jr.
LAWNS UNLIMITED LTD. and                )
EDWARD FLEMING,                         )
                                        )
              Defendants.               )

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's Response to

Defendants' Motion for Summary Judgment and Plaintiff's Request for Denial of Defendant's

Motion for Summary Judgment were sent by first-class United States mail, postage duly paid, on

this 16th day of November, 2007, to counsel of record as follows:

Margaret M. DiBianca
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801

_____
Renee M. Butz
58 Hickory Drive
North East, MD 21901
(410) 441-4300
Plaintiff pro se

Dated: 11/16/07