IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RENEE M. BUTZ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No.: 05-495 (JJF) |
| LAWNS UNLIMITED LTD., and | ) | |
| EDWARD FLEMING | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS LAWNS UNLIMITED, LTD., AND EDWARD FLEMING'S REPLY
BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
William W. Bowser, Esquire (Bar I.D. 2293)
Margaret M. DiBianca, Esquire (Bar I.D. 4539)
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, Delaware 19801-0391
Telephone: (302) 571-5008
Facsimile: (302) 576-3476
E-mail: mdibianca@ycst.com
*Attorneys for Defendants*

Dated: December 19, 2007

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ iii

ARGUMENT ....................................................................................................... 1

I.  PLAINTIFF HAS NOT POINTED TO ANY EVIDENCE TENDING TO
    SHOW THAT DEFENDANT FLEMING IS AN "EMPLOYER" UNDER
    TITLE VII1

II.  PLAINTIFF HAS FAILED TO MEET HER BURDEN TO
     DEMONSTRATE A SUSTAINABLE CLAIM OF PREGNANCY
     DISCRIMINATION ....................................................................................... 1

    A.  Plaintiff Believed That She Was Terminated For Reasons
        Unrelated to Her Pregnancy ................................................................. 2

    B.  Plaintiff Has Failed to Identify Any Similarly Situated
        Employees Outside the Protected Class ................................................ 6

III.  PLAINTIFF HAS FAILED TO MEET HER BURDEN OF PROOF AS TO
      ANY DAMAGES ........................................................................................ 9

    C.  Plaintiff Has Not Produced Any Evidence of Financial Injury
        That Could Justify an Award for Monetary Damages ........................... 10

        1.  Plaintiff's Claim for Back-Pay Damages Is Precluded by the
            Complete Absence of Any Documentary Support ....................... 10

        2.  Plaintiff is Estopped From Asserting a Claim for Medical
            Insurance Premiums .................................................................. 12

        3.  Plaintiff Cannot Claim Medical Expenses That She Would
            Have Incurred Even if She Had Not Been Terminated. .............. 13

    D.  Plaintiff Has Failed to Carry Her Burden of Proof as to
        Emotional Distress or Punitive Damages ............................................. 15

        1.  Plaintiff Has Failed to Proffer Any Evidence In Support of a
            Claim for Emotional Distress Damages ...................................... 16

        2.  Plaintiff Has Failed to Proffer Any Evidence In Support of a
            Claim for Punitive Damages ...................................................... 17

CONCLUSION ................................................................................................... 19

DB02:6247229.1                                                    065789.1001

# TABLE OF AUTHORITIES

**Cases**

Andy v. UPS,
   2003 U.S. Dist. LEXIS 25193,
   (E.D. Pa. Oct. 24, 2003),
   aff'd, 2004 U.S. App. LEXIS 22700,
   (3d Cir. Nov. 1, 2004)....................................................................................... 4

Berndt v. Kaiser Alum. & Chem. Sales, Inc.,
   604 F. Supp. 962 (E.D. Pa. 1985),
   aff'd, 789 F.2d 253 (3d Cir. 1986) .................................................................. 10

Carey v. Piphus,
   435 U.S. 247 (1978) ........................................................................................ 16

Chambliss v. Amtrack,
   2007 U.S. Dist. LEXIS 11522,
   (D.D.C. Feb. 20, 2007) ................................................................................... 13

Cohn v. Integra Fin. Corp.,
   1996 U.S. Dist. LEXIS 16405,
   (E.D. Pa. Oct. 31, 1996).................................................................................... 5

Dici v. Pa.,
   91 F.3d 542 (3rd Cir. 1996) .............................................................................. 1

EEOC v. Century Broad. Corp.,
   957 F.2d 1446 (7th Cir. 1992)......................................................................... 18

Finch v. Hercules, Inc.,
   865 F. Supp. 1104 (D. Del. 1994) .................................................................... 2

Fuentes v. Perskie,
   32 F.3d 759 (3d Cir. 1994).................................................................................. 1

Gunby v. Pa. Elec. Co.,
   840 F.2d 1108 (3d Cir. 1988),
   cert. denied sub nom, 492 U.S. 905 (1989) ............................................11, 16, 17

Hammond v. Northland Counseling Ctr.,
   218 F.3d 866 (8th Cir. 2000)........................................................................... 17

Horn v. Duke Homes,
   755 F.2d 599 (7th Cir. 1985)........................................................................... 10

Jones v. Hosp. of Univ. of Pa.,
  2004 U.S. Dist. LEXIS 15711,
  (E.D. Pa. Aug. 5, 2004)............................................................................ 5, 8

Jones v. Union Pacific R.R. Co.,
  302 F.3d 735 (7th Cir. 2002)........................................................................ 3

Kolstad v. Am. Dental Assoc.,
  527 U.S. 526 (1999) ...................................................................................... 17

Maldonado v. U.S. Bank,
  186 F.3d 759 (7th Cir. 1999)........................................................................ 6

McDuffy v. Koval,
  226 F. Supp. 2d 541 (D. Del. 2002) ............................................................ 11

Mershon v. Woodbourne Family Practice, LLC,
  2006 U.S. Dist. LEXIS 49577,
  (E.D. Pa. July 19, 2006)................................................................................ 9

