

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RENEE M. BUTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 05-495-JJF |
| | ) | Judge Joseph J. Farnan Jr. |
| LAWNS UNLIMITED LTD. | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S AMENDED DAMAGES CLAIM**

Plaintiff, Renee M. Butz, hereby provides clarification of existing claims and is adding claims for Pain & Suffering and Punitive damages to the Third Amended Complaint.

Respectfully Submitted,

*/s/ Renee M Butz*

Renee M. Butz
58 Hickory Drive
North East, MD 21901
(410) 441-4300
Plaintiff pro se

Dated: 9-2-08



FILED SEP - 4 2008 U.S. DISTRICT COURT DISTRICT OF DELAWARE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RENEE M. BUTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 05-495-JJF |
| | ) | Judge Joseph J. Farnan Jr. |
| LAWNS UNLIMITED LTD. | ) | |
| | ) | |
| Defendant. | ) | |

**SUMMARY OF DAMAGES**

| | | |
|---|---|---|
| 1. | Medical Expenses | $ 1,465.25 |
| 2. | Medical Insurance Premiums | $ 3,913.12 |
| 3. | Lost Wages | $ 2,446.28 |
| 4. | Miscellaneous Expenses | $ 2,368.07 |
| 5. | Pain and Suffering | $ 50,000.00 |
| 6. | Punitive Damages | $ 50,000.00 |
| | Total Damages | $110,190.44 |

**MEDICAL EXPENSES - $1,465.25:**

1. Medical expense damages include medical expenses that would have been covered under the Lawns Unlimited Health Plan had Defendant not terminated Plaintiff's employment during Plaintiff's maternity leave. See Medical Expense Claim Detail (B:B13A)

2. Plaintiff has provided a medical coverage comparison between Lawns Unlimited Optimum Choice Plan and Cecil County Government Blue Cross/Blue Shield Plan to show that

comparable coverage existed between the two plans (H1A:H9A).

**MEDICAL INSURANCE PREMIUMS - $3,913.12:**

Medical insurance premiums damages are for the difference between Plaintiffs's current premiums versus the premiums under the Defendant's policy. Under Defendant's Optimum Choice Plan, Plaintiff paid nothing for the medical health premiums. See Medical Insurance Premium Detail (I:I5A).

**LOST WAGES - $2,446.28:**

1. Lost wages represent compensation that Plaintiff would have received had Defendant not wrongfully terminated Plaintiff's employment and discriminated against Plaintiff with regards to her pay increase which was due on September 1, 2003 and the unpaid bonus/performance incentive which should have been paid to Plaintiff in December 2003. Therefore, calculations were made on lost wages based on a $.75 increase in pay effective September 1, 2003 (W:W5A)

2. Wage Increase - Plaintiff has provided a summary sheet, analyzing Lawns Unlimited payroll records. Plaintiff has also provided the detail supporting this analysis. To assist in reviewing these documents, Plaintiff provides the following information (W) (W6A:W30B):

| Employee | Annual Hours Worked | Old Pay Rate | Increase Amount | Percent Increase |
|---|---|---|---|---|
| Employee # 2 | 1,771 | $ 8.00 | $1.00 | 12.5% |
| Employee # 9 | 2,458 | $11.00 | $1.00 | 9.1% |
| Employee #27 | 853 | $ 9.50 | $1.00 | 10.5% |
| Employee #37 | 1,146 | $ 8.00 | $ .50 | 6.3% |
| Employee #39 | Salary | | | 6.9% |
| Employee #45 | 317 | $ 7.00 | $ .50 | 7.1% |
| Employee #49 | 1,828 | $ 8.00 | $1.00 | 12.5% |
| Employee #52 | Salary | | | 4.0% |
| Employee #54 | 2,721 | $10.00 | $2.00 | 20.0% |
| Employee #55 | 975 | $10.00 | $2.00 | 20.0% |
| Plaintiff | 2,224 | $12.00 | $0.00 | 0.0% |

The $.75 increase in Plaintiff's calculations represents a 6.3% increase, which is based on hours worked. The $.75 increase calculated is a conservative number based upon other employee's increases, Plaintiff's position as the Office Manager, and Defendant's testimony that Plaintiff's position was extremely important (W32A:W33A).