Neiderlander v. Am. Video Glass Co.,
  80 Fed. Appx. 256 (3d Cir. 2003) ................................................................ 2

Pivirotto v. Innovative Sys.,
  191 F.3d 344 (3d Cir. 1999).......................................................................... 6

Richter v. Hook-SupeRx, Inc.,
  142 F.3d 1024 (7th Cir. 1998)...................................................................... 3

Sacavage v. Jefferson Univ. Physicians,
  2000 U.S. Dist. LEXIS 8634,
  (E.D. Pa. June 20, 2000) .............................................................................. 9

Schiflke v. Trans World Entm't,
  479 F. Supp. 2d 445 (D. Del 2007) .......................................................... 5, 6

Shipman v. Del.,
  2007 U.S. Dist. LEXIS 57054,
  (D. Del. Aug. 6, 2007) .................................................................................. 1

Spence v. Bd. of Ed.,
  806 F.2d 1198 (3d Cir. 1986)...................................................................... 17

Taylor v. Philips Indus., Inc.,
  593 F.2d 783 (7th Cir. 1979)...................................................................... 10

Troupe v. May Dept. Stores Co.,
  20 F. 3d 734 (7th Cir. 1994)........................................................................ 5

iv

United Steel, Paper & Forestry v. Neville Chem. Co.,
   2007 U.S. Dist. LEXIS 55435,
   (W.D. Pa. July 31, 2007) ....................................................................................... 11

Valentin v. Crozer-Chester Med. Ctr.,
   986 F. Supp. 2d 292 (E.D. Pa. 1997)..................................................................... 16

Villanueva v. Christiana Care Health Servs.,
   2007 U.S. Dist. LEXIS 4760,
   (D. Del. Jan. 23, 2007)............................................................................................ 8

**Other Authorities**

18 Del. C. § 3335.................................................................................................................. 8

**ARGUMENT**

**I.    PLAINTIFF HAS NOT POINTED TO ANY EVIDENCE TENDING TO SHOW THAT DEFENDANT FLEMING IS AN "EMPLOYER" UNDER TITLE VII**

At the outset, Defendants address the issue of individual liability as to Defendant Edward Fleming.  In their Opening Brief in Support of Their Motion for Summary Judgment, Defendants requested that summary judgment be granted as to Mr. Fleming.  (D.I. 125).  Plaintiff has failed to oppose Defendant's request.  She has not proffered any evidence in support of finding that he is an "employer," as required for the imposition of liability under Title VII.  See Dici v. Pa., 91 F.3d 542, 552 (3rd Cir. 1996) (holding that individual employees cannot be held liable under Title VII).  Therefore, summary judgment should be granted as to Mr. Fleming outright.  See, e.g., Shipman v. Del., No. 05-665-GMS, 2007 U.S. Dist. LEXIS 57054, at *8-9 (D. Del. Aug. 6, 2007) (dismissing claims against individual defendants because Title VII imposes liability only upon "employers").

**II.   PLAINTIFF HAS FAILED TO MEET HER BURDEN TO DEMONSTRATE A SUSTAINABLE CLAIM OF PREGNANCY DISCRIMINATION**

Plaintiff has presented no evidence sufficient to survive the present Motion.  She has failed to point to any evidence that could support the inference of a discriminatory bias by Defendants against pregnant women.  At best, she has alleged, without support from the record, that Defendants made a "bad decision," though not a discriminatory one.

When attempting to discredit an employer's proffered justification, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent."  Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).  To withstand a well-supported motion for summary judgment, Plaintiff must present some factual evidence to demonstrate that Defendants were actually motivated by some discriminatory

1

animus.  See Neiderlander v. Am. Video Glass Co., 80 Fed. Appx. 256, 259 (3d Cir. 2003).  Her

failure to point to any such evidence requires dismissal of her claim.

  **A.**  **Plaintiff Believed That She Was Terminated For Reasons Unrelated to Her Pregnancy**

  Plaintiff's arguments are grounded in the wrong standard of law.  She does not dispute

that the legitimate, non-discriminatory reasons proffered by Defendants were merely a pretext.

Instead, she argues that Defendants made a "bad decision" by believing the word of another

employee over hers.  Without some evidence of pretext, Plaintiff's Complaint must be dismissed.

  As stated in Defendants' Opening Brief in Support of Their Motion for Summary

Judgment, the decision to terminate Plaintiff was made after another employee, Debra Watson,

revealed that Plaintiff lied about her intent to return to work following the birth of her child.

(D.I. 125 at p.8, § 2).  Watson's revelations devastated the Flemings, who had treated Plaintiff

"like family."  (A14, A150).  They attempted to contact Plaintiff, hoping that she would dispute

the allegations.  (A14-16).  But Plaintiff rebuked them, stating that she was on maternity leave

and did not have to speak to them.  (A15).  The fact that Plaintiff had recently moved to New

Castle County and would be required to commute nearly 70 miles each way to her job at Lawns

provided additional credibility to Watson's story.  (A157, A2).  See Finch v. Hercules, Inc., 865

F. Supp. 1104 (D. Del. 1994) (explaining that an employer should not face liability for

intentional discrimination when its decision was made in good faith, as compared to a decision

based on unreasonable information).