3. Bonus/Performance Incentive - Plaintiff has provided a summary sheet, analyzing Lawns Unlimited payroll records. Plaintiff has also provided the detail supporting this analysis. To assist in reviewing these documents, Plaintiff provides the following information (W) (W6A:W30B):

| Employee | 2002 Hours Worked | 2003 Hours Worked | 2002 Bonus | 2003 Bonus |
|---|---|---|---|---|
| Employee # 4 | 0 | 1,114 | N/A | $ 217 |
| Employee # 5 | 0 | 1,058 | N/A | $ 217 |
| Employee # 9 | 2,435 | 2,458 | $1,083 | $1,624 |
| Employee #10 | 0 | 1,357 | N/A | $ 217 |
| Employee #39 | Salary | Salary | $3,249 | $8,121 |
| Employee #47 | 0 | 1,398 | N/A | $ 379 |
| Employee #48 | 0 | 2,112 | N/A | $ 217 |
| Employee #52 | Salary | Salary | $1,624 | $1,624 |
| Employee #54 | 1,594 | 2,721 | $ 541 | $ 541 |
| Employee #61 | 0 | 1,868 | N/A | $ 217 |
| Employee #63 | 0 | 1,517 | N/A | $ 379 |
| Employee #66 | 0 | 1,811 | N/A | $ 217 |
| Employee #67 | 0 | 2,012 | N/A | $ 217 |
| Employee #68 | 0 | 2,264 | N/A | $ 217 |
| Employee #69 | 0 | 253 | N/A | $ 108 |
| Plaintiff | 469 | 2,224 | $379 | $ 0 |

The $500 bonus/performance incentive in Plaintiff's calculations represents a conservative number based upon other employee's bonus/performance incentive, Plaintiff's position as the Office Manager, and based on Defendant's testimony that Plaintiff's position was extremely important (W32A:W33A)

4

**MISCELLANEOUS EXPENSES - $2,368.07:**

Miscellaneous expenses represent all costs incurred by Plaintiff as a result of the lawsuit. See Miscellaneous Expense Claim Detail (M:M15B).

**PAIN AND SUFFERING DAMAGES - $50,000.00:**

Pain and Suffering represents damages sought from the results of Defendant's actions and the resulting stress and anxiety that Plaintiff endured during her maternity leave.

Fact:   Insurance coverage was stopped, effective 12/31/03 with delivery of Plaintiff's baby on 12/30/03 (S3A:S4A).

Fact:   Plaintiff's spouse was working as a Contractor with no health insurance benefits.

1.   No insurance coverage for Plaintiff's new born under Plaintiff's health insurance plan, provided through Lawns Unlimited, during first 30 days after birth. As provided by the Delaware Insurance Commissioner's Office (S1A:S2A), Plaintiff's newborn baby would have been covered by Plaintiff's insurance for the first 30 days after birth. As a new born, complications could have arisen during these 30 days and Plaintiff had to worry about how she would handle this if the situation arose. With no health insurance through Lawns Unlimited or her spouse, no income during her maternity leave to afford to purchase health insurance or to pay for medical treatment, this caused a great deal of stress to Plaintiff.

2.   No insurance coverage for Plaintiff under the Health Insurance Plan provided through Lawns Unlimited. Plaintiff's pregnancy was considered a "High Risk" pregnancy (S5A:S6A), of which Defendant was aware. This required weekly visits to the doctor and meant that the delivery could include complications. Delivery did in fact involve an emergency C-Section. With insurance coverage stopping the day after delivery of Plaintiff's baby, Plaintiff could have ongoing medical requirements that would not be covered. Plaintiff could not afford Health

Insurance or afford to go to the doctor for any medical ailments she experienced, including medical attention needed due to the stress of having lost her job and her health insurance coverage.

3. Due to the stress related to having just lost her job, needing to find employment elsewhere and facing possible medical situations without health insurance; the Plaintiff developed difficulty breast feeding and had to revert to formula instead of breast milk very early in her child's life. Causing additional stress and unnecessary costs.