  On advice of counsel, Defendant Fleming terminated Plaintiff via letter (the "Termination

Letter").  (A21, A194-95).  The fact that Defendants acted on the advice of their attorney tends to

further disprove any possibility of discriminatory animus.  Plaintiff admits that she made no

attempt to contact Mr. or Mrs. Fleming to explain her intentions or to assure them that Watson's

              

claims were untrue.  (A101, A102, A107, A108-09, A123).  She never reached out to the people she claims treated her like part of their own family to resolve the issue.  Without doubt, Defendants had more than a reasonable basis upon which to terminate Plaintiff.

In response to the legitimate, non-discriminatory reasons proffered by Defendants, Plaintiff argues that the following three pieces of "evidence" demonstrate pretext.  First, Plaintiff argues that the Termination Letter may have been recommended by Defendants' counsel but that Defendants "took it on their own to terminate Plaintiff."  (D.I. 127 at p.11).  Second, she argues that, by signing the Termination Letter without fully understanding its ramifications, Defendant Fleming acted in bad judgment.  (D.I. 127 at p.11).  Third, Plaintiff argues that because Mrs. Fleming made handwritten edits to the attorney's draft of the letter, she likely drafted the letter herself, and is lying about counsel's involvement.  (D.I. 127 at p.11; B89).  None of these arguments constitute sufficient grounds to deny the present Motion.  See generally, Jones v. Union Pacific R.R. Co., 302 F.3d 735, 743 (7th Cir. 2002) ("An employer's reasons for terminating an employee may be mistaken ill considered or foolish, but so long as [the employer] honestly believed those reasons, pretext has not been shown.") (internal quotations omitted).

Each of Plaintiff's arguments address whether Defendants made the *right* decision.  But none of them purport to show that Defendants harbored any discriminatory bias.  Nor does she claim that Defendants have lied about the reasons for their decision.  "Pretext is more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action."  See Richter v. Hook-SuperRx, Inc., 142 F.3d 1024, 1030 (7th Cir. 1998).

In short, she argues that she was a good employee who should not have been terminated.  She does not dispute that Defendants held an honest belief that she unjustifiably refused to communicate with them.  Therefore, Plaintiff fails to show the discriminatory animus necessary

to save her claim from dismissal.  See Andy v. UPS, No. 02-8231, 2003 U.S. Dist. LEXIS

25193, at *29 (E.D. Pa. Oct. 24, 2003), aff'd, 2004 U.S. App. LEXIS 22700 (3d Cir. Nov. 1,

2004).

 In the parties' previously filed Uncontested Facts, Plaintiff identifies the reasons she

believes she was terminated.  (D.I. 123).  First, she believes she was terminated because

Defendants would incur increased costs.  (D.I. 123 at ¶36).  Second, she believes that Defendants

acted upon the information they had received from Ms. Watson when making the decision to

terminate.  (A115-116).  Plaintiff does not believe that she was terminated because of her

pregnancy and she is thus precluded from pursuing a sustainable claim of discrimination under

Title VII as a matter of law.

 It is worthy to note that Plaintiff has maintained this position since her termination.  Just

two weeks after receiving the Termination Letter, when she filed her Charge of Discrimination,

she told the Delaware Department of Labor ("DDOL"), that she "believe[d she] was let go due to

insurance reasons."  (A191).  And she reasserted her belief again at her deposition, more than

three and a half years later when she admitted that Mr. Fleming terminated her, at least in part,

because he believed that she did not intend to return to work.  (A115).

 Plaintiff is unable to dispute the proffered legitimate, non-discriminatory reasons with

evidence of pretext.  Because she cannot now retract her prior, damaging statements, she tries to

remove them from consideration by stating that her "beliefs are irrelevant."  (D.I. 127 at p.2, ¶3;

p.3, ¶6; p.25, § 6).  Plaintiff's beliefs about the basis for her termination are, indeed, relevant to

the determination of this Motion.  And where her stated belief is that she was not terminated

because of her protected status, her beliefs are, in fact, dispositive.

4

Plaintiff's failure to point to any evidence tending to demonstrate that Defendants' proffered reasons are false requires dismissal at this stage. In <u>Troupe v. May Department Stores Co.</u>, the plaintiff alleged that her employer terminated her because it did not expect her to return to work following her maternity leave. 20 F.3d 734, 737 (7th Cir. 1994). To succeed on her claim of pregnancy discrimination, the plaintiff had to show that the employer treated non-pregnant personnel more favorably. Noting that the plaintiff had not demonstrated that she would not have been fired "except for the fact of her pregnancy," the court found that no rational fact finder could find that she was a victim of pregnancy discrimination. <u>Id.</u>

In <u>Cohn v. Integra Financial Corporation</u>, the court relied on the <u>Troupe</u> decision in dismissing the plaintiff's claim. No. 96-247, 1996 U.S. Dist. LEXIS 16405, at *19 (E.D. Pa. Oct. 31, 1996). There, the employer had a policy of terminating employees who took an extended leave of absence. The court noted that the practice "although reprehensible, does not automatically transform termination into unlawful discrimination simply because it was applied to a pregnant woman." <u>Id.</u> at *20. Plaintiff seems to assert just the opposite.

For example, her father-in-law told Mr. Fleming that "he was in violation of the Pregnancy Discrimination Act by firing Plaintiff." (D.I. 127 at p. 12).