4. Another aspect of the Pain & Suffering is the time that Defendant stole from the Plaintiff. This was the time that should have been one of the most unforgettable and joyous times of the Plaintiff's life. Plaintiff should have been involved in a loving, nurturing and bonding time with her new born during the first six weeks following the birth of her child. But instead, Plaintiff received a termination letter from her employer. Plaintiff had to drag her child to the unemployment office to file for unemployment. Plaintiff had to face an unemployment appeal process, requiring the Plaintiff to confront the individual who was responsible for creating the situation she was currently experiencing. Plaintiff had to begin searching for a new job. Plaintiff had to interview for a new job. And Plaintiff had to start a new job. All of these events created much more stress in the Plaintiff's life. What should have been one of the most memorable times of Plaintiff's life, ended up as one of the most stress filled times of her life. The Defendant took this away from the Plaintiff. This time can never be recovered.

5. Defendant demonstrated a total disregard of the seriousness and the consequences to the Plaintiff of dismissing a pregnant employee while on Maternity Leave, just seven days before the delivery of her child and terminating her health insurance one day after the delivery of her child.

As a result Plaintiff should be allowed to seek Pain & Suffering Damages. A Jury should be permitted to determine if the $50,000 Pain & Suffering Damages is appropriate for the discriminatory violation.

**PUNITIVE DAMAGES - $50,000.00:**

Plaintiff is providing evidence that Mr. Fleming's discriminatory action, on behalf of Lawn's Unlimited (Defendant), was done with "reckless indifference" to the rights of the Plaintiff. Defendant was aware of the discriminatory nature of the termination action as evidenced by the following:

1. Defendant had their attorney write the dismissal letter as evidenced through Defendant's deposition (P1A). If this was a simple "job desertion" termination (P2A), why would Defendant need to involve his attorney in writing such a letter unless he perceived a risk in terminating the Plaintiff?

2. Defendant tried to end the health insurance coverage for Plaintiff before the birth of Plaintiff's child, but was warned by his insurance agent that because the Plaintiff believed she was on maternity leave, that he recommended that Defendant continue the insurance coverage through the birth of the child and cautioned the Defendant that it gets into a gray area, and the insurance agent told Defendant to contact the labor department (P3A).

3. After Defendant had dismissed Plaintiff, Plaintiff's father-in-law, Michael L. Butz, contacted Defendant and warned Defendant that they were violating the Pregnancy Discrimination Act (P4A:P5A) by terminating the employment of the Plaintiff while on maternity leave. Defendant totally disregarded Mr. Butz's comment and stated that "it was his Company and he could do whatever he wanted".

4. Defendant clearly authorized Mr. Fleming to act on its behalf and Mr. Fleming was acting

7

in a management role within the scope of employment, with Lawns Unlimited approval of the action.

5. The Defendant has not provided any indications that it made "good faith" efforts to comply with Title VII. Defendant has not provided any proof that it made any "good faith" efforts to enforce any anti-discrimination policy. In fact, the Defendant has provided no proof that it has a published Anti-Discrimination Policy.

6. Defendant has made every effort to mask the discriminatory act under the pretext of claiming that the Plaintiff had deserted her job and had accepted employment with another employer, both allegations of which Plaintiff has shown to be untrue (P2A) (P6A) (P7A).

7. A pregnancy discrimination claim is not novel or poorly recognized. It has been a standard claim since amendment of Title VII by the Pregnancy Discrimination Act of 1978. The Plaintiff suffered economic, emotional and psychological harm as a result of the Defendants misconduct.

8. As a result, Plaintiff should be allowed to seek Punitive Damages. A Jury should be permitted to determine if the $50,000 Punitive Damages is appropriate for the discriminatory violation. Punitive damages are needed to punish Defendant for its conduct and to deter Defendant from engaging in such activity in the future.

_____
Renee M. Butz
58 Hickory Drive
North East, MD 21901
(410) 441-4300
Plaintiff pro se

Dated: 9-2-08