"The PDA is a shield against discrimination, not a sword in the hands of a pregnant employee." <u>See</u> <u>Schiflke v. Trans World Entm't</u>, 479 F. Supp. 2d 445, 451 (D. Del 2007); <u>Jones v. Hosp. of Univ. of Pa.</u>, No. 03-4938, 2004 U.S. Dist. LEXIS 15711, at *20 (E.D. Pa. Aug. 5, 2004) (holding that the absence of negative history between the plaintiff and the decision maker demonstrates the absence of pretext and finding the plaintiff's unsupported allegations insufficient evidence of her claims). Mr. Butz's assertion that any pregnant employee is immune from termination or discipline is absolutely incorrect. <u>Maldonado v. U.S. Bank</u>, 186 F.3d 759,

5

766 (7th Cir. 1999) ("an employer can dismiss an employee for excessive absenteeism, even if the absences were a direct result of the employee's pregnancy").  "The central focus of the inquiry is always whether the employer treated the plaintiff differently because of her sex." Samuels v. Postmaster Gen., No. 03-3482, 2007 U.S. Dist. LEXIS 54899, at *17 (citing Pivirotto v. Innovative Sys., 191 F.3d 344, 352 (3d Cir. 1999)).

> ### B.    Plaintiff Has Failed to Identify Any Similarly Situated Employees Outside the Protected Class

Plaintiff's admission that Defendants terminated her for non-discriminatory reasons requires dismissal of her claims.  Plaintiff's failure to provide any suitable comparators further requires dismissal.  Plaintiff admits that Lawns did not have a leave policy.  (D.I. 127 at p. 8) ("There was no published vacation or paid time off policy.  Plaintiff requested vacation time and Defendant granted [it]").  Because she does not contend that Defendants did not follow its policy, she must point to evidence that another, non-pregnant employee took an unpaid leave of absence and was treated differently than Plaintiff was treated during her absence.  Failure to identify "proper comparators will result in dismissal."  See Schiflke, 479 F. Supp. 2d at 451 (granting summary judgment to the defendant where the plaintiff's failure to point other employees who were "similarly unable to work were given an accommodation" not made available to the plaintiff).

Plaintiff has consistently maintained that there were no suitable comparators.  For example, in her responses to the DDOL's Questionnaire, which requests the names of "all persons in comparable positions" who were treated the same as, or more favorably than her, Plaintiff answered "None" to both questions.  (A189).  Now, when faced with the proposition that she is *required* to identify a proper comparator, Plaintiff has changed her story.  In her Answering Brief, for the first time, Plaintiff alleges that Debra Watson and Laurie Schatz both

took "non-maternity medical leaves" and were not subsequently terminated.  (D.I. 127 at p. 3).

Putting aside the amount of weight that may be given to evidence alleged for the first time in an

answering brief, this allegation is still insufficient.  Neither Ms. Watson or Ms. Schatz are

suitable comparators.

> As to Ms. Watson, Plaintiff points to the following documentary evidence:
>
> 1. A message slip dated October 17, 2004, indicating Ms. Watson left a voice mail for Defendants stating that she would be out due to illness.  (B10).
>
> 2. A note from Ms. Watson faxed to Defendants on October 22, 2004, regarding her absence and enclosing a doctor's note excusing her from work from October 19 through October 25, 2004.  (B11, B21).
>
> 3. Eight completed "Vacation Request Forms."  (B13-20).  Each form was submitted and/or approved prior to the dates requested.[1]
>
> 4. Handwritten note from Ms. Watson to Mrs. Fleming identifying four dates Ms. Watson anticipated she would need time off in May 2004.  (B12).

It is unclear how Plaintiff contends that these documents demonstrate that Ms. Watson

was a suitable comparator or that she was treated more favorably.  In fact, they do just the

opposite.  First, Ms. Watson requested to take off in increments of single and half days.  These

are single, individual days off, a far cry from the "leave of absence" taken by Plaintiff.  Second,

Ms. Watson submitted a Vacation Request Form for every anticipated absence.  She did so in

advance in compliance with Lawns' procedures.  She communicated with Defendants and kept

Mrs. Fleming up to date as to her expected return date.  Ms. Watson was not "similarly situated

---

[1] See B13 Request for Time Off on March 15, 2004, approved on March 10, 2004; B14 Request for Time Off on April 26, 2004, submitted on March 16, 2004; B15 Request for Time Off during the "last week of May" 2004, submitted April 27, 2004; B16 Request for Half Day Off on April 28, 2004, approved on April 25, 2004; B17 Request for Time Off on May 19, 2004, approved on April 23, 2004; B18 Request for Half Day Off on July 21, 2004, submitted July 20, 2004; B19 Request for Two-Hour Lunch on August 11, 2004, approved August 9, 2004; B20 Request for Half Day Off on October 13, 2004, submitted and approved October 11, 2004.

7

in her ability to work," as is required in order for her to be considered as a comparator.

Villanueva v. Christiana Care Health Servs., No. 04-258-JJF, 2007 U.S. Dist. LEXIS 4760, at

*14 (D. Del. Jan. 23, 2007).

Plaintiff also claims that former Lawns employee, Laurie Schatz, is an appropriate

comparator.  (D.I. 127 at pp.3, 14, 24).  She alleges that Ms. Schatz "requested and was approved

medical leave for a procedure during her last two weeks of employment without adverse action."

(D.I. 127 at p. 24, § 1).  The only evidence offered to support this allegation is the "Certification"

of Dina Alderucci, provided for the first time in Plaintiff's Appendix to her Answering Brief.

(B70-71).

According to her certification, Ms. Alderucci was employed by Defendants for five

months in 2003 and that she quit in October 2003, approximately three months before Plaintiff's

termination.  (B70 at ¶¶2, 8).  The only reference made to Ms. Schatz, in the entire document

states the following:

> Laurie Schatz took a leave of absence to have surgery.  She missed
> a couple of days and then returned to work.  Mr. Fleming approved
> and allowed this leave of absence without any adverse action.

(B70 at ¶7).  Again, it is unclear how Plaintiff contends this statement tends to show that Ms.

Schatz is a suitable comparator or that she was somehow treated more favorably than Plaintiff.

More importantly, there is no evidence Ms. Schatz or Ms. Watson ever refused to communicate

with Defendants as Plaintiff did.  Therefore, neither can be said to have received more favorable

treatment than Plaintiff.  See Jones, 2004 U.S. Dist. LEXIS 145711, at *23 (explaining that, in

order for employees to be deemed similarly situated, the individual "must have engaged in the

same conduct without differentially or mitigating circumstances").

A single request "to take a couple of days off" is hardly a leave of absence.  Because

neither woman engaged in the conduct that resulted in Plaintiff's termination, neither can be

8

considered a proper comparator.  She has failed to find a single comparator who had the same

supervisor and who was found in violation of the same disciplinary policy.  In order for

employees to be deemed similarly situated, the individuals with whom a plaintiff seeks to be

compared must have been treated more favorably under "identical circumstances."  See also

Sacavage v. Jefferson Univ. Physicians, No. 99-3870, 2000 U.S. Dist. LEXIS 8634, at *11-12

(E.D. Pa. June 20, 2000).

     Defendants terminated Plaintiff as a result of her failure to communicate about her

absence.  When Plaintiff stopped communicating with Defendants, it had no obligation to

continue to employ her.  Ms. Watson and Ms. Schatz, on the other hand, kept in constant

communications with Defendants, providing advance notice of the need for time off and

returning to work after, at the most, "a couple of days."

     Contrary to Mr. Butz's legal conclusions, the Pregnancy Discrimination Act does not

require an employer to offer maternity leave.  Mershon v. Woodbourne Family Practice, LLC,

No., 06-00253, 2006 U.S. Dist. LEXIS 49577, at *7 (E.D. Pa. July 19, 2006).  Nor does it require

reinstatement of the employee after maternity leave.  Id.  Plaintiff was terminated for failure to

communicate her intentions regarding her employment status or to dispute Ms. Watson's claims.

Plaintiff was not terminated because she was pregnant.  Id. at *8.

## III.   PLAINTIFF HAS FAILED TO MEET HER BURDEN OF PROOF AS TO ANY DAMAGES

     Although Plaintiff's damages request has changed several times, she now requests

damages for the period of February 9, 2004 to March 1, 2004.  (D.I. 127 at p.15 § IV(A)).  This

is consistent with the Court's prior Order, which extinguishes Plaintiff's claim for damages as of

March 2004.  (D.I. 100).  As a bit of perspective, the period during which Plaintiff asserts she

suffered economic harm consists, in total, of *less than three workweeks.*[2] The use of the Court's limited resources for back-pay damages totaling twelve days' pay, although not necessarily relevant for the purposes of the present Motion, is, nonetheless, a troubling statement.

### C.    Plaintiff Has Not Produced Any Evidence of Financial Injury That Could Justify an Award for Monetary Damages

Plaintiff has failed to meet her burden to establish her damages with certainty.  In large part, this is due to her repeated refusal to produce relevant documents that potentially could provide evidence of her actual out-of-pocket losses.  The documents she has provided are unsupported, unauthenticated, and wholly inadmissible.  Further, the calculations she provides have changed continuously throughout this litigation.  Without a doubt, Plaintiff has failed to produce anything close to the requisite level of evidence necessary to support a claim of damages.[3]

### 1.    Plaintiff's Claim for Back-Pay Damages Is Precluded by the Complete Absence of Any Documentary Support

Plaintiff has the burden of proving her alleged damages.  Horn v. Duke Homes, 755 F.2d 599, 606 (7th Cir. 1985).  No back pay damages may be awarded where the plaintiff fails to introduce any evidence of actual earnings.  See, e.g., Taylor v. Philips Indus., Inc., 593 F.2d 783, 786 (7th Cir. 1979) (*per curiam*).  Further, Plaintiff "is entitled only to out-of-pocket expenses incurred for other insurance and/or actual medical expenses."  Berndt v. Kaiser Alum. & Chem. Sales, Inc., 604 F. Supp. 962, 965 (E.D. Pa. 1985), aff'd, 789 F.2d 253 (3d Cir. 1986).  And it is

---

[2] For the purposes of back pay, this would entitle Plaintiff to a *maximum* recovery of **$1,008**.  (B47).  This may explain why, according to Plaintiff's Motion for Appointment of Counsel (D.I. 17), more than sixteen attorneys declined to take her case.

[3] Plaintiff's damages request had seen multiple revisions..  For example, plaintiff initially requested $1,127.25 in medical expenses but now seeks $1,465.25.  (D.I. 78, D.I. 107, B26, B32 ).  And she initially sought $2,364.94 in insurance premiums, which she later changed to $2,657.58.  (D.I. 57 , D.I. 78, D.I. 107).  Finally, Plaintiff initially sought lost wages for ten hours in unpaid overtime and sixteen hours in unpaid personal leave.  (D.I. 57).  In her most recent submission, she seeks six overtime hours and twenty-four hours of personal leave.  (B47).

Plaintiff's burden to introduce evidence sufficient to establish the costs "she claims to have incurred and that the medical expenses and lost wages are reasonable and necessary." See United Steel, Paper & Forestry v. Neville Chem. Co., No. 06-640, 2007 U.S. Dist. LEXIS 55435,at *13-14 (W.D. Pa. July 31, 2007); McDuffy v. Koval, 226 F. Supp. 2d 541, 545 (D. Del. 2002).

Plaintiff's failure to produce any documents in support of a claim for back pay precludes her from recovering such an award. She has not submitted copies of her tax returns, W-2 forms, pay stubs, or other documentary evidence that could demonstrate her earnings and, in turn, her economic losses.[4] Instead, what she has produced is a single-page, self-created report containing eight lines of text. (B47).

Each line on the report represents a different type of claimed damages, including: (1) Wages; (2) Overtime Wages; (3) Wage Increase; (4) Vacation; (5) Personal; (6) Christmas; (7) New Year's; and (8) Bonus. (B47). There is no indication as to what pay periods are represented, how she determined the number of hours worked, or what the dollar amount represents. (B47). Nor does she indicate the hourly rate at which she contends she should have been paid. (B47). And she has failed to provide or point to any documents to support her "calculations."

These unsupported and unexplained totals are far too speculative to permit an award of back pay. Plaintiff's repeated failure to provide any documents in support of her claim for back pay damages precludes her from such an award. See Gunby v. Pa. Elec. Co., 840 F.2d 1108 (3d Cir. 1988) (holding that speculative damages cannot be awarded in civil rights cases).

---

[4] This is not because such documents have not been requested by Defendants. Defendants made numerous requests during discovery, including a Motion to Compel. (D.I. 81).

### 2.  Plaintiff is Estopped From Asserting a Claim for Medical Insurance Premiums

Plaintiff's failure to provide any admissible evidence to support a claim for medical insurance premiums precludes such damages from being awarded, as well.  Again, she provides the Court with a summary chart she created and included in her Answering Brief.[5]  And again she has failed to provide any evidentiary support for the amounts requested.  (B32, B27).  Plaintiff's claim that she has provided "detail [sic] medical expense evidence after deposition but prior to Discovery period ending" is inaccurate.  (D.I. 127 at p.15, § B).

Even putting the evidentiary issues aside, the matter of medical insurance premiums can still be easily resolved.  Plaintiff's summary indicates a refusal for premium payments she claims to have paid from March 2004 to September 2007.  (B27).  The Court's ruling of July 27, 2007, makes clear that none of these alleged payments are recoverable as damages.  Plaintiff is estopped from seeking damages for any period later than March 2004.  (D.I. 100).

During discovery, Plaintiff moved the Court to preclude Defendants from obtaining information relating to her current employment or medical information "outside the scope of this action," which she defined as "December 2003 through March 2004."  (D.I. 75 at ¶2).  Based on Plaintiff's representations, the Court ruled on the discoverability of those records, stating that, "Plaintiff contends that she seeks only damages related to her pregnancy and medical expenses corresponding to the time frame of December 2003 through March 2004."  (D.I. 100 at 3).

Defendants relied on Plaintiff's representations and on the Court's Order and did not continue to pursue the documents.  Now Plaintiff includes six pages of documents that appear to

---

[5] Plaintiff produced several versions of various summaries during the discovery period.  (D.I. 57, 78, 107, B26, B32).  They are similar to the "Lost Wages Claim Detail," "Medical Expense Claim Detail," and "Medical Insurance Claim Detail" documents submitted in Plaintiff's Appendix to her Answering Brief.  (B47, B32, B27).

12

be related to her current health insurance coverage and yet another self-generated "summary" that purports to compare the coverage provided by Lawns and the coverage she receives through her current employer. (B28-31, B102-03, B96). These documents were not produced during discovery and are, therefore, excluded from consideration for the present Motion. See Chambliss v. Amtrack, No. 05-2490, 2007 U.S. Dist. LEXIS 11522, at *21 n.6 (D.D.C. Feb. 20, 2007) (refusing to consider a document proffered by a plaintiff in support of his opposition to the defendant's request for summary judgment on the grounds that "it is unclear whether it was produced in discovery in this action"). Plaintiff's prior representations to the Court and the Court's subsequent ruling estop Plaintiff from claiming damages for any time earlier than her termination in December 2003 or for any time later than March 1, 2004, when she began her new employment.

> **3. Plaintiff Cannot Claim Medical Expenses That She Would Have Incurred Even if She Had Not Been Terminated.**

The applicable time period is not at issue with her claim for medical expenses. As set forth in Defendants' Opening Brief, Plaintiff's claims for medical expenses are precluded on other grounds. First, all expenses incurred on behalf of Plaintiff's daughter, Corrine Butz, are ineligible for consideration. An award for these expenses would put Plaintiff in a position better than she would have been had she not been terminated.

Second, Plaintiff cannot recover the remaining expenses asserted on her own behalf, because those expenses represent only the co-pay she was required to pay pursuant to Lawns' insurance policy. An award for those expenses would constitute a windfall whereby Plaintiff would receive damages for costs she would have incurred even if she had not been terminated. To award these expenses would be to put Plaintiff in a better position than she would have been

in had she not been terminated.  These awards would be violative of the "make whole" purpose of the Title VII's statutory scheme.

First is the issue of medical expenses claimed on behalf of Plaintiff's daughter.  (B32). Plaintiff did not and could not have received family-coverage health insurance through Lawns. Lawns exclusively offered employee-only coverage whereby only the employee was eligible to enroll in the offered health care plan.  (D.I. 125 at pp.37-38).  Plaintiff admites that she knew that she could not enroll her daughter in Lawns' insurance plan.  (A66-67, A4).

In response, Plaintiff points to 18 Del. C. § 3335, a provision of the Delaware Insurance Code entitled "Newborn Children."  (B105).  She has also provided an e-mail from a "representative of the Insurance Commissioner's office," which states the following regarding the cited statute:  "This is the regulation outlining coverage is mandatory from the moment of birth to the 30th day of life."  (B104).[6]

An e-mail from the Office of the Insurance Commissioner is not binding upon this Court.[7]  Additionally, the Delaware Insurance Code is binding only upon "insurers," as defined by the statute.  18 Del. C. § 102.  It is not binding upon employers who are not operating under a self-funded plan.  This provision did not impose any duties upon Lawns.  If any obligations are created by the statute, it would be an obligation of the insurer.

---

[6] Although Plaintiff's interpretation of this e-mail, which she received in September 2007, may seem reasonable, it is best put into perspective by looking to Plaintiff's understanding at the time of the alleged adverse action.  During the relevant period, Plaintiff believed, correctly, that her daughter was not eligible for health insurance under Lawns' employee-only policy.  This raises the question of what, if anything, Plaintiff had done prior to taking leave to ensure that her daughter would have health insurance coverage.

[7] This is especially true given the absence of any of the preceding or subsequently exchanged correspondence.

Plaintiff's claimed medical expenses, after excluding the amounts claimed for Corrine Butz, total exactly $800.75.[8]  (B32).  Plaintiff's claims for medical expenses are not recoverable for one glaringly obvious reason.  At all relevant times, *Plaintiff was covered by Lawns' health insurance.*  (B32).

On her summary, Plaintiff admits that she remained on Lawns' plan.  (B32) ("100% coverage").  She also acknowledges that insurance paid the costs relating to the delivery of her daughter.  Yet, she still requests damages for the co-pays and deductibles associated with various medical expenses.

Plaintiff would have been responsible for co-pays and deductibles had she remained employed.  And, because Lawns kept Plaintiff enrolled in its health insurance plan, she continued to pay only her co-pays, and deductibles.  Plaintiff would have incurred these costs regardless of whether she had been terminated.  Because Plaintiff did not actually incur any medical expenses as a result of her termination, she cannot now claim such expenses as damages.

**D.    Plaintiff Has Failed to Carry Her Burden of Proof as to Emotional Distress or Punitive Damages**

Plaintiff filed a Motion for Leave to Add a New Claim (D.I. 106), which has been opposed by Defendants.  (D.I. 112).  Plaintiff's motion seeks to amend her Complaint for the third time to add a claim for punitive damages, as well as emotional distress damages.  If permitted to pursue these claims, Plaintiff attests that she will seek $50,000 in pain and suffering damages "because it is the maximum" amount that can be awarded.  (A89).  She would seek the same amount in punitive damages.  (D.I. 25).

---

[8] This brings Plaintiff's total economic damages, including lost wages and back pay to a total of $1,808.75. Defendants will put aside issues involving the burdens of frivolous litigation pursued relentlessly by *pro se* plaintiffs without regard to the proportionality of costs incurred by the parties of the judicial system.

15

Plaintiff waived any claim she may have had to such damages. Further, the late nature of the request would cause unfair prejudice to Defendants. But Defendants will assume for the purposes of this brief only that the motion will be granted. Even then, Plaintiff still has not established even the most basic evidence to support a claim for emotional distress or punitive damages.

### 1. Plaintiff Has Failed to Proffer Any Evidence In Support of a Claim for Emotional Distress Damages

In response to Defendants' request for summary judgment on her claim for emotional distress, Plaintiff makes the following argument: "Defendant needs to understand that there are laws and regulations that establish how even small business [sic] are to hire, employ, and terminate their employees and Defendant must be held accountable for not abiding to these laws." (D.I. 127 at p.18). She then cites several cases for the proposition that "a plaintiff is not barred as a matter of law from recovering compensatory damages for emotional distress without expert testimony or corroborative evidence." (D.I. 127 at p.18). Defendants do not contend that expert testimony is required for a claim of emotional distress damages. But the evidence Plaintiff has offered is far from sufficient to support this claim.

Damages for emotional distress "may be awarded if there is sufficient evidence to support the award." Bolden v. Southeastern Pa. Transp. Auth., 21 F.3d 29, 34 (3d Cir. 1994) (internal citations omitted). Plaintiff must present evidence of actual injury before recovering compensatory damages for mental distress. Burks v. City of Phila., 974 F. Supp. 475, 482 (E.D. Pa. 1997) (citing Carey v. Piphus, 435 U.S. 247 (1978)). And speculative damages will not be awarded. See, e.g., Gunby v. Pa. Elec. Co., 840 F.2d 1108 (3d Cir. 1988), cert. denied sub nom, 492 U.S. 905 (1989). Thus, a fact finder is not permitted to infer emotional distress. Valentin v. Crozer-Chester Med. Ctr., 986 F. Supp. 2d 292, 304 (E.D. Pa. 1997).

16

Plaintiff must offer "specific facts as to the nature of his or her claimed emotional distress and its causal connection to the allegedly violative actions." Hammond v. Northland Counseling Ctr., 218 F.3d 866, 893 (8th Cir. 2000). When the only evidence of emotional distress is the plaintiff's own testimony and where, as here, she has not introduced evidence of physical damage or the need for professional care, there must be a "reasonable probability, rather than a mere possibility, that damages due to emotional distress were in fact incurred as a result of" the unlawful act. See Spence v. Bd. of Ed., 806 F.2d 1198, 1201 (3d Cir. 1986) (internal citations omitted).

Plaintiff falls far short of this evidentiary burden. All she has provided is the flat statement that Defendants "need to understand that there laws and regulations." (D.I. 127 at p.18). This is far from the non-speculative evidence tending to show that Plaintiff has suffered any emotional harm as a result of the alleged adverse action. Without any factual support, Plaintiff's claim for emotional distress must be dismissed. See Gunby, 840 F.2d at 1110 (reversing award of emotional distress because only evidence in support thereof was the plaintiff's testimony that he was "very upset," felt he "had been done wrong," and had been "treated unfairly").

### 2. Plaintiff Has Failed to Proffer Any Evidence In Support of a Claim for Punitive Damages

Plaintiff's claim for punitive damages similarly fails. In Kolstad v. American Dental Association, the United States Supreme Court held that it is not enough to show that the conduct at issue was intentional in order to obtain punitive damages. 527 U.S. 526 (1999). Rather, punitive damages will not be awarded unless the employer is shown to at least have discriminated in the face of a perceived risk that its actions will violate federal laws. Although Plaintiff asserts that Defendants must be "held accountable," she has made no allegation that

Defendants acted intentionally with a state of mind of malice or with reckless indifference to her federally protected rights.  See id.

  In fact, she does not dispute that Defendants worked with their attorney when trying to decide how to proceed when Plaintiff would not return their calls.  She further admits that Defendants worked with their insurance agent and extended Plaintiff's insurance coverage at the agent's suggestion.  (D.I. 127 at p. 3-4).  (D.I. 127 at p.3, ¶9; p.4, ¶12; p.12, § 2; p.19, § II; p.25, § 4).  In sum, Plaintiff has alleged that Defendants sought advice from the appropriate professionals and acted in accord with that advice.  Plaintiff's own allegations preclude an award of punitive damages.  See EEOC v. Century Broad. Corp., 957 F.2d 1446, 1459 (7th Cir. 1992) (finding that recklessness may be inferred by the fact that the defendant did not meet with the company's attorneys before deciding whether to fire the plaintiff).

Case 1:05-cv-00495-JJF     Document 130     Filed 12/19/2007     Page 24 of 25

**CONCLUSION**

For the reasons set forth in the brief above, Defendants Lawns Unlimited, Ltd., and

Edward Fleming respectfully request that summary judgment be granted and that Plaintiff Renee

Butz's Complaint be dismissed in its entirety.

Respectfully Submitted,

/s/ Margaret M. DiBianca
William W. Bowser, Esquire (Bar I.D. 2293)
Margaret M. DiBianca, Esquire (Bar I.D. 4539)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, Delaware 19801-0391
Telephone: (302) 571-5008
Facsimile: (302) 576-3476
E-mail: mdibianca@ycst.com
*Attorneys for Defendants*

Dated: December 19, 2007

DB02:6247229.1                                            065789.1001

## CERTIFICATE OF SERVICE

I, Margaret M. DiBianca, hereby certify that on December 19, 2007, I electronically filed a true and correct copy of **DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using CM/ECF.  I further certify that on December 19, 2007, I caused to be deposited a true and correct copy of the foregoing **DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** via Certified U.S. Mail/Return Receipt Requested to the following non-registered participant:

> Renee Butz
> 501 Hickory Drive
> Northeast, MD 21901
> Plaintiff *Pro Se*

> /s/ Margaret M. DiBianca
> _____
> William W. Bowser, Esquire (Bar I.D. 2293)
> Margaret M. DiBianca, Esquire (Bar I.D. 4539)
> YOUNG CONAWAY STARGATT & TAYLOR, LLP
> The Brandywine Building, 17th Floor
> 1000 West Street
> P.O. Box 391
> Wilmington, Delaware 19801-0391
> Telephone:  (302) 571-5008
> Facsimile:  (302) 576-3476
> E-mail: mdibianca@ycst.com
> *Attorneys for Defendants*